1  Gregory D. Brown, State Bar No. 65318
   gbrown@burnhambrown.com
2  Robert M. Bodzin, State Bar No. 201327
   rbodzin@burnhambrown.com
3  Melissa A. Horst, State Bar No. 253032
   mhorst@burnhambrown.com
4  BURNHAM BROWN
   A Professional Law Corporation
5  P.O. Box 119
   Oakland, California 94604
6
7  1901 Harrison Street, 14th Floor
   Oakland, California  94612
   Telephone:    (510) 444-6800
8  Facsimile:     (510) 835-6666

9  Attorneys for Defendants THETFORD CORPORATION, a
   Delaware Corporation; NORCOLD, INC., a Delaware
10 Corporation; and THE DYSON-KISSNER-MORAN
   CORPORATION s/h/a DYSON-KISSNER-MORAN
11 CORPORATION, a Delaware Corporation

12                 UNITED STATES DISTRICT COURT

13     CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| 14  JEFFERY ETTER; SUSAN ETTER; PAUL KAHLER; FRAN CURTIS; and, 15  MICHELLE CURTIS, individually, and on behalf of themselves and all others similarly 16  situated, <br><br> 17                 Plaintiff, <br><br> 18  v. <br><br> 19  THETFORD CORPORATION, a Delaware Corporation, NORCOLD, INC., a Delaware 20  Corporation, DYSON-KISSNER-MORAN CORPORATION, a Delaware Corporation, 21  and DOES 1 to 50, inclusive. <br><br> 22                 Defendants. | No.  **SACV 13 - 00081 JST (RNBx)** <br><br> [Orange County Superior Court Case No. 30-2012-00617846-CU-BT-CXC] – [Assigned for all purposes to Judge Gail A. Andler] <br><br> **DEFENDANTS' NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. SECTIONS 1332, 1441, 1446 AND 1453** <br><br> Complaint Filed:     December 12, 2012 |

24      TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT

25 FOR THE CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION:

26      PLEASE TAKE NOTICE that Defendants THETFORD CORPORATION, NORCOLD,

27 INC. and THE DYSON-KISSNER-MORAN CORPORATION s/h/a DYSON-KISSNER-

28 MORAN CORPORATION ("Defendants")  hereby remove the state court action described

1  below to the United States District Court for the Central District of California, Southern

2  Division, pursuant to 28 U.S.C. §§ 1332, 1441, 1446 and 1453.

3  **Compliance With Statutory Requirements**

4      1.    On December 12, 2012, a putative class action was commenced in the Superior

5  Court of the State of California in and for the County of Orange, Case No. 30-2012-00617846-

6  CU-BT-CXC. A copy of the Summons, Complaint and court orders are attached hereto as

7  Exhibit A.

8      2.    Plaintiffs' Complaint assert claims for: (1) violation of California Civil Code

9  section 1750 on behalf of the California subclass; (2) violation of the Song-Beverly Consumer

10  Warranty Act, California Civil Code Section 1790 on behalf of the California subclass; (3)

11  breach of express and implied warranty on behalf of the California subclass ; (4) violation of

12  California Business and Professional Code section 17200 and 17500 on behalf of the California

13  subclass; (5) recovery of money had and received on behalf of California subclass; (6) violation

14  of Florida State Consumer Protection Laws; (7) breach of express and implied warranty on

15  behalf of the Florida subclass; (8) recovery of money had and received on behalf of Florida

16  subclass.

17      3.    The first date upon which Defendants NORCOLD, INC. and THE DYSON-

18  KISSNER-MORAN CORPORATION were served with a copy of the original Complaint was

19  December 19, 2012. Defendant THETFORD CORPORATION was served with the complaint

20  on January 3, 2013. Defendants' removal of this action is timely because Defendants are

21  removing this matter within 30 days of being served with the complaint. (*See* 28 U.S.C. §

22  1446(b)) As required by 28 U.S.C. § 1446(a), a true and correct copy of all process, pleadings,

23  and orders served upon Defendants are included in Exhibit A to this Notice of Removal.

24      4.    Pursuant to 28 U.S.C. § 1446(d), Defendants promptly will provide written

25  Notice to Adverse Parties of Removal of the action to Plaintiffs, and will promptly file a copy of

26  this Notice of Removal with the Clerk of the Superior Court of the State of California, County of

27  Orange.

28  ///

DEFENDANTS' NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. SECTION   No.
1332, 1441, 1446 AND 1453

5.      By removing this case, Defendants do not waive and are not estopped from raising any defenses that were available to it in State Court.  Specifically, Defendants do not waive by this notice any objection based on insufficiency of process or service or lack of personal jurisdiction.

### Intradistrict Assignment

6.      Plaintiffs filed this case in the Superior Court of California, County of Orange; therefore, this case properly may be removed to the Southern Division of the Central District of California. (See U.S.C. §§ 1441(a) and 1453(b).)

### Jurisdiction

7.      This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d) (as amended by the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 14 ("CAFA")).  Although complete diversity is required for class actions generally, under CAFA, and pursuant to Section 1332(d), federal courts have original diversity jurisdiction over a class action with merely minimal diversity. Meeting the minimal diversity standard under CAFA requires three showings. (1) that there are at least 100 class members in all proposed plaintiff classes; (2) that any class member (named or not) is a citizen of a different state than any defendant; and (3) that the combined claims of all class members exceed $5,000,000 exclusive of interest and costs. All three requirements are satisfied in this case.

### The Requirement of More Than 100 Members

8.      The first CAFA requirement of at least 100 class members in all proposed plaintiff classes is met in this case. Plaintiffs' Complaint.  Plaintiffs seek certification of two subclasses of 10,00 members each, comprised of California and Florida owners of Norcold N6, N8 and 1200 Series Gas Absorption Refrigerators.  (Complaint, Ex. A at 22: 22-27).  With at least 20,000 subclass members, the numerosity requirement is significantly exceeded.

### The Requirement of Minimum Diversity

9.      In this matter, diversity of citizenship exists because Defendants and at least one proposed class member are citizens of different states, thus satisfying the second CAFA requirement for minimal diversity. See 28 U.S.C. § 1332 (d)(2)(c). Defendant Norcold, Inc, is a

DEFENDANTS' NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. SECTION 1332, 1441, 1446 AND 1453      No.

1  corporation incorporated under the laws of Delaware and has its principal place of business in

2  Ohio. (See Complaint, Ex. A at p. 7, ¶ 14). Defendant Thetford Corporation, is a corporation

3  incorporated under the laws of Delaware and has its principal place of business in Michigan. (Id.

4  at ¶ 15.) Defendant The Dyson-Kissner-Moran Corporation is a corporation incorporated under

5  the laws of Delaware and has its principal place of business in New York. (Id. at ¶ 16.)

6  Plaintiffs Jeff and Susan Etter are citizens and residents of Florida and Plaintiffs Paul Kahler,

7  Fran Curtis and Michelle Curtis are citizens and residents of California. (Id. at ¶¶ 11-13). As

8  Plaintiffs Paul Kahler, Fran Curtis and Michelle Curtis are California residents and all three

9  defendants are residents of other states, CAFA's minimum diversity requirement is met.

10                    **The Amount In Controversy Requirement**

11         10.    The third requirement for minimum diversity under CAFA, that the combined

12  claims of all class members exceed $5,000,000 exclusive of interest and costs, is also met in this

13  case. Within the California and Florida subclasses, Plaintiffs seek reimbursement of the purchase

14  price of their Norcold refrigerators. (Complaint, Ex. A at ¶ 91). Generally, the retail purchase

15  price of a Norcold refrigerator is set by the distributor, who sells the unit to the consumer at a

16  mark-up and as part of an RV. (Declaration of J. David Roberts ("Roberts Dec") attached as

17  Exhibit B at ¶4) While Norcold does not possess the higher marked-up price of Norcold

18  refrigerators sold to the consumer, the company is aware of the average purchase price paid to it

19  by distributors since December 12, 2008. (Id. at 5) As the average purchase price of a Norcold

20  gas absorption refrigerator since December 12, 2008 sold to a distributor has been $943, the

21  reimbursement amount sought as to the 20,000 members of the California and Florida subclasses

22  total $18,860,000. (See Roberts Dec. at 6).

23         11.    Further evidence that the amount in controversy requirement is met relates to

24  Plaintiffs' claim of diminution of values of the recreational vehicles where their Norcold

25  refrigerators were used. (Complaint, Ex. A, ¶ 101). While the amount of these damages is not

26  quantified, the allegation certainly indicates there are additional damages sought which confirm

27  the combined class member class are well over $5,000,000.

28         12.    Defendants deny they have engaged in any wrongful conduct with regard to

DEFENDANTS' NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. SECTION   No.
1332, 1441, 1446 AND 1453

1  Norcold refrigerators, that any of Plaintiffs' claims against them are valid, or that they owe

2  anything to Plaintiffs. However, the amount in controversy requirement looks not at defendants'

3  positions but at plaintiff class members' aggregated claims, and it is apparent from the nature

4  and scope of Plaintiffs' class claims combined claims of all purported class members against all

5  defendants greatly exceed $5,000,000.

6  **Defendants Have Met Their Burden of Proof on this Notice of Removal**

7  13.  Defendants have the burden of proof on a CAFA removal.  <u>Lewis v. Verizon</u>

8  <u>Communs., Inc.</u>, 627 F.3d 395, 397  (9th Cir. 2010).  The face of Plaintiffs' Complaint confirms

9  that there are far more than 100 class members and that the minimum diversity requirement is

10  met.  As to the amount in controversy requirement that Plaintiffs seek a combined amount of at

11  least $5,000,000, the plain allegations in Plaintiffs' Complaint confirm this lawsuit seeks

12  reimbursement of the purchase price of their Norcold Gas Absorption Refrigerator for at least

13  10,000 people in California and Florida.  As the Declaration of J. David Roberts of Norcold

14  confirmed the average purchase price of these refrigerators since 2008 has been $943 the amount

15  sought by each state subclass is $9,430,000 with a combined amount of $18,860,000 for the two

16  subclasses.   Given the clear damages claims in Plaintiffs' Complaint and the purchase price

17  information provided by Mr. Roberts, Defendants have met their burden on this CAFA

18  Removal.

19  DATED: January /6, 2013                          BURNHAM BROWN

20

21

22                                                         ROBERT M. BODZIN
                                                           Attorneys for Defendants THETFORD
23                                                         CORPORATION, a Delaware Corporation;
                                                           NORCOLD, INC., a Delaware Corporation; and
24                                                         THE DYSON-KISSNER-MORAN
                                                           CORPORATION s/h/a DYSON-KISSNER-
25                                                         MORAN CORPORATION, a Delaware
                                                           Corporation

26  4846-5474-3826, v. 1

27

28

DEFENDANTS' NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. SECTION   No.
1332, 1441, 1446 AND 1453

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

| | |
|---|---|
| NOTICE TO DEFENDANT:<br>(AVISO AL DEMANDADO):<br>Thetford Corporation, a Delaware.Corporation, Norcold, Inc., a Delaware<br>Corporation, Dyson-Kissner-Moran Corporation, a Delaware Corporation, and<br>Does 1 to 50, inclusive<br>YOU ARE BEING SUED BY PLAINTIFF:<br>(LO ESTÁ DEMANDANDO EL DEMANDANTE):<br>Jeffery Etter, Susan Etter, Paul Kahler, Fran Curtis, and Michelle Curtis,<br>individually, and on behalf of themselves and all others similarly situated | FOR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE)<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California.<br>County of Orange<br>**12/12/2012** at 01:48:44 PM<br>Clerk of the Superior Court<br>By Irma Cook,Deputy Clerk |

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| | |
|---|---|
| The name and address of the court is:<br>(El nombre y dirección de la corte es):  Orange County Superior Court<br>~~Central Justice Center~~  Civil Complex Center<br>~~700 Civic Center Drive West, Santa Ana, CA 90701~~  751 W. Santa Ana Blvd<br>Santa Ana, Ca. 92701 | CASE NUMBER:<br>(Número del Caso):<br>30-2012-00617846-CU-BT-CXC<br><br>Judge Gail A. Andler |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
Caleb LH. Marker, Ridout & Lyon, LLP; 555 E. Ocean Blvd., Ste. 500, Long Beach, CA; (562) 216-7380

| | | |
|---|---|---|
| DATE: 12/12/2012<br>(Fecha)    Alan Carlson | Clerk, by<br>(Secretario) _____ Irma Cook | , Deputy<br>(Adjunto) |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).

NOTICE TO THE PERSON SERVED: You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☒☒☒ on behalf of (specify): Dyson-Kissner-Moran Corporation, a Delaware Corporation

under: ☒☒☒ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
         ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
         ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
         ☐ other (specify):
4. ☒ by personal delivery on (date): 12/19/12

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | SUMMONS | Page 1 of 1<br>Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |

Date Served: 12/19/12

Time Served: ___

Dr

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Caleb L.H. Marker, Esq. (SBN 269721)<br>RIDOUT & LYON, LLP<br>555 E. Ocean Blvd., Ste. 500<br>Long Beach, CA 90802<br>TELEPHONE NO.: (562) 216-7380    FAX NO.: (562) 216-7385<br>ATTORNEY FOR *(Name):* Plaintiff | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Orange<br>**12/12/2012** at 01:48:44 PM<br>Clerk of the Superior Court<br>By Ima Cook, Deputy Clerk |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Orange<br>STREET ADDRESS: ~~700 Civic Center Drive West~~    Civil Complex Center<br>MAILING ADDRESS: Same                       751 W. Santa Ana Blvd<br>CITY AND ZIP CODE: Santa Ana, CA              Santa Ana, Ca. 92701<br>BRANCH NAME: ~~Central Justice Center~~ | |
| CASE NAME:<br>Etter v. Thetford Corporation | |

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER:<br>30-2012-00617846-CU-BT-CXC |
|---|---|---|
| ☑ Unlimited    ☐ Limited<br>(Amount        (Amount<br>demanded       demanded is<br>exceeds $25,000)  $25,000 or less) | ☐ Counter  ☐ Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:  Judge Gail A. Andler<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation<br>(Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| ☐ Auto (22) | ☐ Breach of contract/warranty (06) | ☐ Antitrust/Trade regulation (03) |
| ☐ Uninsured motorist (46) | ☐ Rule 3.740 collections (09) | ☐ Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property<br>Damage/Wrongful Death) Tort** | ☐ Other collections (09) | ☐ Mass tort (40) |
| ☐ Asbestos (04) | ☐ Insurance coverage (18) | ☐ Securities litigation (28) |
| ☐ Product liability (24) | ☐ Other contract (37) | ☐ Environmental/Toxic tort (30) |
| ☐ Medical malpractice (45) | **Real Property** | ☐ Insurance coverage claims arising from the<br>above listed provisionally complex case<br>types (41) |
| ☐ Other PI/PD/WD (23) | ☐ Eminent domain/Inverse<br>condemnation (14) | |
| **Non-PI/PD/WD (Other) Tort** | ☐ Wrongful eviction (33) | **Enforcement of Judgment** |
| ☑ Business tort/unfair business practice (07) | ☐ Other real property (26) | ☐ Enforcement of judgment (20) |
| ☐ Civil rights (08) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| ☐ Defamation (13) | ☐ Commercial (31) | ☐ RICO (27) |
| ☐ Fraud (16) | ☐ Residential (32) | ☐ Other complaint *(not specified above)* (42) |
| ☐ Intellectual property (19) | ☐ Drugs (38) | **Miscellaneous Civil Petition** |
| ☐ Professional negligence (25) | **Judicial Review** | ☐ Partnership and corporate governance (21) |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Asset forfeiture (05) | ☐ Other petition *(not specified above)* (43) |
| **Employment** | ☐ Petition re: arbitration award (11) | |
| ☐ Wrongful termination (36) | ☐ Writ of mandate (02) | |
| ☐ Other employment (15) | ☐ Other judicial review (39) | |

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties   d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel   e. ☐ Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve         in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a.☑ monetary  b.☑ nonmonetary; declaratory or injunctive relief  c. ☐ punitive
4. Number of causes of action *(specify):*  Eight (8)
5. This case ☑ is ☐ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date:
Caleb L.H. Marker, Esq.
_____        _____
(TYPE OR PRINT NAME)                  (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.
Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
　　Auto (22)—Personal Injury/Property
　　　　Damage/Wrongful Death
　　Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
　　Asbestos (04)
　　　　Asbestos Property Damage
　　　　Asbestos Personal Injury/
　　　　　　Wrongful Death
　　Product Liability *(not asbestos or toxic/environmental)* (24)
　　Medical Malpractice (45)
　　　　Medical Malpractice–
　　　　　　Physicians & Surgeons
　　　　Other Professional Health Care
　　　　　　Malpractice
　　Other PI/PD/WD (23)
　　　　Premises Liability (e.g., slip
　　　　　　and fall)
　　　　Intentional Bodily Injury/PD/WD
　　　　　　(e.g., assault, vandalism)
　　　　Intentional Infliction of
　　　　　　Emotional Distress
　　　　Negligent Infliction of
　　　　　　Emotional Distress
　　　　Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
　　Business Tort/Unfair Business
　　　　Practice (07)
　　Civil Rights (e.g., discrimination,
　　　　false arrest) *(not civil harassment)* (08)
　　Defamation (e.g., slander, libel)
　　　　(13)
　　Fraud (16)
　　Intellectual Property (19)
　　Professional Negligence (25)
　　　　Legal Malpractice
　　　　Other Professional Malpractice
　　　　　　*(not medical or legal)*
　　Other Non-PI/PD/WD Tort (35)

**Employment**
　　Wrongful Termination (36)
　　Other Employment (15)

**Contract**
　　Breach of Contract/Warranty (06)
　　　　Breach of Rental/Lease
　　　　　　Contract *(not unlawful detainer
　　　　　　　　or wrongful eviction)*
　　　　Contract/Warranty Breach–Seller
　　　　　　Plaintiff *(not fraud or negligence)*
　　　　Negligent Breach of Contract/
　　　　　　Warranty
　　　　Other Breach of Contract/Warranty
　　Collections (e.g., money owed, open
　　　　book accounts) (09)
　　　　Collection Case–Seller Plaintiff
　　　　Other Promissory Note/Collections
　　　　　　Case
　　Insurance Coverage *(not provisionally
　　　　complex)* (18)
　　　　Auto Subrogation
　　　　Other Coverage
　　Other Contract (37)
　　　　Contractual Fraud
　　　　Other Contract Dispute

**Real Property**
　　Eminent Domain/Inverse
　　　　Condemnation (14)
　　Wrongful Eviction (33)
　　Other Real Property (e.g., quiet title) (26)
　　　　Writ of Possession of Real Property
　　　　Mortgage Foreclosure
　　　　Quiet Title
　　　　Other Real Property *(not eminent
　　　　　　domain, landlord/tenant, or
　　　　　　foreclosure)*

**Unlawful Detainer**
　　Commercial (31)
　　Residential (32)
　　Drugs (38) *(If the case involves illegal
　　　　drugs, check this item; otherwise,
　　　　report as Commercial or Residential)*

**Judicial Review**
　　Asset Forfeiture (05)
　　Petition Re: Arbitration Award (11)
　　Writ of Mandate (02)
　　　　Writ–Administrative Mandamus
　　　　Writ–Mandamus on Limited Court
　　　　　　Case Matter
　　　　Writ–Other Limited Court Case
　　　　　　Review
　　Other Judicial Review (39)
　　　　Review of Health Officer Order
　　　　Notice of Appeal–Labor
　　　　　　Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
　　Antitrust/Trade Regulation (03)
　　Construction Defect (10)
　　Claims Involving Mass Tort (40)
　　Securities Litigation (28)
　　Environmental/Toxic Tort (30)
　　Insurance Coverage Claims
　　　　*(arising from provisionally complex
　　　　case type listed above)* (41)

**Enforcement of Judgment**
　　Enforcement of Judgment (20)
　　　　Abstract of Judgment (Out of
　　　　　　County)
　　　　Confession of Judgment *(non-
　　　　　　domestic relations)*
　　　　Sister State Judgment
　　　　Administrative Agency Award
　　　　　　*(not unpaid taxes)*
　　　　Petition/Certification of Entry of
　　　　　　Judgment on Unpaid Taxes
　　　　Other Enforcement of Judgment
　　　　　　Case

**Miscellaneous Civil Complaint**
　　RICO (27)
　　Other Complaint *(not specified
　　　　above)* (42)
　　　　Declaratory Relief Only
　　　　Injunctive Relief Only *(non-
　　　　　　harassment)*
　　　　Mechanics Lien
　　　　Other Commercial Complaint
　　　　　　Case *(non-tort/non-complex)*
　　　　Other Civil Complaint
　　　　　　*(non-tort/non-complex)*

**Miscellaneous Civil Petition**
　　Partnership and Corporate
　　　　Governance (21)
　　Other Petition *(not specified
　　　　above)* (43)
　　　　Civil Harassment
　　　　Workplace Violence
　　　　Elder/Dependent Adult
　　　　　　Abuse
　　　　Election Contest
　　　　Petition for Name Change
　　　　Petition for Relief From Late
　　　　　　Claim
　　　　Other Civil Petition

**CIVIL CASE COVER SHEET**

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**12/12/2012** at 01:48:44 PM

Clerk of the Superior Court
By Irma Cook, Deputy Clerk

1 │ RIDOUT & LYON, LLP
│ CHRISTOPHER P. RIDOUT, ESQ (State Bar No. 143931)
2 │   Email: c.ridout@ridoutlyonlaw.com
│ DEVON M. LYON, ESQ. (State Bar No. 218293)
3 │   Email: d.lyon@ridoutlyonlaw.com
│ CALEB LH. MARKER, ESQ. (State Bar No. 269721)
4 │   Email: c.marker@ridoutlyonlaw.com
│ 555 E. Ocean Blvd., Suite 500
5 │ Long Beach, CA 90802
│ (562) 216-7380 Telephone
6 │ (562) 216-7385 Facsimile

7 │ *Attorneys for the Plaintiff*

8 │ *(Additional Counsel Listed Below)*

9 │           **SUPERIOR COURT OF THE STATE CALIFORNIA**

10 │                  **COUNTY OF ORANGE**

11 │ JEFFERY ETTER; SUSAN ETTER;           Case No.:  30-2012-00617846-CU-BT-CXC
│ PAUL KAHLER; FRAN CURTIS; and,
12 │ MICHELLE CURTIS, individually, and on            Judge Gail A. Andler
│ behalf of themselves and all others similarly
13 │ situated,                             **COMPLAINT (CLASS ACTION)**

14 │              Plaintiffs,                    (Jury Trial Demanded)

15 │     vs.

16 │ THETFORD CORPORATION, a Delaware
│ Corporation, NORCOLD, INC., a Delaware
17 │ Corporation, DYSON-KISSNER-MORAN
│ CORPORATION, a Delaware Corporation, and
18 │ DOES 1 to 50, inclusive.

19 │              Defendants.

20 │

21 │        Plaintiffs Jeffery Etter, Susan Etter, Paul Kahler, Fran Curtis and Michelle Curtis bring

22 │ this action, by and through their undersigned counsel, on behalf of themselves and all others

23 │ similarly situated, based on information and belief and the investigation of counsel, except for

24 │ information based on personal knowledge, hereby alleges as follows:

25 │                  I.    **NATURE OF ACTION**

26 │     1.    This class action lawsuit is brought by the above-named Plaintiffs on behalf of

27 │ themselves and all other similarly situated persons in the Class defined below against Defendants

28 │ Thetford Corporation, Norcold, Inc. and Dyson-Kissner-Moran Corporation (DKM) (collectively

1

1   referred to herein as "Defendants"). The Class consists of both (a) a California State Subclass;

2   and, (b) a Florida State Subclass (collectively referred to herein as the "State Law Subclasses,"

3   "State Subclasses" and/or the "Class"). The allegations of this Complaint are based on the

4   personal knowledge of each of the Plaintiffs as to themselves, and on information and belief as to

5   all other matters.

6        2.      Through this class action Plaintiffs challenge the unlawful, unfair, and fraudulent

7   business practices of Defendants in connection with their designing, manufacturing, assembling,

8   promoting, marketing, supplying, selling, recalling, retrofitting, and otherwise placing into the

9   stream of commerce gas absorption refrigerators[1] for use in recreational vehicles and boats

10  (collectively referred to herein as "recreational vehicles").

11       3.      Since at least 1997, Defendants have designed, manufactured, assembled, sold

12  and otherwise placed into the stream of commerce three (3) models of gas absorption

13  refrigerators for installation and use in recreational vehicles, all of which share common design

14  and manufacturing defects that create a substantial risk of fire when the refrigerators are used as

15  designed and for their intended purpose. Defendants' gas absorption refrigerators have caused

16  and/or contributed to at least 2,000 fires since 1999, resulting in over $48,000,000.00 in property

17  damage claims, personal injuries, and at least one death. As of the date of this Complaint,

18  Defendants are receiving new fire claims involving their gas absorption refrigerators at a rate of

19  1 to 2 per day (over 365 annually).

20       4.      The gas absorption refrigerators that Defendants have designed, manufactured,

21  assembled, sold and otherwise placed into the stream of commerce contain design and

22  manufacturing defects which cause their refrigerators to have a propensity to catch on fire,

23  posing a substantial risk of serious injury and/or death to users of the product, as well as any

24  other person located close to the product.

25  ///

26  ///

27  _____

28  [1] Defendants' gas absorption refrigerators come in various sizes, including six cubic feet (the "N6" Series), eight cubic feet (the "N8" Series), and twelve cubic feet (the "12" Series).

COMPLAINT (CLASS ACTION)

5.      Rather than eliminate the design and manufacturing defects contained in its gas absorption refrigerators – or provide adequate warning of potential safety risks to users of the products – Defendants instead sought to conceal and minimize the dangers inherent in the refrigerators' design and operation through a series of limited manufacturer-initiated product safety recalls through the National Highway Traffic Safety Administration (NHTSA).   The limited recalls began in 2000, and continued throughout the class period.  In each product safety recall, Defendants represented that there was a single failure modality in a limited portion of their product population and that the retrofit associated with the recalls would fix that defect, rendering the refrigerators safe to use.  In fact, Defendants' gas absorption refrigerators suffered from a number of different failure modalities associated with defective design and manufacture of the products, the defects extended throughout and were common to all of the product lines, and none of the defects or failure modalities were ever adequately disclosed to NHTSA or users of the product, nor remedied by the retrofit campaigns initiated by Defendants.  Further, the devices Defendants retrofitted to existing gas absorption refrigerators were not only ineffective to remedy the propensity of the refrigerators to cause fires, the devices themselves were designed to render the refrigerators inoperable and unrepairable, requiring users to purchase new refrigerators that contained the same design and manufacturing defects as the originals, and which had the same propensity to cause fires.  Such conduct was misleading and deceptive.  It was reasonably foreseeable to Defendants that their conduct and failure to act and warn the Class, in light of the information they actually or should have possessed, as described herein, would cause Plaintiffs and members of the Class damage injury and loss.

6.      Defendants' actions harm consumers in the Class by inducing them to unknowingly purchase a product that contains inherent dangers and design and manufacturing defects.  These products carry an inherent risk of causing devastating fires, of which Defendants are aware.  Given their superior knowledge of the product defects and inherent risks, Defendants had a duty to disclose such facts to members of the Class.  Defendants provided no notice of the inherent and potential risks of use of their product to consumers at the time of sale, but rather conceal those risks through omissions of material fact and through affirmative representations in

3

1  marketing, sales and operational material that represent the products as safe and defect-free. By

2  such conduct, Defendants breached the duties of care they owed to the class. Additionally,

3  Defendants post-sale actions are deceptive and misleading in that they conceal and/or minimize

4  the dangers and risks inherent in the use of defendants' products from both consumers and

5  federal regulators, and lead both consumers and federal regulators to believe that there is a single

6  design and manufacturing defect in some of their refrigerators that is corrected through product

7  safety recalls, when in reality there are several design and manufacturing defects in all of their

8  products, none of which are corrected through the product safety recalls Defendants have

9  conducted.  In fact, Defendants' recent safety recalls caused further harm to consumers by

10  retrofitting the defective refrigerators with a device that masks the defects by disabling the

11  electronic controls within the refrigerator before the refrigerator has a chance to ignite a fire. The

12  harm caused by this is felt when the refrigerator malfunctions and fails, and the retrofit device

13  permanently disables the electronic controls. If the refrigerator is no longer under warranty, the

14  consumer must replace the refrigerator at his/her own cost. If the refrigerator is under warranty,

15  Defendants still shift some or all of the cost of repair or replacement onto consumers by

16  misrepresenting the terms of the warranty programs offered.  In either event, the consumer

17  unknowingly ends up with the same defective product that failed in the first place, *i.e.* one of

18  Defendants' refrigerators with the same defective design and retrofit. This harm to consumers is

19  the direct result of Defendants' intentional act of placing defective products into the stream of

20  commerce, and Defendants' intentional decision to retrofit the product with devices that do not

21  remedy any of the design and manufacturing defects but instead disable and/or destroy the

22  product and impose the entire cost onto the consumer.

23       7.    Plaintiffs bring this lawsuit against Defendants individually and on behalf of the

24  Class of all other similarly situated purchasers and owners of Defendants' gas absorption

25  refrigerators within the Class Period.  Plaintiffs allege representative claims for unfair

26  competition, unfair and deceptive acts and practices, breach of express and/implied warranty,

27  negligence, and unjust enrichment under the statutory and common laws of the states in which

28  the named Plaintiffs reside.

4

## II.   JURISDICTION AND VENUE

8.   This Court has jurisdiction over all claims set forth herein.

9.   This Court has personal jurisdiction over Defendants because a substantial portion of the wrongdoing alleged by Plaintiffs occurred in the state of California and this county, Defendants have sufficient minimum contacts with and/or otherwise intentionally avails itself of the markets in the state of California and this county, and Defendants have sufficient contracts with this state and county such that it is fair and just for Defendants to adjudicate this dispute here.

10.   Venue is proper in this county because Plaintiff KAHLER is a resident of this county, received notice of product safety recalls in this County; had recall/retrofits of Defendants' products in this County; a substantial part of the events, transactions, and/or omissions giving rise to the claims asserted herein occurred in this county; and, a substantial portion of Defendants' alleged wrongdoing is believed to have occurred in this County.

## III.   PARTIES

A.   **Plaintiffs**

**California Plaintiffs**

11.   Plaintiff Paul Kahler ("KAHLER") is a consumer residing in Huntington Beach, California. KAHLER is a firefighter with the Fountain Valley Fire Department who purchased a 2006 Fleetwood Revolution Class A motor home equipped with a Norcold 1200 Series gas absorption refrigerator as original equipment.   KAHLER's refrigerator was subject to Defendants' product safety recalls, and has had all of the relevant recall and retrofits performed on his refrigerator, including having the refrigerator examined and repaired by Jerry Alexander, Norcold's Technical Service Trainer.  Notwithstanding this fact, on or about August 28, 2012, the refrigerator malfunctioned and started a fire.  Prior to that time, Defendants failed to disclose to KAHLER the same facts they possessed regarding the gas absorption refrigerator's inherent defects and risks that they withheld and failed to disclose to the other members of the Class. KAHLER owned the motor home and Norcold refrigerator during the Class Period and is a member of the Class.

5

1      12.    Plaintiffs Fran and Michelle Curtis (collectively referred to as "CURTIS" or the

2   "CURTIS'") are consumers residing in Antioch, California.  CURTIS purchased a Keystone

3   Raptor 5th wheel trailer from Camping World in Bakersfield, California on November 13, 2010.

4   CURTIS' 5th wheel came equipped with a Norcold N811 (N8 Series) gas absorption refrigerator

5   as original equipment.[2]  CURTIS' refrigerator is subject to Defendants' recalls; however, they

6   have not received any notice of recall/retrofit to date from Defendants.  They were alerted to

7   Defendants' recall by their insurance agent.  Defendants failed to disclose to CURTIS the same

8   facts they possessed regarding the gas absorption refrigerator's inherent defects and risks that

9   they withheld and failed to disclose to the other members of the Class.  CURTIS owned the

10  motor home and Norcold refrigerator during the Class Period and are members of the Class.

11      **Florida Plaintiffs**

12      13.    Plaintiffs Jeff and Susan Etter (hereinafter collectively referred to as "ETTER")

13  are consumers residing in Florida.  ETTER purchased a 2007 Damon Tuscany 4072 Class A

14  motor home equipped with a Norcold 1200 Series gas absorption refrigerator as original

15  equipment.  ETTER's refrigerator was subject to Defendants' product safety recalls, and they

16  had all of the relevant recall and retrofits performed on the refrigerator.  The first recall kit was

17  installed on ETTER's refrigerator in October, 2011, and failed shortly thereafter.  The second

18  recall kit, installed in November, 2011, also failed, resulting in failure of the refrigerator cooling

19  unit, which had to be replaced at ETTER's cost.  Defendants failed to disclose to ETTER the

20  same facts they possessed regarding the gas absorption refrigerator's inherent defects and risks

21  that they withheld and failed to disclose to the other members of the Class.  ETTER owned the

22  motor home and Norcold refrigerator during the Class Period and are members of the Class.

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  [2] Refrigerator Serial Number 13043751.  Cooling Unit Serial Number 13035899.

6

**B.     Defendants**

14.     Norcold, Inc. ("Norcold") at some point in time was a corporation organized and existing under the laws of the state of Delaware, with its headquarters and principal place of business at 1 Century Drive, Gettysburg, OH 45328. On or about 1997, all of Norcold's assets and stock were purchased by Thetford Corporation and DKM. Norcold is authorized to transact business and is doing business in both California and Florida.

15.     Thetford Corporation ("Thetford") is, and at all times mentioned herein was, a corporation organized and existing under the laws of the state of Delaware, with its headquarters and principal place of business at 7101 Jackson Road, Ann Arbor, MI 48103. Plaintiffs are informed and believe and thereon allege that, at least since 1996, all of the assets and stock of Thetford are owned by Dyson-Kissner-Moran Corporation (DKM). Thetford is authorized to transact business and is doing business in both California and Florida.

16.     Dyson-Kissner-Moran Corporation (DKM) is, and at all times mentioned herein was, a corporation organized and existing under the laws of the state of Delaware, with its headquarters and principle place of business at 565 Fifth Avenue, Fourth Floor, New York, NY 10017. DKM is authorized to transact business and is doing business in both California and Florida.

17.     Plaintiffs are informed and believe and thereon allege that in or about 1997, Defendants DKM and Thetford purchased the assets of Defendant Norcold, and Norcold then became a division of Thetford. Thereafter, Norcold operated as a division or wholly owned subsidiary of Thetford, and Norcold and Thetford operated as divisions or wholly owned subsidiaries of DKM. All Defendants are alter-egos of each other and any corporate veils should be pierced.

18.     Since at least 1997, Thetford and Norcold have operated and have been controlled by DKM as part of DKM's "Recreational Vehicle Group." As part of the organizational structure established by DKM, Norcold operates and is controlled by Thetford through officers and corporate management that is joint to both entities. Thetford and Norcold officers report directly to DKM. All profits generated by Thetford and Norcold flow directly to DKM. DKM

7

1  exercises substantial control over the distribution of profits to and between Thetford and
2  Norcold, and further exercises substantial control over the expenditure of monies by Thetford
3  and Norcold. DKM, Thetford and Norcold are privy to, and share amongst themselves (and/or
4  have access to) the same facts and information regarding the gas absorption refrigerator's
5  inherent defects and risks.

6       19.    DKM has, at all times relevant hereto, combined Thetford and Norcold's
7  management and operations to the point where Norcold has, as a practical matter, ceased to exist
8  as a separate entity. As organized and overseen by DKM, Norcold gas absorption refrigerators
9  are advertised and marketed through Thetford's marketing department and sales staff, in
10 conjunction with Thetford's tradename and trademarks. All written advertising for Norcold
11 products is generated by Thetford. Norcold's products are advertised through both DKM and
12 Thetford's websites. Customer service for Norcold products, including warranty claims, is
13 handled through the customer service department of Thetford by Thetford employees. Norcold
14 does not have its own sales staff, or marketing or customer service departments. In short,
15 Norcold is not organized or operated as an independent entity, but is rather the manufacturing
16 division of Thetford, which is wholly owned and controlled by DKM.

17      20.    DKM has, at all times since at least 1997, exercised substantial control over the
18 design, manufacture, distribution, recall and retrofit of Norcold gas absorption refrigerators.
19 Under the organizational system established and maintained by DKM, Norcold had and has no
20 authority to spend money on changes to the design or manufacture of their gas absorption
21 refrigerators without the prior express consent of DKM. Norcold had and has no authority to
22 initiate recalls of their gas absorption refrigerators without the prior express consent of DKM.
23 Norcold had and has no authority to establish or prosecute a retrofit campaign to remedy defects
24 in their gas absorption refrigerators without the express prior consent of DKM. Since at least
25 2000, all decisions regarding recalls/retrofits of Norcold gas absorption refrigerators – including,
26 but not limited to, the decision to initiate the recall, the scope of the recall, and the remedy to be
27 applied through a retrofit campaign – were made by an executive committee that included, and
28 was controlled by, officers and directors of DKM. Those officers included, but were not limited

1 | to, Robert R. Dyson, Chairman and Chief Executive Officers of DKM, and Michael J. Harris,
2 | President and Chief Operating Office of DKM.

3 |     21.    DKM further controlled the decision to initiate product safety recalls of Norcold
4 | gas absorption refrigerators through a claims reporting procedure established to allow their direct
5 | monitoring of fire claims involving Norcold's products.  Under this system, all fire claims
6 | reported to Norcold were tracked by Norcold employees in an Incident Log which identified the
7 | claim by date of incident, date reported, model of refrigerator, type of recreational vehicle, etc.
8 | Norcold employees were also delegated the task of investigating each claim, including obtaining
9 | fire investigation reports, the latter of which would be included in separate Incident Files.  Under
10 | the system established and maintained by DKM, all of this information was forwarded to James
11 | Fitzsimons, the Secretary and General Counsel of DKM.  Decisions regarding any particular fire
12 | claim were made by Mr. Fitzsimons in his capacity as Secretary and General Counsel of DKM.
13 | DKM made the ultimate decisions regarding the need, timing and scope of recall/retrofit
14 | campaigns involving Norcold gas absorption refrigerators based on this fire claim history.
15 | Regardless of the fire claim history of Norcold's gas absorption refrigerators, Norcold had no
16 | authority to initiate a product safety recall or prosecute a retrofit campaign without the express
17 | prior authority of DKM.

18 |     22.    The commonality of ownership, management and control of Norcold by Thetford,
19 | and of Norcold and Thetford by DKM, eliminates any separation or distinction between the
20 | entities such that Norcold, at all times since 1997, was and is the alter-ego of Thetford, and
21 | Norcold and Thetford were and are the alter-egos of DKM, and for that reason, treating Norcold,
22 | Thetford and DKM as independent and distinct entities would be unfair and prejudicial to
23 | Plaintiffs.  Further, the close, continuous and direct business relationship between DKM,
24 | Thetford and Norcold - including, but not limited to, DKM's close participatory relationship with
25 | the design, manufacture, marketing and distribution of Norcold's gas absorption refrigerators;
26 | DKM's control over and use of both DKM and Thetford tradenames and/or trademarks in the
27 | marketing of Norcold's products;  and the direct financial benefit received by DKM through the

28

COMPLAINT (CLASS ACTION)

1    sale of Norcold's products – establishes sufficient nexus between DKM and Norcold to render

2    DKM liable for placing Norcold's defective products into the stream of commerce.

3         23.    Plaintiffs are ignorant of the true names and capacities of defendants sued herein

4    as DOES 1 to 50, inclusive, and therefore sues said defendants by such fictitious names.

5    Plaintiffs will amend this Complaint to allege the true names and capacities of said defendants

6    when ascertained. Plaintiffs are informed and believe, and based thereon allege that each of said

7    fictitiously named defendants acted intentionally, negligently, and/or recklessly or is responsible

8    in some manner for the occurrences herein alleged, and that each of the violations of Plaintiffs'

9    rights as herein alleged were proximately and legally caused by said defendants' actions.

10        24.    Plaintiffs are informed and believe, and based thereon allege that all of

11   Defendants identified herein, whether identified by name or by fictitious name, were and are the

12   agents, servants, and employees of each of the remaining defendants, and that in doing the things

13   alleged herein were acting within the purpose, course and scope of said agency, service, and/or

14   employment and with the permission, consent, authorization, and subsequent ratification of each

15   of the remaining defendants.

16        25.    Plaintiffs are informed and believe, and based thereon allege that Defendants

17   agreed to, cooperated with, aided, abetted, encouraged, ratified, and/or adopted the acts, actions,

18   wrongdoing, and representations of each of the remaining Defendants herein, and that in doing

19   any act alleged herein, were acting in concert and through a civil conspiracy by and among each

20   Defendant to further the interests of each Defendant individually, and all Defendants as a group.

21                          **IV.    FACTUAL ALLEGATIONS**

22        26.    Beginning at least in 1997, and continuing thereafter, Defendants designed,

23   manufactured, assembled, marketed, sold and otherwise placed into the stream of commerce gas

24   absorption refrigerators for use in recreational vehicles and boats.

25        27.    Defendants' gas absorption refrigerators came in various sizes, including six

26   cubic feet (the "N6" Series), eight cubic feet (the "N8" Series), and twelve cubic feet (the

27   ("1200" Series).

28

28.     All of Defendants' gas absorption refrigerators share the same technology, which involves a process whereby a solution of ammonia, water, sodium chromate, and hydrogen gas is heated by electricity or propane until it boils (approximately 400 degrees Fahrenheit), releasing ammonia gas. The gas circulates through a series of tubes at approximately 450 psi.  As the ammonia gas is first condensed to liquid, and then evaporated through interaction with the hydrogen gas, heat is removed from the refrigerator box, causing the temperature in the box to decrease and providing the refrigeration effect.  The series of tubes is referred to as a "cooling unit", and includes the heat source (propane and electric), as well as a condenser, evaporator, absorber, and solution tank.

A.     **Defendants' Gas Absorption Refrigerators Contain Design and Manufacturing Defects.**

29.     The cooling units used on all of Defendants' N6/N8 Series refrigerators and 1200 Series refrigerators contain common design and/or manufacturing defects that cause fires. Defendants have instituted two (2) product safety recalls of its N6/N8 refrigerators through the National Highway Traffic Safety Administration (NHTSA) – one in 2000 (NHTSA No. 00E-031) and one in 2002 (NHTSA No. 02E-019). Additionally, Defendants have instituted five (5) separate product safety recalls of its 1200 Series refrigerators – NHTSA No. 02E-045 (2002); NHTSA No. 08E-030 (2008); NHTSA Nos. 09E-026 and 09E-027 (2009); and NHTSA No. 10E-049 (2010).  The first six (6) of these recalls involved a single defect common to all of the cooling units used in Defendants' gas absorption refrigerators, described by Defendants as a "low cycle fatigue failure on thermal expansion [when the refrigerator is operated] in the AC mode." The fatigue failure is the result of the inability of the steel tubing used by Defendants' in their cooling units to withstand the fabrication and manufacturing process, and the stresses placed on the tubing during normal operation of the refrigerators, namely, high temperature, high pressure, and corrosive cooling solution.  The combination of these factors causes microscopic cracks at and around the "boiler tube" – the section of the cooling unit that includes the electric heat inputs, and also includes the area where the boiler tube is dimpled to hold an interior "percolator tube." Microscopic cracks in the boiler tube section of the cooling unit causes highly

11

1  flammable cooling solution, ammonia, and hydrogen gas to leak from the cooling unit. When
2  the solution in the cooling unit is reduced by as little as twenty percent (20%), the cooling unit
3  can experience a "run-away heating event" that causes the steel tubing to reach temperatures in
4  excess of 1000 degrees Fahrenheit, resulting in fires, either by ignition of the escaping
5  flammable gases, or by ignition of the combustible unprotected wood inside the refrigerator
6  compartment. This defect carries the risk of injury or death to individuals using their products.

7      30.    Defendants' N6/N8 Series refrigerators and 1200 Series refrigerators contain
8  flammable gases – including hydrogen gas – under high pressure. The gases are heated by
9  electricity or propane to circulate and provide the refrigeration effect. Fires are caused when
10  defects in the refrigerator design release the flammable gases, which can then explosively ignite
11  and spread quickly through the refrigerator compartment and into the passenger area of the
12  recreational vehicle. This is a common defect.

13      31.    In addition to the low cycle fatigue failure modality, which was the subject of the
14  various manufacturer initiated NHTSA recalls described above, Defendants' N6, N8, and 1200
15  Series refrigerators' cooling units also contain further design/manufacturing defects, including,
16  but not limited to, a "safety fuse." The safety fuse is a plug made of low melting point tin-
17  bismuth alloy that is inserted into the end of a tube in the cooling unit. The safety fuse is
18  designed to melt and "blow out" at relatively low temperatures (less than 300 degrees
19  Fahrenheit), thereby depressurizing the cooling unit before it ruptures. However, the safety fuse
20  plug operates on temperature and not on pressure, making it ineffective as a pressure relief
21  system, i.e. it does *not* prevent the cooling unit from rupturing due to high pressure. Further,
22  when the safety fuse "blows out" because it is exposed to heat – as in a fire - it releases the
23  cooling solution into the enclosed space of the refrigerator compartment at over 400 p.s.i.,
24  creating a cloud of highly flammable ammonia and hydrogen gas, which is then ignited by any
25  available ignition source. The effect of this "safety" device -- when operating as designed – is
26  either to initiate a fire where none existed, or make a small fire much worse.

27  / / /
28  / / /

B.   **Defendants' Continued to Produce, Market, and Sell Their Gas Absorption Refrigerators Despite Actual Knowledge of The Defects And Propensity To Cause Fires.**

32.   Since at least 2000, Defendants had actual knowledge of the existence of the above-described design and manufacturing defects.   Since at least 1999, Defendants have maintained databases – including Incident Logs, warranty/return databases, and Incident Files – documenting the fire history of their gas absorption refrigerators, and therefore at all times had actual knowledge that the defects in their gas absorption refrigerators were causing millions of dollars of property damage, personal injury and at least one death to users of their product. Notwithstanding this knowledge, Defendants never modified the design of their gas absorption cooling units, or the fabrication, manufacture or installation of the cooling units, to eliminate the defects, or minimize the effects of the defects.   Defendants never stopped selling and placing the dangerously defective refrigerators into the stream of commerce until the refrigerators could be manufactured to operate safely.   Defendants never provided users of the refrigerators with adequate warnings of the risks of use of the product.   Rather, Defendants actively concealed and minimized the dangers and risks inherent in their defective products from consumers, and federal regulators at NHTSA responsible for ensuring safety on the highways, through a series of stratagems, including, but not limited to:

- Misrepresenting through written warranties provided to purchasers of Defendants' gas absorption refrigerators that the products were free from defects, when in fact Defendants knew that their products contained design defects that created a substantial risk of fire, injury and death when the product was used for its normally intended purpose.

- Misrepresenting the nature and number of defects inherent in the design of their gas absorption refrigerators by describing only the "low cycle fatigue failure" involving "some specific gas absorption cooling units."   In fact, the low cycle fatigue failure modality was and is the result of defective cooling unit tubing design common to all Defendants' N6, N8 and 1200 Series gas absorption refrigerators. Further, Defendants have actual knowledge, through their fire claim

13

databases and internal testing, that their gas absorption refrigerators cause fires in a number of ways in addition to leaks caused by low cycle fatigue failure, including, but not limited to, electric shorting of refrigerator control boards, and internal corrosion.

- Misrepresenting the nature and number of defects inherent in the design of their gas absorption refrigerator cooling units by concealing the dangerously defective safety fuse plug design.

- Establishing a field testing protocol whereby Defendants' gas absorption refrigerators alleged to be a substantial factor in causing and/or enhancing a fire are pressure tested to determine if they leak. The testing protocol arbitrarily sets the maximum pressure of the leak test to 100 p.s.i., notwithstanding the fact that the product normally operates at 450 p.s.i.   The testing protocol focuses exclusively on a small section of the boiler tube, notwithstanding the fact that Defendants have actual knowledge through their own testing and warranty databases that their refrigerator cooling units leak in over forty (40) different places.   The testing protocol Defendants use is intentionally designed (a) *not* to find the kind of microscopic leaks described by Defendants in their product safety recalls; and, (b) *not* to find leaks in any other part of the refrigerator cooling unit, notwithstanding Defendants' knowledge that such leaks regularly occur. Defendants routinely use this testing protocol as part of their risk management practices to reduce their claims exposure, and to mislead consumers into believing that Defendants' gas absorption refrigerators are not defective, or have only one defect when, in fact, they have several.

- Conducting repeated retrofit campaigns to install various devices onto Defendants' gas absorption refrigerators that were represented to "fix" the defects. In truth, however, the retrofit devices – variously described as an algorithm, a thermal safety switch, or a high temperature thermocouple – did not and do not address the defects at all, but only seek to counter the propensity of the

14

defects to cause **fires**. The retrofit devices also did not and do not work to prevent Defendants' products from causing and/or enhancing fires, a fact that Defendants knew about, but concealed from Plaintiffs, all members of the Class, and the federal regulators at NHTSA.

- Minimizing and misleading both the public and federal regulators regarding the true nature and scope of the defects in Defendants' gas absorption refrigerators. Defendants have been placing dangerously defective gas absorption refrigerators into the stream of commerce since at least 1997. During that time, they have received actual notice of over 2,000 fires involving their product. While Defendants have continued to sell their defective products during this time, they have never fixed the product so that it would not catch on fire. In fact, Defendants continue to receive new fire claims involving their gas absorption refrigerators at the rate of 1 to 2 per day, 7 days per week, 365 days per year. Defendants have *never* provided consumers with any information regarding the fire claim history of the product, or all of the risks inherent in the use of the product. Defendants have *never* disclosed to federal regulators the true fire claim history of their product, or the several defects involved in their product. Rather, Defendants have actively concealed the safety risks associated with use of their products.

- Intentionally limiting the number of gas absorption refrigerators subject to some of their product safety recalls, despite having actual knowledge that gas absorption refrigerators not subject to the recalls were also defective and had a propensity to cause deadly fires. Illustrative is the determination by Defendants to exclude 1200 Series cooling units manufactured after January 1, 2003 from any product safety recall between 2003 and 2010. The purported reason for this exclusion was Defendants' "belief" that cooling units manufactured after January 1, 2003 would not cause fires because of the inclusion of an algorithm chip in the electronic controls of the refrigerator. However, Defendants had actual

15

knowledge by September, 2005 that the algorithm was ineffective to prevent fires in 1200 Series refrigerators, and, by 2010, had further actual knowledge that 1200 Series refrigerators equipped with the algorithm had caused at least 165 fires. Defendants never advised consumers who had algorithm-equipped refrigerators: (a) that their refrigerators had defects which created potential safety risks of fire; (b) that their refrigerators were equipped with a fail-safe device (i.e. the algorithm) that was designed to counter the safety risks inherent in the refrigerators' design; or, (c) that Defendants had determined that the algorithm was not effective to prevent fires and that the manufacturer had decided to move to a different safety device. Defendants never provided owners of algorithm-equipped refrigerators with any warning or other notice of risks in the continued use of their refrigerator until after October 7, 2010, when Defendants finally recalled all 1200 Series refrigerators they ever made.

- Misrepresenting and misleading consumers and federal regulators regarding the efficacy of their most recent product safety recall. The ostensible purpose of the October 7, 2010 recall of 1200 Series refrigerators was to retrofit the products with another safety device to replace the algorithm and thermal safety switch which Defendants finally conceded did not work to stop the refrigerators from causing fires. Defendants represented to both consumers and federal regulators that the new device was effective to render their product safe to use. In fact, the new device is itself defective in design and/or manufacture, in that, in many instances, it simply does not work. Plaintiffs are informed and believe that Defendants are on their fifth or sixth version of the new device, which has not yet proven to work reliably. Even when the new device works, it is ineffective to stop Defendants' product from causing fires, because it does not address or eliminate the design and/or manufacturing defects inherent in Defendants' products. Defendants' products continue to cause fires, even when equipped with the latest safety device.

16

34.     The design and manufacturing defects in Defendants' gas absorption refrigerators, Defendants' active concealment of those defects, and the inadequate and fraudulent product safety recall/retrofit campaigns conducted by Defendants, created serious and unreasonable safety risks to consumers and users of Defendants' products, *i.e.* the risk of property damage, injury and death by fire.  These safety risks were and are material to a reasonable consumer, including Plaintiffs and the members of the Class that own Defendants' products.  Had Defendants disclosed the true nature and scope of the safety risks inherent in the use of their product in the sales and marketing material provided consumers along with the product, or with warnings prominently placed on the product, Plaintiffs, and all others similarly situated, would have been aware of it and acted differently, *i.e.* purchased a different recreational vehicle that did not contain Defendants' defective product; or, paid less for the recreational vehicle or boat because of the defective product or because of the cost of replacing the defective product with a non-defective product.  Defendants had actual and exclusive knowledge of the exact nature and scope of the defects in their products, the fire claim history of the products, and the fact that their recall and retrofit campaigns did not address or eliminate the defects, and therefore, at all times, had a duty to disclose the safety risks inherent in the use of their product, and the inadequacies of their recall/retrofit campaigns to Plaintiffs, and to all members of the Class described herein.  However, Defendants at all times actively concealed the true nature and scope of the defects, safety risks, and recall/retrofit inadequacies from Plaintiffs, and the members of the Class described herein.

35.     Defendants have a duty to manufacture defect-free products and to disclose details about known defects and hazards both truthfully and completely.  The refrigerators that Defendants manufactured and placed into the stream of commerce have at least one common defect that poses a serious risk of fire, injury and death, but they have never eliminated that defect, notwithstanding their actual knowledge of alternative designs that would lessen or eliminate the risks.  On the contrary, Defendants continue to market their refrigerators with representations that they are reliable and defect-free knowing that their products are dangerously defective.  Defendants have a duty to recall and retrofit the products so that they can be operated

17

1    safely. While Defendants have conducted a number of product safety recalls and represented

2    that the retrofits would render the products safe to use, they have actual knowledge that the

3    retrofits don't work in that, *inter alia*: (a) they do not eliminate the defect that causes the risk of

4    fire in the first place; and, (b) they are ineffective to counter the risks posed by the defects.

5    Defendant's products continue to cause fines even after the retrofit. These facts, however, are

6    not disclosed to the members of the Class and instead constitute material omissions.

7           36.     As a result of their concealment and other actions outlined above, Plaintiffs and

8    the members of the Class that owned and/or own Defendants' gas absorption refrigerators have

9    been misled by Defendants' omissions into purchasing and using the refrigerators, believing

10   them to be safe for their intended purpose. Plaintiffs and the members of the Class have further

11   been misled by Defendants' omissions into believing that their refrigerators do not contain

12   dangerous defects or potential risks or, if the refrigerators were part of a product safety recall by

13   Defendants, that any defects or potential safety risks have been eliminated by Defendants'

14   retrofit campaigns. In fact, Defendants' gas absorption refrigerators have never been, and are

15   not, safe for their intended purpose in that Defendants have never eliminated the design and

16   manufacturing defects which cause their products to ignite fires. Plaintiffs reasonably relied

17   upon Defendants' conduct described herein. Defendants made material omissions regarding the

18   defects and hazards associated with the gas absorption refrigerators, information solely within

19   Defendants' control, rendering it impossible for Plaintiffs and the members of the Class to know

20   the hazards associated with the gas absorption refrigerators they purchased. As a result,

21   Plaintiffs and the members of the Class who own Defendants' gas absorption refrigerators

22   continue, unknowingly, to be put at risk of damage, injury and death through the use of

23   Defendants' defective gas absorption refrigerators.

24   ///

25   ///

26   ///

27   ///

28   ///

**C. Defendants' Recalls Cause Further Injury To Consumers By Destroying Their Refrigerators Before A Fire Is Ignited.**

37. In September 2005, Defendants began to install a Thermal Safety Switch (TSS) on all new Norcold 1200 Series refrigerators. The TSS was a metal sleeve installed toward the base of the refrigerator chimney/flue, with a thermal sensor designed to cut all power to the refrigerator in the event of excessive heat being detected in the refrigerator cabinet. Excess heat was a sign that the cooling unit was defective, overheating and likely to ignite a fire. Defendants did not begin to offer the TSS to consumers through product safety retrofit campaigns until March 2008.

38. Beginning with the October 2010 product recall, Defendants began to replace the TSS with a new device – the High Temperature Sensor ("HTS"). Unlike the TSS – which measured heat inside the refrigerator cabinet – the HTS was designed to be attached directly to, and to measure the temperature of, the refrigerator cooling unit boiler tube, i.e. the tube that is heated with either the 110 VAC heaters or propane burner. The HTS was designed to measure and understand the boiler temperature, and if the module sensed high temperature from the boiler tube, to cut off electric power to the refrigerator before the cooling unit could overheat and cause a fire.

39. Neither of the above-mentioned retrofits worked to eliminate the defects and inherent safety risks in Defendants' refrigerators. As a result, defects still remain. For example, neither of the retrofits have dealt with – much less eliminated - the propensity of the cooling units to leak cooling solution and flammable gases, which cause the cooling units to overheat and cause fires. Neither of the retrofits has been able to control – much less eliminate – the excessive temperatures leaking cooling units achieve, which lead to fires. Neither of the retrofits has addressed the other failure modalities of Defendants' gas absorption refrigerators, such as fires caused by faulty electric control panels. Neither of the retrofits has addressed the defective design of the safety fuse plug common to all of Defendants' products. Finally, neither retrofit did anything to protect the combustibles inside the refrigerator compartment – such as the bare wood of the compartment itself – from the excessive heat and/or fire resulting from a malfunctioning cooling unit. Upon information and belief, every new gas absorption refrigerator

19

sold by Defendants contains the same design and/or manufacturing defects as described above, with the sole exception that the new refrigerators are equipped with the Thermocouple safety device. These facts have not been disclosed to members of the Class.

40.   With both of the above-mentioned retrofits, once the fail-safe devices "trip," the electric power to the refrigerator is shut down, and there is no alternative but to replace the cooling unit or get a new refrigerator, since once the module is tripped the refrigerator can no longer operate. Thus, Defendants' retrofits do not "fix" the defects inherent in the product but simply mask the defects by destroying a malfunctioning cooling unit and refrigerator, presumably before it destroys a consumer's recreational vehicle, or worse, causes a devastating fire. Defendants have and continue to intentionally conceal the operation and effect of the TSS and HTS from consumers, including Plaintiffs and members of the Class described herein.

41.   The misleading, ineffective and fraudulent recall and retrofit campaigns Defendants have initiated regarding their gas absorption refrigerators have injured and harmed, and continue to harm, consumers in *inter alia*, the following ways. First, by failing to disclose complete and accurate information regarding the nature and scope of the design and manufacturing defects in their product, Defendants have misled, and continue to mislead consumers into the belief that Defendants' products are safe to use for their intended purpose, when in fact said products constitute a serious fire hazard. Second, Defendants' misleading and ineffective recall and retrofit campaigns have created, and continue to create, the false impression with consumers that if they participate in the recall campaigns, their gas absorption refrigerators will be rendered safe to use, when in fact the retrofits used by Defendants are ineffective to prevent their products from causing fires. Third, Defendants have failed, and continue to fail to advise consumers that the retrofit campaigns are not only ineffective, but that the devices installed through said campaigns actually operate to destroy consumers' refrigerators, requiring them to purchase a replacement refrigerator. Fourth, Defendants have misrepresented, and continue to misrepresent, the existence and scope of warranty protection available to consumers regarding Defendants' products, and deny warranty coverage to consumers, forcing consumers to incur the entire cost of repairing or replacing Defendants' defective products.

20

1   Even if the refrigerator is replaced under warranty, the consumer is harmed because he or she

2   receives another of Defendants' gas absorption refrigerators with the same defects and risks of

3   fire as the unit replaced.  Whether the refrigerator is replaced, or subject to Defendants' retrofit

4   campaign, consumers are forced to incur the costs to deliver their vehicles to dealers and RV

5   repair shops, and thereby incur further damages and expenses for loss of use of the vehicles/boats

6   while the replacement/retrofit is done.  Many consumers have had to incur these costs and

7   expenses on more than one occasion due to the multiple and ineffective recall campaigns.  All of

8   these costs and expenses to consumers are the result of Defendants placing dangerously defective

9   products into the stream of commerce in the first place, and thereafter failing to effectively recall

10  and retrofit the products so that they are safe for their intended use.

11      42.    Defendants' conduct, as outlined herein, is unfair, misleading and deceptive.

12  Consumers are induced into believing that Defendants' products are not defective, or that any

13  defects have been corrected through the product safety recalls.  In reality, Defendants are doing

14  nothing to correct the defects and only installing a retrofit that attempts to eliminate the

15  propensity to cause fires by destroying the refrigerator entirely.

16      43.    Rather than design and manufacture a product that is safe to use, Defendants are

17  in fact turning their design and manufacturing defects into a profit generating mechanism. If the

18  defects in Defendants' refrigerator cause a fire that destroys the product, Defendants make

19  money selling the consumer a new refrigerator.  If a consumer's refrigerator is destroyed because

20  of the devices retrofitted by Defendants through their recall campaigns, the effect is the same –

21  Defendants make money selling another refrigerator.  In either event, the consumer is damaged

22  by being forced to pay some or all of the cost of replacing Defendants' defective product.

23  Further, in those instances where Plaintiffs and members of the Class have purchased another of

24  Defendants' refrigerators, Defendants have, and continue, to profit from their own wrongful

25  conduct.

26      44.    In all scenarios, Plaintiffs and Class members have not received the value for

27  which they bargained when they purchased Defendants' product.

28

45.     As a result of the defects in Defendants' gas absorption refrigerators, the value of Plaintiffs' and the Class members' recreational vehicles has diminished.

### III.     CLASS ACTION ALLEGATIONS

46.     Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to Code of Civil Procedure §382 ("CCP 5382") and Civil Code §1781 on behalf of the Class consisting of the following State subclasses defined as:

### The California State Subclass

All persons, who during the Class Period, purchased and/or owned a Norcold N6, N8 and/or 1200 Series gas absorption refrigerator in California (the "California State Subclass").

### The Florida State Subclass

All persons, who during the Class Period, purchased and/or owned a Norcold N6, N8 and/or 1200 Series gas absorption refrigerator in Florida (the "Florida State Subclass").

The Class Period dates back four years (or the length of the longest applicable statute of limitations for any claim asserted) from the date this action was commenced and continues through the present and the date of judgment. Excluded from the classes are: (a) any officers, directors or employees of Defendants; (b) any judge assigned to hear this case (or spouse or family member of any assigned judge); (c) any employee of the Court; and, (d) any juror selected to hear this case. (Collectively the California State subclass and the Florida State subclass are referred to as the "Class," 'State Subclasses" and/or "State Law Subclasses").

47.     Numerosity of the Class. Members of each of the State Law Subclasses are so numerous that their individual joinder herein is impracticable. The precise number of members of the State Law Subclasses and their addresses are presently unknown to Plaintiffs. Plaintiffs are informed and believe that Defendants have manufactured and sold over 200,000 N6, N8, and 1200 Series gas absorption refrigerators in the United States since 1996, of which over 10,000 are currently owned by individuals/entities located in the State of California alone. Plaintiffs therefore allege that the total number of members in each of the State Subclasses is well in excess of 10,000 persons and/or entities who would fall within the proposed class definitions.

48. Ascertainable Class. The community of interest among these class members in the litigation is well defined and the proposed classes are ascertainable from objective criteria.

49. Common Questions of Fact and Law Exist and Predominate over Individual Issues. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. These common questions of law and fact exist as to all members of the Class and predominate over the questions affecting only individual members of the Class. These common legal and factual questions include without limitation:

    a.    Whether Defendants engaged in the conduct as alleged herein;

    b.    Whether the N6, N8 and 1200 series gas absorption refrigerators that Defendants manufactured and placed into the stream of commerce have a common defect;

    c.    Whether Defendants made material omissions about the N6, N8 and 1200 series gas absorption refrigerators that Defendants manufactured and placed into the stream of commerce;

    d.    Whether Defendants practices violate applicable law;

    e.    Whether Plaintiffs and the other members of the Class are entitled to actual, statutory, or other forms of damages, and other monetary relief; and

    f.    Whether Plaintiffs and other members of the Class are entitled to equitable relief, including but not limited to injunctive relief and restitution.

50. Defendants have engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the other members of the Class. Similar or identical statutory and common law violations, business practices, and injuries are involved as to all members in each State Subclass. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

/ / /

/ / /

/ / /

/ / /

51.     Plaintiffs are members of and present claims that are typical of the claims of members of the Class.  Plaintiffs each owed one of the Norcold gas absorption refrigerators at issue during the Class Period.  Plaintiffs and all Class members each sustained damages arising from Defendants' wrongful conduct, as alleged more fully herein.  The same material facts that Defendants withheld from the Plaintiffs were withheld from the other members of the Class.

52.     All members of the Class have been the subject of Defendants' unfair and unlawful business practices as described herein. The relief sought is common, unitary, and class-wide in nature.

53.     Adequacy of Representation.  Plaintiffs will fairly and adequately represent and protect the interest of the members of the Class.  Plaintiffs share a common interest with all Plaintiff class members, with respect to the conduct of Defendants herein, and redress of same. Plaintiffs have suffered an injury-in-fact as a result of the conduct of Defendants, as alleged herein. Plaintiffs have retained counsel who are competent and experienced in the prosecution of complex consumer fraud, mass tort and class actions.  Plaintiffs and their counsel intend to prosecute this action vigorously and faithfully for the benefit the State Subclass members. Plaintiffs have no interests contrary to the class members, and will fairly and adequately protect the interests of the State Subclasses.

54.     Community of Interest. The proposed State Subclasses have a well defined community of interest in the questions of fact and law to be litigated.  The common questions of law and fact are predominant with respect to the liability issues, relief issues and anticipated affirmative defenses. The Named Plaintiffs have claims typical of the Class.  Without limitation, as a result of Defendants' conduct alleged herein, Plaintiffs were: (a) injured; (b) deprived of the value of the goods that they bargained for; and, (c) sustained pecuniary loss in an ascertainable amount to be proven at the time of trial.

55.     Superiority of Class Adjudication. The certification of a class in this action is superior to the litigation of a multitude of cases by members of the putative classes.  Class adjudication will conserve judicial resources and will avoid the possibility of inconsistent rulings. Moreover, there are class members who are unlikely to join or bring an action due to,

among other reasons, their reluctance to sue Defendants and/or their inability to afford a separate action. Equity dictates that all persons who stand to benefit from the relief sought herein should be subject to the lawsuit and hence subject to an order spreading the costs of the litigation among the class members in relationship to the benefits received. The damages, restitution and other potential recovery for each individual member of the classes are modest given the low-purchase price of the consumer goods at issue, relative to the substantial burden and expense of individual prosecution of these claims. Given the amount of the individual class members' claims, few, if any, class members could afford to seek legal redress individually for the wrongs complained of herein. Even if the members of the classes themselves could afford individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

56.   In the alternative, the above-referenced State Subclasses may be certified because:

a. The prosecution of separate actions by the individual members of the classes would create a risk of inconsistent or varying adjudication with respect to individual class members' claims which would establish incompatible standards of conduct for Defendant;

b. The prosecution of separate actions by individual members of the classes would create a risk of adjudications which would as a practical matter be dispositive of the interests of other members of the classes who are not parties to the adjudications, or which would substantially impair or impede the ability of other class members to protect their interests; and,

c. Defendants have acted or refused to act on grounds generally applicable to the classes, thereby making appropriate final and injunctive relief with respect to the State Subclasses.

25

## FIRST CAUSE OF ACTION

**Violation of California Legal Remedies Act, California Civil Code §1750 et. seq.**
**(Brought on Behalf of Plaintiffs KAHLER, CURTIS and the California State Subclass)**

57.   Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as though stated herein.

58.   Plaintiffs KAHLER and CURTIS bring this claim individually and on behalf of all others similarly situated in the State of California.

59.   Plaintiffs' claims arise under and are brought pursuant to Cal. Civil Code §1750 et seq., commonly known as the Consumers Legal Remedies Act (hereinafter "CLRA" or "§1750").

60.   Plaintiffs do not seek recovery of damages under this CLRA claim at this time. By letter dated December 5, 2012, mailed as directed in Civil Code §1782, Plaintiffs notified Defendants of its violations of the CLRA and demanded that Defendants provide a remedy that rectifies its misconduct.  In this complaint, Plaintiffs and the California Subclass Members seek only injunctive and other equitable relief pursuant to Civil Code §1780(a) and (d).  If Defendants fail to give or agree to give a sufficient remedy for the violations of the CLRA set forth herein within a reasonable time (30 days) as set forth in Civil Code §1782(c), Plaintiffs will amend this complaint to also seek damages.

61.   The CLRA prohibits deceptive, misleading and unconscionable practices as described within.  Terms of the CLRA cannot be waived.  Cal. Civil Code §1751.

62.   Defendants are "persons" within the meaning of Civil Code §§1761(c) and 1770.

63.   Defendants sell "goods" within the meaning of Civil Code §§1761(a) and 1770. These unfair deceptive and unlawful practices described herein were committed by Defendants in the conduct of trade and commerce in goods and services.

64.   Plaintiffs and all members of the California State Subclass are consumers who purchased and/or owned one or more of Defendants' N6, N8 or 1200 Series gas absorption refrigerators, either as separate products, or as installed in recreational vehicles. By entering into

COMPLAINT (CLASS ACTION)

1   the subject transactions, Plaintiffs and the Class members purchased goods on services, for

2   personal, family, or household purposes and their transactions are subject to the CLRA.

3       65.    Defendants made material omissions about the defects in their gas absorption

4   refrigerators as described within.

5       66.    By concealing and failing to disclose material facts regarding the defects in their

6   gas absorption refrigerators, Defendants have violated Civil Code §1770(a) in that they have

7   represented that their refrigerators had characteristics and benefits that they do not have, and

8   represented that their refrigerators were of a particular standard, quality or grade when they were

9   of another.

10      67.    Defendants' unfair acts and/or practices occurred repeatedly in Defendants' trade

11  or business, were capable of deceiving a substantial portion of the purchasing public, and

12  imposed a serious safety risk on the public.

13      68.    Defendants knew that their gas absorption refrigerators were defectively designed

14  and/or manufactured, would fail prematurely, and were not fit for their intended purpose.

15      69.    Defendants were under a duty to Plaintiffs and the California State Subclass to

16  disclose the defective nature of their refrigerators because:

17          a.    Defendants were in a superior position to know the true state of facts

18              about the safety defects in their gas absorption refrigerators;

19          b.    Plaintiffs and members of the California State Subclass could not

20              reasonably have been expected to learn or discover that the refrigerators

21              had dangerous safety defects until they manifested failure; and,

22          c.    Defendants knew that Plaintiffs and members of the California State

23              Subclass could not reasonably have been expected to learn or discover the

24              safety defects in the refrigerators.

25      70.    In failing to disclose the defects in their product, Defendants knowingly and

26  intentionally concealed material facts and breached their duty not to do so.

27      71.    The facts concealed or not disclosed by Defendants to Plaintiffs and members of

28  the California State Subclass are material in that a reasonable consumer would have considered

1  them to be important in deciding whether to purchase Defendants' products or pay a lesser price.

2  Had Plaintiffs and the members of the California State Subclass known of the defective nature of

3  Defendants' products, they would not have purchased the products, or would have paid less for

4  them.

5      72.    By reason of the foregoing, Defendants violated laws prohibition, unfair and

6  deceptive trade practices including, but not limited to, Civil Code §§1770 (a)(2), (3), (5), (7),

7  (14) and (16). Through the above conduct and omissions, Defendants, *inter alia:*

8          a)  Misrepresented the approval of certification of goods or services (Civil Code

9            §1770(a)(2));

10          b)  Misrepresented the certification of goods or services (Civil Code §1770 (a)(3));

11          c)  Represented that goods or services have sponsorship, approval, characteristics,

12            uses or benefits which they do not have (Civil Code §1770 (a) (5));

13          d)  Represented that goods or services are of a particular standard, quality or grade,

14            or that goods are of a particular style or model, if they are another (Civil Code

15            §1770 (a)(7));

16          e)  Advertised goods or services with intent not to sell them as advertised (Civil Code

17            §1770 (a)(9));

18          f)  Represented that a transaction confers or involves rights, remedies, or obligations

19            which it does not have or involve, or which are prohibited by the law (Civil Code

20            §1770 (a)(14)); and,

21          g)  Represented that the subject of a transaction has been supplied in accordance with

22            a previous representation when it has not (Civil Code §1770 (a)(16)).

23      73.    Plaintiffs and members of the California State Subclass reasonably expected that

24  Defendants' gas absorption refrigerators would function properly and not be susceptible to the

25  hazards described within for the life of their recreational vehicles. That is the reasonable and

26  objective consumer expectation for gas absorption refrigerators.

27      74.    As a result of the foregoing, Plaintiffs and the members of the California State

28  Subclass are entitled to equitable relief, as prayed for below.

## SECOND CAUSE OF ACTION

**Violation of Song-Beverly Consumer Warranty Act, California Civil Code §1790, et seq.**
**(Brought on Behalf of Plaintiffs KAHLER, CURTIS and the California State Subclass)**

75.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as though stated herein.

76.    Plaintiffs KAHLER and CURTIS bring this claim individually and on behalf of all others similarly situated in the State of California.

77.    Plaintiffs and all members of the California State Subclass are consumers who purchased and/or owned one or more of Defendants' 6, 8 or 1200 Series gas absorption refrigerators, either as separate products, or as installed in recreational vehicles as original equipment.  Defendants' refrigerators were purchased primarily for family and household use, and said products were therefore "consumer goods" as that term is defined in the Song-Beverly Consumer Warranty Act (hereinafter the "ACT"), Cal. Civil Code §1790, et seq.

78.    Plaintiffs and all members of the California State Subclass are "buyers" of consumer goods under the ACT.

79.    Defendants are "manufacturers" and/or "distributors" under the ACT.

80.    Defendants offered, sold, distributed and otherwise placed their gas absorption refrigerators into the stream of commerce accompanied by express warranties that the products were reliable and free of defects.  In addition to these express warranties, the sale of Defendants' gas absorption refrigerators were accompanied by Defendants' implied warranties that their refrigerators were merchantable, and fit for the purpose for which they were intended.

81.    The above-described defects and non-conformities to warranty of Defendants' gas absorption refrigerators manifested themselves within the applicable express warranty period, and/or within the applicable express warranty period as extended pursuant to Civil Code §1795.6, and substantially impaired the use, value and/or safety of the products.

82.    Plaintiffs and members of the California State Subclass delivered Defendants' gas absorption refrigerators to repair facilities authorized by Defendants to effect repairs and correct the above-described defects and nonconformities in Defendants' products.

83. Defendants, and their agents, were unable to conform Plaintiffs' and Class members' refrigerators to the applicable express and implied warranties after a reasonable number of attempts, including attempted repairs and retrofits pursuant to product safety recalls initiated by Defendants.

84. Notwithstanding Plaintiffs' and Class members' entitlement under the Act and demand by Plaintiffs and Class members therefore, Defendants have failed to either promptly replace Plaintiffs' and Class members' gas absorption refrigerators with a new, non-defective and conforming refrigerator, or promptly to make restitution in accordance with the Act.

85. Defendants' failure to remedy the defects in their gas absorption refrigerators described above, or to replace said refrigerators or provide restitution to Plaintiffs and Class members, constitutes a breach of Defendants' obligations to Plaintiffs and Class members under the Act.

86. In addition to the acts described above, Defendants have engaged in a persistent pattern and practice of denying warranty coverage to consumers to repair and/or replace Defendants' defective products. Defendants sell their gas absorption refrigerators with three different express warranties – a one (1) year limited warranty covering repair or replacement of defective parts; a two (2) year limited warranty for labor to repair or replace defective parts; and, a three (3) year limited warranty that their product is free from defects. Under the Act, the expiration of all said express warranties is extended so long as repairs and/or service performed on a manufacturer's nonconforming goods does not remedy the nonconformity for which the repair or service was performed. As described above, Defendants' gas absorption refrigerators were defective when sold to Plaintiffs and all members of the California State Subclass, and were therefore nonconforming goods. Notwithstanding any repair or service by or on behalf of Defendants, the nonconformities were never eliminated, and under California law, Defendants' express warranties therefore never expired. Nevertheless, Defendants engaged in a pattern and practice of representing to Plaintiffs, and to members of the subclass, that the latters' warranties had not been extended, but had expired. Defendants engaged in this conduct with the intent of shirking their warranty obligations, and passing the cost of their defective products onto

30

1  consumers. This conduct is a violation of Cal. Civil Code §1795.6, and constitutes a breach of

2  Defendants' obligations to Plaintiffs and Class members under the Act.

3      87.    In addition to the acts described above, Defendants have instituted a clandestine

4  policy and procedure to conceal the true nature and scope of the defects and risks in their gas

5  absorption refrigerators by paying some or all of the costs to replace or retrofit the refrigerators

6  of those owners who are the most vocal and persistent in seeking those remedies, including those

7  owners who threaten legal action, notwithstanding Defendants' stated position that the cost of

8  replacement or retrofit of refrigerators that are outside Defendants' warranty period is on the

9  consumer. Defendants have not, and do not, disclose their policy of extending their warranty

10  coverage to those consumers who complain the most, but keep such policy confidential, using

11  terms such as "goodwill" to mask the secret exceptions to their warranty policy. This conduct is

12  a violation of the Secret Warranty Law, Cal. Civ. Code §1795.90(d), and constitutes a breach of

13  Defendants' obligations to Plaintiffs and Class members under the Act.

14      88.    In addition to the acts described above, Defendants have compelled Plaintiffs and

15  Class members to incur costs and expenses to transport, convey and deliver Defendants'

16  defective gas absorption refrigerators to authorized repair facilities, and in many instances to pay

17  some or all of the material and/or labor costs incurred in Defendants' unsuccessful attempts to

18  repair and correct their products' defects and nonconformities. In addition, in many instances

19  Defendants have not created or maintained sufficient inventory of parts and supplies to repair the

20  defects and nonconformities in their gas absorption refrigerators so that repairs can be

21  accomplished in a reasonable time, i.e. within thirty (30) days. This conduct is a violation of

22  Cal. Civil Code §1793.2, and constitutes a breach of Defendants' obligations to Plaintiffs and

23  Class members under the Act.

24      89.    Plaintiffs and Class members are justified and entitled to revoke their acceptance

25  of Defendants' gas absorption refrigerators under the Act. Plaintiffs and Class members intend

26  that service of the Summons and Complaint in this action shall serve as notice that Plaintiffs and

27  Class members have revoked acceptance of Defendants' gas absorption refrigerators, and will

28

COMPLAINT (CLASS ACTION)

1    tender said products on condition that Defendants restore to Plaintiffs and all Class members the

2    consideration advanced and/or paid.

3          90.    Plaintiffs and Class members are justified and entitled to rescission of the sale

4    regarding Defendants' gas absorption refrigerators, and will tender the refrigerators on condition

5    that Defendants restore to Plaintiffs and Class members all consideration advanced or paid by

6    Plaintiffs and Class members.   Defendants refuse, and continue to refuse, to return said

7    consideration or to recognize that said sale has been rescinded.

8          91.    As a direct and proximate result of Defendants' violations of the Act Plaintiffs

9    and Class Members are entitled to reimbursement of the purchase price paid for Defendants' gas

10   absorption refrigerators, less that amount directly attributable to use prior to discovery of the

11   nonconformities, in an amount which will be established according to proof.

12         92.    As a further direct and proximate result of Defendants' violations of the Act

13   Plaintiffs and Class Members are entitled to all incidental, consequential and general damages

14   they have suffered or sustained, in an amount which will be established at trial according to

15   proof.

16         93.    As a further direct and proximate result of Defendants' violations of the Act

17   Plaintiffs and Class Members are entitled to recover a sum equal to the aggregate amount of

18   costs and expenses, including attorney's fees, reasonable incurred in connection with the

19   commencement and prosecution of this action, in an amount which be established at trial

20   according to proof.

21                              **THIRD CAUSE OF ACTION**

22                         **Breach of Express and Implied Warranty**
       **(Brought on Behalf of Plaintiffs KAHLER, CURTIS and the California State Subclass)**
23

24         94.    Plaintiffs incorporate by reference every other paragraph of this Complaint as

25   through fully stated herein.

26         95.    Plaintiffs KAHLER and CURTIS bring this claim individually and on behalf of

27   all other similarly situated in the State of California.

28
                                          32

96.     Defendants made statements of fact, which were received by Plaintiffs and members of the California State Subclass. Defendants' statements included, but were not limited to, (a) they had a global reputation for excellence in the design and manufacture of gas absorption refrigerators based on many years of experience that created an assurance of quality in their products; (b)  their gas absorption refrigerators were designed and manufactured to meet the highest standards of reliability and performance;  (c) quality, integrity and reliability were built into each unit made in America by an American-owned company;  (d) that the refrigerators were superior, with exceptional performance; and, (e)  that the refrigerators were the hallmark of performance and reliability by America's leading manufacturer of refrigerators and freezers for RV, Marine and Truck markets. Defendants also provided Plaintiffs and members of the classes with written warranties and owner's manuals in which they stated and warranted that their gas absorption refrigerators were free from defects.

97.     At the time Defendants marketed and otherwise placed their gas absorption refrigerators into the stream of commerce, they knew that the refrigerators were going to be installed in recreational vehicles which would then be sold to consumers, including Plaintiffs and members of the California State Subclass, for personal and recreational use. Defendants also knew that consumers, including Plaintiffs and members of the California State Subclass,  would have no ability or opportunity to inspect their gas absorption refrigerators for defects, but instead would rely on Defendants' representations and on Defendants' knowledge, expertise, and experience to manufacture a gas absorption refrigerator that was safe and reliable for its intended purpose.

98.     Defendants' gas absorption refrigerators were defective, in that they contained design and manufacturing defects which created and/or enhanced fires, with the potential of causing serious damage, injury and/or death.

99.     Defendants have failed to deliver to Plaintiffs and members of the California State Subclass the thing purchased, and have delivered a thing other than the thing purchased, and have thus breached the express warranties of sale.

1    100.    Defendants intentionally and deceptively withheld material facts regarding the
2 product defects from Plaintiffs and members of the California State Subclass.

3    101.    As a direct and proximate result of Defendants' breach, Plaintiffs and members of
4 the California State Subclass have suffered, and will continue to suffer, significant economic
5 damages, including, but not limited to, the diminution of value of their recreational vehicles, in
6 an amount that will be established at trial according to proof.

7                        **FOURTH CAUSE OF ACTION**

8                   **Violation of California Unfair Competition Law,**
                 **California Business and Professions Code §17200 *et. seq.***
9     **(Brought on Behalf of Plaintiffs KAHLER, CURTIS and the California State Subclass)**

10    102.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as
11 though stated herein.

12    103.    Plaintiffs KAHLER and CURTIS bring this claim individually and on behalf of
13 all others similarly situated in the State of California.

14    104.    The State of California has enacted statutes designed to protect consumers against
15 unfair, deceptive, fraudulent, and unconscionable trade and business practices, and/or false
16 advertising. Those statutes further allow consumers to bring private and/or class actions. These
17 statutes are:

18         a.  California Consumer Legal Remedies Act, Cal. Civ. Code §1750, *et. seq;*

19         b.  California's Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et. seq.,*
20             and Cal. Bus & Prof. Code §17500, *et. seq.*

21    105.    In addition, the California Unfair Competition Law, Cal. Bus. & Prof. Code
22 §17200, *et seq.* (UCL) declares that any act or business practice that is forbidden by law is
23 unlawful and a violation of the UCL.

24    106.    Each of the Plaintiffs and proposed class members in the California State Subclass
25 is a consumer, purchaser, or other person entitled to the protection of the above-described
26 consumer protection laws.

27    107.    Plaintiffs suffered both injury-in-fact and lost money as a result of Defendants'
28 conduct and practices which are described herein and challenged.

34

108.    Defendants' N6, N8 and 1200 Series gas absorption refrigerators constitute products to which these consumer protection statutes apply.

109.    To the extent required, Plaintiffs in the California State Subclass have provided Defendants notice under each of the above listed statutes.

110.    Defendants' conduct, as described above, constitutes unlawful, unfair and fraudulent practices under the UCL.

111.    Defendants' unlawful practices include, but are not limited to:

    a.    Violations of the Song-Berverly Consumer Warranty Act, Cal. Civil Code §§1793.2, 1795.6, 1795.90(d); and,

    b.    Cal. Civil Code §1770 (a) (2), (3), (5), (7), (14) and (16).

112.    Defendants committed unfair and/or fraudulent business practices by the acts alleged herein, including, but not limited to:

    a.    Designing, manufacturing, assembling, marketing, distributing, selling and otherwise placing into the stream of commerce dangerously defective gas absorption refrigerators that posed serious safety risks to users of the product, and members of the general public;

    b.    Misrepresenting through sales, operational and marketing material, and through written warranties, that Defendants' gas absorption refrigerators were free from defects, when in fact Defendants knew that they contained several design defects that created a substantial risk of fire, injury and death when the product was used for its normally intended purpose;

    c.    Misrepresenting the nature and number of defects inherent in the design of their gas absorption refrigerators, including, but not limited to, the number of Defendants' products containing said defects;

    d.    Conducting repeated manufacturer-initiated recall and retrofit campaigns which were intentionally misleading in an effort to minimize and conceal the nature and scope of the defects in Defendants' products, including the serious safety risks arising from said defects;

35

e.    Conducting retrofit campaigns to install various devices onto Defendants' gas absorption refrigerators that were represented to "fix" the defects when in fact, the retrofit devices did not address the defects at all, or the propensity of the defects to cause and/or enhance fires;

f.    Concealing the fact that the retrofit devices installed on Defendants' products were not only ineffective to stop fires, but were in fact designed by Defendants to turn their defective products into a new source of profits, by rendering their refrigerators unrepairable, thereby requiring consumers to purchase – at their cost – another of Defendants' gas absorption refrigerators.

113.   Defendants knew that their N6, N8 and 1200 Series gas absorption refrigerators were defectively designed, would fail prematurely, and were not suitable for their intended use. Defendants also knew that the design defects in their gas absorption refrigerators created and constituted a serious safety and fire hazard. Further, Defendants knew that the design defects and safety hazards in their gas absorption refrigerators could be substantially decreased, if not totally eliminated, by the adoption of alternate designs readily available in the market.

114.   Notwithstanding Defendants' knowledge of the design defects and inherent safety risks in their gas absorption refrigerators, and their knowledge of alternate designs to eliminate the defects and safety hazards, Defendants failed and refused to alter their gas absorption refrigerator design, and instead engaged in a continuous pattern of deception and concealment, designed to mislead Plaintiffs in the California State Subclass into believing that their gas absorption refrigerators were safe, when in fact they were, and continue to be, dangerously defective.

115.   Defendants, at all times up to the filing of this complaint, have engaged in a pattern of concealment and misrepresentation designed to mislead Plaintiffs and all members of the Consumer Protection States Subclasses into believing that Defendants' refrigerators they owned were either free of defects, or that any defects had been fully and completely eliminated through Defendants' retrofit campaigns.   As a result of Defendants' concealment and

36

1  misrepresentation, Plaintiffs did not know, and could not through the exercise of reasonable

2  diligence be expected to know, of the defects and safety risks involved in their use of

3  Defendants' products, or of Defendants' fraudulent, unlawful and unfair conduct, as outlined

4  above, until their own gas absorption refrigerators were recalled, retrofitted and then failed.

5  Neither Plaintiffs KAHLER nor CURTIS were included in any of Defendants' product safety

6  recalls prior to October 7, 2010, nor did either Plaintiff receive any notice or warning prior to

7  that time from Defendants alerting them to any defects or safety risks in Defendants' gas

8  absorption refrigerators.  Plaintiff CURTIS was never included in any of Defendants' product

9  safety recalls at all.

10       116.   Plaintiffs and all members of the California State Subclass reasonably expected

11  Defendants' gas absorption refrigerators to function properly for the life of their recreational

12  vehicles.

13       117.   Plaintiff KAHLER received his first recall notice from Defendants in 2011 and

14  had the HTS device installed in his refrigerator in January, 2012.  Plaintiff KAHLER reasonably

15  believed that Defendants' retrofit campaign was as represented, i.e. that the HTS device was

16  effective and that his gas absorption refrigerator was safe to use.  Plaintiff KAHLER discovered

17  that defects and safety risks continued to exist in his refrigerator when, on August 28, 2012, his

18  refrigerator caught fire while Plaintiff KAHLER and his family were using his RV on a camping

19  trip.  The fact of the fire further disclosed that the HTS device retrofitted to Plaintiff KAHLER's

20  refrigerator under the direct supervision of Defendants' Technical Service Trainer (Jerry

21  Alexander) was ineffective to counter the defects and risks in Defendants' products.

22       118.   Defendants' sale of dangerously defective gas absorption refrigerators, their

23  failure to eliminate the design defects and safety hazards inherent in said products, and their

24  pattern of deception and concealment of said defects and risks, did not have any legitimate

25  utility, and even if it did, the utility was substantially outweighed by the grave consequences

26  such conduct exposed Plaintiffs and members of the subclass to, i.e. the risk of fire and the

27  potential for serious damage, injury and death.

28

119.   Defendants' conduct, as alleged herein, was immoral, unethical, oppressive, unscrupulous and substantially injurious to Plaintiffs in the California State Subclass, and constituted violations of the various consumer protection statutes outlined above.

120.   Plaintiffs and other members of the California State Subclass relied on Defendants' actions and conduct (including, to the extent possible, Defendants' omissions and conduct failing to disclose material facts regarding product defects and risks), and believed that they were receiving gas absorption refrigerators that were free from or cured of any defects.

121.   Plaintiffs and other members of the California State Subclass have suffered injury in fact and lost money and property as a result of Defendants' unlawful, unfair and/or fraudulent practices, in that, among other things:

    a.  Plaintiffs and other members of the California State Subclass have been and/or will be subject to economic damages including, but not limited to, the cost of any repairs, service, modifications and retrofitting necessary to allow their gas absorption refrigerators to be operated safety, without risk and/or potential of fire;

    b.  Plaintiffs and other members of the California State Subclass have been and/or will be subject to further economic damage through the loss of use of their recreational vehicles while Defendants' defective products are being rendered safe to use, or replaced;

    c.  Plaintiffs and other members of the California State Subclass have been deprived of making an informed decision about the recreational vehicle they purchased;

    d.  The recreational vehicles purchased by Plaintiffs and other members of the California State Subclass are worth less in the marketplace as a result of Defendants' conduct.

///
///
///

COMPLAINT (CLASS ACTION)

122.   Plaintiffs and other members of the California State Subclass would not have purchased Defendants' gas absorption refrigerator, or a recreational vehicle equipped with one, had they known the truth and are thus entitled to a full or partial refund as allowed under each of the state laws alleged herein.

123.   Defendants' unlawful, unfair and fraudulent conduct, described above, present a continuing threat to Plaintiffs, the members of the California State Subclass, and to the general public. Unless enjoined, Defendants will continue to place dangerously defective gas absorption refrigerators into the stream of commerce, and will continue to conceal and mislead consumers regarding the inherent defects and safety risks associated with use of the product. Unless enjoined, Defendants will continue to conceal and mislead owners of their gas absorption refrigerators into believing that their products are safe, or that any risks have been completely eliminated through Defendants' fraudulent and ineffective recall and retrofit campaigns. Such conduct presents a continuing threat to owners of Defendants' products, in that they will be unknowingly exposed to serious safety risks through the continued use of Defendants' product, including the risk of property damage, injury and death. Defendants' conduct also presents a continuing risk to members of the public in that the risk of property damage, injury and death by fire extends beyond the owners of Defendants' products, to anyone living next door, camping in the same campground, or driving on the same highway as an owner of a recreational vehicle containing one of Defendants' gas absorption refrigerators. Injunctive relief is therefore appropriate and necessary to eliminate a serious safety risk to Plaintiffs, all members of the California State Subclass, and members of the general public.

124.   Accordingly, Plaintiffs and members of the California State Subclass seek an injunction that requires Defendants to immediately cease the unfair, unlawful and fraudulent business acts alleged herein, and to immediately take all necessary actions to cure the design and/or manufacturing defects inherent in their gas absorption refrigerators so that the refrigerators can be designed and manufactured, and/or effectively retrofitted, to operate safely.

125.   Plaintiffs and other members of the California State Subclass are entitled to the relief set forth below.

39

## FIFTH CAUSE OF ACTION

### Money Had and Received
**(Brought on Behalf of Plaintiffs KAHLER, CURTIS and the California State Subclass)**

126.   Plaintiffs incorporate by reference all preceding paragraphs as though fully stated herein.

127.   This count is alleged in the alternative to the First, Second, Third and Fourth Causes of Action.

128.   Plaintiffs KAHLER and CURTIS bring this claim individually and on behalf of the other members of the California State Subclass similarly situated.

129.   By their unlawful, unfair, deceptive, and wrongful acts and omissions, Defendants were unjustly enriched at the expense of Plaintiffs and members of the California State Subclass, who paid substantial sums of money for recreational vehicles, which contained defective gas absorption refrigerators at the time of sale.

130.   Defendants were aware and had knowledge of the benefit they were receiving as a result of their unlawful, unfair, deceptive, and wrongful acts and omissions, as hereinabove described, and have enjoyed the benefits of their financial gains to the detriment and at the expense of Plaintiffs and members of the California State Subclass.

131.   Defendants' retention of some or all of the monies they have gained through their wrongful acts and practices would be unjust considering the circumstances of their obtaining those monies.

132.   Plaintiffs and members of the California State Subclass have no adequate remedy at law.

133.   Plaintiffs and members of the California State Subclass are entitled to seek restitution from Defendants and an order disgorging all profits, benefits, and other compensation obtained by Defendants through and for their wrongful conduct.

///

///

## SIXTH CAUSE OF ACTION

### Violation of Florida State Consumer Protection Laws
### (Brought on Behalf of Plaintiffs ETTER and the Florida State Subclass)

134. Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as though stated herein.

135. Plaintiffs Etter bring this claim individually and on behalf of all others similarly situated in the State of Florida.

136. Each of the Plaintiffs and proposed Class members in the Florida State Subclass is a consumer, purchaser, or other person entitled to the protection of the consumer protection laws of the State of Florida, in which they purchased Defendants' N6, N8 and/or 1200 Series gas absorption refrigerators.

137. The consumer protection laws of the State of Florida declare that unfair or deceptive acts or practices in the conduct of trade or commerce are unlawful.

138. The State of Florida has enacted the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. §501.201, *et. seq,* to protect consumers against unfair, deceptive, fraudulent, and unconscionable trade and business practices, and/or false advertising.

139. Defendants' N6, N8 and 1200 Series gas absorption refrigerators constitute products to which these consumer protection statutes apply.

140. To the extent required, Plaintiffs in the Florida State Subclass have provided Defendants notice under each of the above listed statutes.

141. As detailed above, Defendants' unfair and deceptive practices include misrepresenting through sales, operational and marketing material, and through written warranties, that Defendants' gas absorption refrigerators were free from defects, when in fact Defendants knew

    a. that they contained several design defects that created a substantial risk of fire, injury and death when the product was used for its normally intended purpose;

b. that they were misrepresenting the nature and number of defects inherent in the design of their gas absorption refrigerators, including, but not limited to, the number of Defendants' products containing said defects;

c. that they were conducting repeated manufacturer-initiated recall and retrofit campaigns which were intentionally misleading in an effort to minimize and conceal the nature and scope of the defects in Defendants' products, including the serious safety risks arising from said defects;

d. that they were conducting retrofit campaigns to install various devices onto Defendants' gas absorption refrigerators that were represented to "fix" the defects when in fact, the retrofit devices did not address the defects at all, or the propensity of the defects to cause and/or enhance fires;

e. that they were concealing the fact that the retrofit devices installed on Defendants' products were not only ineffective to stop fires, but were in fact designed by Defendants to turn their defective products into a new source of profits, by rendering their refrigerators unrepairable, thereby requiring consumers to purchase – at their cost – another of Defendants' gas absorption refrigerators.

142. Defendants' knew that their N6, N8 and 1200 Series gas absorption refrigerators were defectively designed, would fail prematurely, and were not suitable for their intended use. Defendants also knew that the design defects in their gas absorption refrigerators created and constituted a serious safety and fire hazard. Further, Defendants knew that the design defects and safety hazards in their gas absorption refrigerators could be substantially decreased, if not totally eliminated, by the adoption of alternate designs readily available in the market.

143. Notwithstanding Defendants' knowledge of the design defects and inherent safety risks in their gas absorption refrigerators, and their knowledge of alternate designs to eliminate the defects and safety hazards, Defendants failed and refused to alter their gas absorption refrigerator design, and instead engaged in a continuous pattern of deception and concealment, designed to mislead Plaintiffs in the Florida State Subclass into believing that their gas

1  absorption refrigerators were safe, when in fact they were, and continue to be, dangerously

2  defective.

3      144.  Defendants, at all times up to the filing of this complaint, have engaged in a

4  pattern of concealment and misrepresentation designed to mislead Plaintiffs and all members of

5  the Florida State Subclass into believing that Defendants' refrigerators they owned were either

6  free of defects, or that any defects had been fully and completely eliminated through Defendants'

7  retrofit campaigns. As a result of Defendants' concealment and misrepresentation, Plaintiffs did

8  not know, and could not through the exercise of reasonable diligence be expected to know, of the

9  defects and safety risks involved in their use of Defendants' products, or of Defendants'

10  fraudulent, unlawful and unfair conduct, as outlined above, until their own gas absorption

11  refrigerators were recalled, retrofitted and then failed. Plaintiffs ETTER were not    included in

12  any of Defendants' product safety recalls prior to October 7, 2010, nor did said Plaintiffs receive

13  any notice or warning prior to that time from Defendants alerting them to any defects or safety

14  risks in Defendants' gas absorption refrigerators.

15      145.  Plaintiffs and all members of the Florida State Subclass reasonably expected

16  Defendants' gas absorption refrigerators to function properly for the life of their recreational

17  vehicles.

18      146.  Plaintiffs ETTER received their first recall notice from Defendants in September,

19  2011, and had their gas absorption refrigerator retrofitted with the HTS device in October 2011.

20  Plaintiffs ETTER reasonably believed that Defendants' retrofit campaign was as represented, i.e.

21  that the HTS device was effective and that their gas absorption refrigerator was safe to use.

22  Plaintiffs ETTER discovered that defects and safety risks continued to exist in their refrigerator

23  and that the HTS device was ineffective to counter the defects and risks in March 2012, after the

24  HTS devices installed on their refrigerator repeatedly failed, and their refrigerator cooling unit

25  suffered a "blown boiler" (a leak of flammable gases and sodium chromate from the boiler

26  section of the cooling unit), notwithstanding the retrofit of the HTS device.

27  ///

28  ///

COMPLAINT (CLASS ACTION)

147.     Defendants' sale of dangerously defective gas absorption refrigerators, their failure to eliminate the design defects and safety hazards inherent in said products, and their pattern of deception and concealment of said defects and risks, did not have any legitimate utility, and even if it did, the utility was substantially outweighed by the grave consequences such conduct exposed Plaintiffs and members of the subclass to, i.e. the risk of fire and the potential for serious damage, injury and death.

148.     Defendants' conduct, as alleged herein, was immoral, unethical, oppressive, unscrupulous and substantially injurious to Plaintiffs in the Florida State Subclass, and constituted violations of the consumer protection statute outlined above.

149.     Plaintiffs ETTER and other members of the Florida State Subclass relied on Defendants' actions and conduct (including, to the extent possible, Defendants' omissions and conduct failing to disclose material facts regarding product defects and risks), and believed that they were receiving gas absorption refrigerators that were free from or cured of any defects.

150.     Plaintiffs ETTER and other members of the Florida State Subclass have suffered injury in fact and lost money and property as a result of Defendants' unlawful, unfair and/or fraudulent practices, in that, among other things:

    a.     Plaintiffs ETTER and other members of the Florida State Subclass have been and/or will be subject to economic damages including, but not limited to, the cost of any repairs, service, modifications and retrofitting necessary to allow their gas absorption refrigerators to be operated safety, without risk and/or potential of fire;

    b.     Plaintiffs ETTER and other members of the Florida State Subclass have been and/or will be subject to further economic damage through the loss of use of their recreational vehicles while Defendants' defective products are being rendered safe to use, or replaced;

    c.     Plaintiffs ETTER and other members of the Florida State Subclass have been deprived of making an informed decision about the recreational vehicle they purchased;

44

d.    The recreational vehicles purchased by Plaintiffs ETTER and other members of the Florida State Subclass are worth less in the marketplace as a result of Defendants' conduct.

e.    Plaintiffs ETTER and all other members of the Florida State Subclass would not have purchased Defendants' gas absorption refrigerator, or a recreational vehicle equipped with one, had they known the truth and are thus entitled to a full or partial refund as allowed under the state law alleged herein.

f.    Defendants' unlawful, unfair and fraudulent conduct, described above, presents a continuing threat to Plaintiffs, the members of the Florida State Subclass, and to the general public. Unless enjoined, Defendants will continue to place dangerously defective gas absorption refrigerators into the stream of commerce, and will continue to conceal and mislead consumers regarding the inherent defects and safety risks associated with use of the product. Unless enjoined, Defendants will continue to conceal and mislead owners of their gas absorption refrigerators into believing that their products are safe, or that any risks have been completely eliminated through Defendants' fraudulent and ineffective recall and retrofit campaigns. Such conduct presents a continuing threat to owners of Defendants' products, in that they will be unknowingly exposed to serious safety risks through the continued use of Defendants' product, including the risk of property damage, injury and death. Defendants' conduct also presents a continuing risk to members of the public in that the risk of property damage, injury and death by fire extends beyond the owners of Defendants' products, to anyone living next door, camping in the same campground, or driving on the same highway as an owner of a recreational vehicle containing one of Defendants' gas absorption refrigerators. Injunctive relief is therefore appropriate and necessary to eliminate a

45

serious safety risk to Plaintiffs ETTER, all members of the Florida State Subclass, and members of the general public.

g.   Accordingly, Plaintiffs ETTER and members of the Florida State Subclass seek an injunction that requires Defendants to immediately cease the unfair, unlawful and fraudulent business acts alleged herein, and to immediately take all necessary actions to cure the design and/or manufacturing defects inherent in their gas absorption refrigerators so that the refrigerators can be designed and manufactured, and/or effectively retrofitted, to operate safely.

h.   Plaintiffs ETTER and other members of the Florida State Subclass are entitled to the relief set forth below, as appropriate, including, but not limited to, actual compensatory and/or statutory damages, injunctive relief, as well as attorneys' fees and legal expenses under the various California laws implicated by this Claim.

### SEVENTH CAUSE OF ACTION

**Breach of Express and Implied Warranty**
**(Brought on Behalf of Plaintiffs ETTER and the Florida State Subclass)**

151.   Plaintiffs incorporate by reference every other paragraph of this Complaint as through fully stated herein.

152.   Plaintiffs ETTER and all other members of the Florida State Subclass have suffered injury in fact and lost money and property as a result of Defendants' unlawful, unfair and/or fraudulent practices, in that, among other things:

a.   Defendants made statements of fact, which were received by Plaintiffs and members of the Florida State Subclass. Defendants' statements included, but were not limited to, (a) they had a global reputation for excellence in the design and manufacture of gas absorption refrigerators based on many years of experience that created an assurance of quality in their products; (b) their gas absorption refrigerators were designed and manufactured to

46

meet the highest standards of reliability and performance;   (c) quality, integrity and reliability were built into each unit made in America by an American-owned company; (d) that the refrigerators were superior, with exceptional performance; and (e) that the refrigerators were the hallmark of performance and reliability by America's leading manufacturer of refrigerators and freezers for RV, Marine and Truck markets.  Defendants also provided Plaintiffs and members of the subclass, with written warranties and owner's manuals in which they stated and warranted that their gas absorption refrigerators were free from defects.

153.   At the time Defendants marketed and otherwise placed their gas absorption refrigerators into the stream of commerce, they knew that the refrigerators were going to be installed in recreational vehicles which would then be sold to consumers, including Plaintiffs and members of the Florida State Subclass, for personal and recreational use. Defendants also knew that consumers, including Plaintiffs and members of the Florida State Subclass, would have no ability or opportunity to inspect their gas absorption refrigerators for defects, but instead would rely on Defendants' representations and on Defendants' knowledge, expertise, and experience to manufacture a gas absorption refrigerator that was safe and reliable for its intended purpose.

154.   Defendants' gas absorption refrigerators were defective, in that they contained design and manufacturing defects which created and/or enhanced fires, with the potential of causing serious damage, injury and/or death.

155.   Defendants have failed to deliver to Plaintiffs and members of the Florida State Subclass the thing purchased, and have delivered a thing other than the thing purchased, and have thus breached the express warranties of sale.

156.   As a direct and proximate result of Defendants' breach, Plaintiffs and members of the Florida State Subclass have suffered, and will continue to suffer, significant economic damages, including, but not limited to, the diminution of value of their recreational vehicles, in an amount that will be established at trial according to proof.

## EIGHTH CAUSE OF ACTION

### Unjust Enrichment/Money Had and Received
(Brought on Behalf of Plaintiffs ETTER and the Florida State Subclass)

157.    Plaintiffs incorporate by reference all preceding paragraphs as though fully stated herein.

158.    This Count is alleged in the alternative to the Sixth and Seventh Causes of Action.

159.    Plaintiffs ETTER bring this claim individually and on behalf of the other members of the Florida State Subclass similarly situated.

160.    By their unlawful, unfair, deceptive, and wrongful acts and omissions, Defendants were unjustly enriched at the expense of Plaintiffs and members of the Florida State Subclass, who paid substantial sums of money for recreational vehicles, which contained defective gas absorption refrigerators at the time of sale.

161.    Defendants were aware and had knowledge of the benefit they were receiving as a result of their unlawful, unfair, deceptive, and wrongful acts and omissions, as hereinabove described, and have enjoyed the benefits of their financial gains to the detriment and at the expense of Plaintiffs and members of the Florida State Subclass.

162.    Defendants' retention of some or all of the monies they have gained through their wrongful acts and practices would be unjust considering the circumstances of their obtaining those monies.

163.    Plaintiffs and members of the Florida State Subclass have no adequate remedy at law.

164.    Plaintiffs and members of the Florida State Subclass are entitled to seek restitution from Defendants and an order disgorging all profits, benefits, and other compensation obtained by Defendants through and for their wrongful conduct as well as injunctive and declaratory relief as may be appropriate.

///

///

///

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

**PLAINTIFFS KAHLER, CURTIS AND THE CALIFORNIA STATE SUBCLASS:**

1) For actual, compensatory and statutory damages/penalties, according to proof, on any Counts that permit the recovery of damages;

2) For restitution, disgorgement and/or other equitable relief as the Court deems proper;

3) For an order that Defendants be permanently enjoined from performing or proposing to perform any of the aforementioned acts of unfair, unlawful, deceptive and/or fraudulent business practices;

4) For an order that Defendants be permanently enjoined from selling, offering to sell, or otherwise placing into the stream of commerce, dangerously defective gas absorption refrigerators;

5) For an order certifying the California State Subclass as defined above;

6) For pre-judgment and post-judgment interest according to proof;

7) For reasonable attorney's fees and costs of suit; and

8) For such other and further relief as the Court may deem proper.

**PLAINTIFFS ETTER AND THE FLORIDA STATE SUBCLASS:**

1) For actual, compensatory and statutory damages/penalties, according to proof;

2) For restitution, disgorgement and/or other equitable relief as the Court deems proper;

3) For an order that Defendants be permanently enjoined from performing or proposing to perform any of the aforementioned acts of unfair, unlawful, deceptive and/or fraudulent business practices;

4) For an order that Defendants be permanently enjoined from selling, offering to sell, or otherwise placing into the stream of commerce, dangerously defective gas absorption refrigerators;

5) For an order certifying the California State Subclass as defined above;

6) For pre-judgment and post-judgment interest according to proof;

COMPLAINT (CLASS ACTION)

7)   For reasonable attorney's fees and costs of suit; and

8)   For such other and further relief as the Court may deem proper.

### JURY TRIAL DEMANDED

Plaintiffs seek a trial by jury for all appropriate issues on each and every cause of action

in this Complaint

Respectfully submitted,

RIDOUT & LYON, LLP

Dated: December 12, 2012        By:

CHRISTOPHER P. RIDOUT, ESQ.
DEVON M. LYON, ESQ.
CALEB LH. MARKER, ESQ.
555 E. Ocean Blvd., Suite 500
Long Beach, CA 90802
(562) 216-7380 Telephone
(562) 216-7385 Facsimile

ZIMMERMAN REED, PLLP
BRADLEY C. BUHROW, ESQ. (CA Bar No. 283791)
E-mail: Brad.Buhrow@zimmreed.com
14646 N. Kierland Blvd., Suite 145
Scottsdale, AZ 85254
(480) 348-6400 Telephone
(480) 348-6415 Facsimile

LAW OFFICES OF TERRENCE A. BEARD
TERRENCE A. BEARD, ESQ. (State Bar No. 098013)
E-mail: tbeard1053@aol.com
525 Marina Blvd.
Pittsburg, CA 94565
(925) 778-1060 Telephone
(925) 473-9098 Facsimile

*Attorneys for Plaintiffs*

COMPLAINT (CLASS ACTION)

# SUPERIOR COURT OF CALIFORNIA,
## COUNTY OF ORANGE
## CIVIL COMPLEX CENTER

### MINUTE ORDER

DATE: 01/04/2013                TIME: 12:06:00 PM         DEPT: CX101

JUDICIAL OFFICER PRESIDING: Gail A. Andler
CLERK: Mary White
REPORTER/ERM: None
BAILIFF/COURT ATTENDANT:

CASE NO: **30-2012-00617846-CU-BT-CXC** CASE INIT.DATE: 12/12/2012
CASE TITLE: **Curtis vs. Thetford Corporation**
CASE CATEGORY: Civil - Unlimited      CASE TYPE: Business Tort

---

EVENT ID/DOCUMENT ID: 71630962
**EVENT TYPE:** Chambers Work

---

**APPEARANCES**

---

There are no appearances by any party.

Each party who has not paid the Complex fee of $ 1000 as required by Government Code section 70616 shall pay the fee to the Clerk of the Court within 10 calendar days from date of this minute order.  Failure to pay required fees may result in the dismissal of complaint/cross-complaint or the striking of responsive pleadings and entry of default.

The Court finds that this case is exempt from the case disposition time goals imposed by California Rule of Court, rule 3.714 due to exceptional circumstances and estimates that the maximum time required to dispose of this case will exceed twenty-four months due to the following case evaluation factors of California Rules of Court, rules 3.715 and 3.400:  Case is Complex.

The Case Management Conference is scheduled for 03/05/2013 at 09:00 AM in Department CX101.

Plaintiff shall, at least 5 court days before the hearing, file with the Court and serve on all parties of record or known to Plaintiff a brief, objective summary of the case, its procedural status, the contentions of the parties and any special considerations of which the Court should be aware.  Other parties who think it necessary may also submit similar summaries three court days prior to the hearing.  DO NOT use the Case Management Statement form used for non-complex cases (Judicial Council Form CM-110).

This case is subject to mandatory electronic filing pursuant to Superior Court Rules, County of Orange, Rule 352.  Plaintiff shall give notice of the Status Conference and the electronic filing requirement to all parties of record or known to plaintiff, and shall attach a copy of this minute order.

Clerk to give notice to plaintiff and plaintiff to give notice to all other parties.

---

CASE TITLE: Curtis vs. Thetford Corporation        CASE NO: **30-2012-00617846-CU-BT-CXC**

CLERK'S CERTIFICATE OF MAILING: I certify I am not a party to this cause, over age 18, and a copy of this document was mailed first class postage, prepaid in a sealed envelope addressed as shown, on 04-JAN- 2013, at Santa Ana, California. ALAN CARLSON /EXECUTIVE OFFICER & CLERK OF THE SUPERIOR COURT, BY: M.WHITE deputy.

RIDOUT & LYON LLP
CHRISPTER P RIDOUT
DEVON M LYON
CALEM LH MARKER
555 E OCEAN BLVD, STE 500
LONG BEACH, CA 90802

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT B

1   Gregory D. Brown, State Bar No. 65318
    gbrown@burnhambrown.com
2   Robert M. Bodzin, State Bar No. 201327
    rbodzin@burnhambrown.com
3   Melissa A. Horst, State Bar No. 253032
    mhorst@burnhambrown.com
4   BURNHAM BROWN
    A Professional Law Corporation
5   P.O. Box 119
    Oakland, California 94604
6
    1901 Harrison Street, 14th Floor
7   Oakland, California  94612
    Telephone:     (510) 444-6800
8   Facsimile:     (510) 835-6666

9   Attorneys for Defendants THETFORD CORPORATION, a
    Delaware Corporation; NORCOLD, INC., a Delaware
10  Corporation; and THE DYSON-KISSNER-MORAN
    CORPORATION s/h/a DYSON-KISSNER-MORAN
11  CORPORATION, a Delaware Corporation

12              UNITED STATES DISTRICT COURT

13      CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

14  JEFFERY ETTER; SUSAN ETTER; PAUL          No.
    KAHLER; FRAN CURTIS; and,
15  MICHELLE CURTIS, individually, and on      [Orange County Superior Court Case No.
    behalf of themselves and all others similarly   30-2012-00617846-CU-BT-CXC] -
16  situated,                                   [Assigned for all purposes to Judge Gail A.
                                                Andler]
17              Plaintiff,
                                                **DECLARATION OF J. DAVID**
18  v.                                          **ROBERTS IN SUPPORT OF**
                                                **DEFENDANTS' NOTICE OF**
19  THETFORD CORPORATION, a Delaware            **REMOVAL OF ACTION UNDER 28**
    Corporation, NORCOLD, INC., a Delaware      **U.S.C. SECTIONS 1332, 1441, 1446 AND**
20  Corporation, DYSON-KISSNER-MORAN           **1453**
    CORPORATION, a Delaware Corporation,
21  and DOES 1 to 50, inclusive.

22              Defendants.

23                                              Complaint filed:   December 12, 2012

24

25      I, J. DAVID ROBERTS, declare:

26      1.      I am an adult over the age of eighteen years old and my business address is

27  600 Kuther Road, Sidney, OH  45365.  The following is based on my personal knowledge and if

28  called as a witness, I could and would testify competently thereto.

                                        1
    DECLARATION OF J. DAVID ROBERTS ISO DEFENDANTS' NOTICE OF        Case No.
    REMOVAL

1   2.  I am the manager of finance and administration of Norcold, Inc., where I have

2 and have worked continuously since 1983.

3   3.  As part of my duties and responsibilities for Norcold, Inc., I am extremely

4 familiar with all costs related to the sale of Norcold Gas Absorption Refrigerators, including the

5 N6, N8 and 1200 Models that are subject of this lawsuit.

6   4.  Generally, the retail purchase price of a Norcold refrigerator is set by the

7 distributor, who sells the unit to the consumer at a mark-up and as part of an RV.

8   5.  While Norcold does not possess the higher marked-up price of Norcold

9 refrigerators sold to the consumer, the company is aware of the average purchase price paid to it

10 by distributors since December 12, 2008.

11   6.  As the average purchase price of a Norcold gas absorption refrigerator since

12 December 12, 2008 sold to a distributor has been $943, the reimbursement amount sought as to

13 the 20,000 members of the California and Florida subclasses total $18,860,000.

14

15   I declare under penalty of perjury under the laws of the United States of America, and the

16 State of California that the foregoing is true and correct and that this declaration was executed on

17 January _15_, 2013, at _SIDNEY_____, _OHIO_____.

18

19           _J. David Roberts_____
                  J. DAVID ROBERTS

20
4846-7814-1202, v. 1

21

22

23

24

25

26

27

28

DECLARATION OF J. DAVID ROBERTS ISO DEFENDANTS' NOTICE OF   Case No.
REMOVAL

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
JEFFERY ETTER; SUSAN ETTER; PAUL KAHLER; FRAN CURTIS; and MICHELLE CURTIS, individually, and on behalf of themselves and all others similarly situated

**DEFENDANTS**
THETFORD CORPORATION, a Delaware Corporation; NORCOLD, INC., a Delaware Corporation; THE DYSON-KISSNER-MORAN CORPORATION, a Delaware Corporation

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Caleb L.H. Marker, RIDOUT & LYON, LLP
555 E. Ocean Blvd., Ste. 500
Long Beach, CA 90802 Ph.: (562) 216-7380

Attorneys (If Known)
Gregory D. Brown, Robert M. Bodzin
BURNHAM BROWN
1901 Harrison Street, 14th Floor
Oakland, CA 94612 Ph.: (510) 444-6800

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** – For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☑ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☑ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)
☐ 1 Original Proceeding
☑ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)
**CLASS ACTION under F.R.C.P. 23:** ☑ Yes   ☐ No   ☐ **MONEY DEMANDED IN COMPLAINT: $**

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | | **SOCIAL SECURITY** |
| ☑ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **REAL PROPERTY** | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 210 Land Condemnation | | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | **IMMIGRATION** | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 463 Habeas Corpus- Alien Detainee | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 245 Tort Product Liability | ☐ 290 All Other Real Property | ☐ 465 Other Immigration Actions | | |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:** Case Number: _____

## SACV 13 - 00081 JST (RNBx)

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)      CIVIL COVER SHEET      Page 1 of 2

COPY BY FAX

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | Contra Costa County; Florida |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | New York; Michigan; Ohio |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | Contra Costa County; Florida |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved.

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _[signature]_ Date _January 16, 2013_

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Josephine Tucker and the assigned discovery Magistrate Judge is Robert N. Block.

The case number on all documents filed with the Court should read as follows:

## SACV13- 81 JST (RNBx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

======================================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[ ]  **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ]  **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ]  **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.