RIDOUT LYON + OTTOSON, LLP
CHRISTOPHER P. RIDOUT, ESQ (State Bar No. 143931)
  Email: c.ridout@rlollp.com
CALEB LH. MARKER, ESQ. (State Bar No. 269721)
  Email: c.marker@rlollp.com
555 E. Ocean Blvd., Suite 500
Long Beach, CA 90802
(562) 216-7380 Telephone
(562) 216-7385 Facsimile

*Attorneys for the Plaintiffs*

*(Additional Counsel Listed Below)*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

JEFFERY ETTER; SUSAN ETTER;
PAUL KAHLER; FRAN CURTIS;
MICHELLE CURTIS; LESLIE
CRAWSHAW; RICHARD KAYLOR;
BRIAN MCBRIDE; DENNIS OSHA;
JAMES PEARCE; CRAIG POST;
RAYMOND ROLLE, SR.; EMIL VARGO;
LEONARD SOMERVILLE; ORRENE
SOMERVILLE;  RICHARD SPEARS;
ALICE KNIGHT; ALAN BURKHART;
SANDRA BURKHART; GEORGE
FREDERICK; KATHLEEN FREDERICK;
ALAN GREAGER; and LINDA GREAGER,
individually, and on behalf  of themselves
and all others similarly situated,

       Plaintiffs,

     v.

THETFORD CORPORATION, a Delaware
Corporation, NORCOLD, INC., a Delaware
Corporation, DYSON-KISSNER-MORAN
CORPORATION, a Delaware Corporation,
and DOES 1 to 50, inclusive.

       Defendants.

Case No.:  8:13-CV-00081-JST-RNB

**FIRST AMENDED COMPLAINT
(CLASS ACTION)**

(Jury Trial Demanded)

Plaintiffs  Jeffery Etter; Susan Etter; Paul Kahler; Fran Curtis; Michelle Curtis,

Leslie Crawshaw; Richard Kaylor; Brian McBride; Dennis Osha; James Pearce; Craig

Post; Raymond Rolle, Sr.; Emil Vargo; Leonard Somerville; Orrene Somerville;

Richard Spears; Alice Knight; Alan Burkhart; Sandra Burkhart, George Frederick,

Kathleen Frederick, Alan Greager and Linda Greager (collectively referred to hereinafter as "Plaintiffs") bring this action, by and through their undersigned counsel, on behalf of themselves and all others similarly situated, based on information and belief and the investigation of counsel, except for information based on personal knowledge, hereby alleges as follows:

## I.    NATURE OF ACTION

1.    This class action lawsuit is brought by the above-named Plaintiffs on behalf of themselves and all other similarly situated persons in the Class defined below against Defendants Thetford Corporation, Norcold, Inc. and Dyson-Kissner-Moran Corporation (DKM) (collectively referred to herein as "Defendants").  The Class, defined below, consists of all persons, who during the Class Period, purchased and/or owned a Norcold N6, N8 and/or 1200 Series gas absorption refrigerator in the states of California, Florida, Texas, New York, Pennsylvania, Maryland, Tennessee, Mississippi, Oregon, North Carolina, Washington, Illinois and Arizona.  The allegations of this Complaint are based on the personal knowledge of each of the Plaintiffs as to themselves, and on information and belief as to all other matters.  This case seeks injunctive and equitable relief, and recovery of economic losses, that are common to the Plaintiffs and all members of the Class (and each State Sub-Class) described below relating to the replacement of Defendants' defective gas absorption refrigerators.  Through Counts Seven and Eight below, certain Plaintiffs seek, on an individual basis only, recovery for economic losses, property damage and personal injury.  This case does not seek recovery for personal injury on a class-wide individual basis.

2.    Through this class action Plaintiffs, on behalf of the Class, challenge the unlawful, unfair, and fraudulent business practices of Defendants and each of them, in connection with their designing, manufacturing, assembling, promoting, marketing, supplying, selling, recalling, retrofitting, and otherwise placing into the stream of commerce three models of gas absorption refrigerators for use in recreational vehicles

and boats (collectively referred to herein as "recreational vehicles"), all of which share common defects, and concealing and failing to disclose those material facts.

3.    Since at least 1997, Defendants have designed, manufactured, assembled, sold and otherwise placed into the stream of commerce three (3) models of gas absorption refrigerators for installation and use in recreational vehicles, all of which share common design and manufacturing defects that create a substantial risk of fire when the refrigerators are used as designed and for their intended purpose.  Defendants' gas absorption refrigerators, at issue in this case, come in three sizes: six cubic feet (the "N6" Series), eight cubic feet (the "N8" Series), and twelve cubic feet (the "12" Series).  These gas absorption refrigerators have caused and/or contributed to at least 2,000 fires since 1999, resulting in over $48,000,000.00 in property damage claims, personal injuries, and at least one death.  Defendants, and each of them, have actual knowledge of the fire claim history of their gas absorption refrigerators and, since 1999, have kept track of each fire involving Defendants' products through a series of databases, including a non-public Incident Log that Defendants maintain.   Upon information and belief, as of the date of this Complaint, Defendants are receiving new fire claims involving their gas absorption refrigerators at a rate of approximately 1 to 2 per day (over 365 annually).  The inherent defects and frequency of fires, and Defendants' suppression of facts pertaining thereto, are not limited to any single state, but rather occur in and negatively affect class members nationwide, including those where each named Plaintiff resides.

4.    The gas absorption refrigerators that Defendants have designed, manufactured, assembled, sold and otherwise placed into the stream of commerce contain design and manufacturing defects which cause their refrigerators to have a propensity to catch on fire, posing a substantial risk of serious injury, danger and/or death to users of the product, as well as any other person located close to the product.  These risks are ongoing and continue through the present.

5.    Rather than eliminate the design and manufacturing defects contained in its gas absorption refrigerators – or provide adequate warning of potential safety risks to

3

1   users of the products – Defendants instead sought to conceal and minimize the dangers

2   inherent in the refrigerators' design and operation through a series of limited

3   manufacturer-initiated product safety recalls through the National Highway Traffic

4   Safety Administration (NHTSA).  The limited recalls began in 2000, and continued

5   throughout the Class Period.  In each product safety recall, Defendants represented that

6   there was a single failure modality in a limited portion of their product population and

7   that the retrofit associated with the recalls would fix that defect, rendering the

8   refrigerators safe to use.  In fact, Defendants' gas absorption refrigerators suffered from a

9   number of different failure modalities associated with defective design and manufacture

10   of the products, the defects extended throughout and were common to all of the product

11   lines, and none of the defects or failure modalities were ever adequately disclosed to

12   NHTSA or users of the product, nor remedied by the retrofit campaigns initiated by

13   Defendants.  Rather, these material facts were concealed and continue to be concealed.

14   Further, the devices Defendants retrofitted to existing gas absorption refrigerators were

15   not only ineffective to remedy the propensity of the refrigerators to cause fires, the

16   devices themselves were designed to render the refrigerators inoperable and unrepairable,

17   requiring users to purchase new refrigerators or, if the user was still under warranty,

18   obtain a similar defective refrigerator from Defendants.   Defendants' ongoing

19   concealment and omission of such facts, when they had an ongoing duty to disclose such

20   facts was misleading and deceptive.  It was reasonably foreseeable to Defendants that

21   their conduct and failure to act and warn the Class, in light of the information they

22   actually or should have possessed, as described herein, would cause Plaintiffs and

23   members of the Class damage, injury and loss.

24       6.    Defendants' actions and concealment of material facts injure and harm

25   consumers in the Class by inducing them to unknowingly purchase and/or retain a

26   product that contains inherent dangers and design and manufacturing defects.  These

27   products continue to carry an inherent risk of causing devastating fires, of which

28   Defendants are aware.  Given their superior knowledge of the product defects and

1   inherent risk of the danger involved in their continued use, Defendants had an ongoing

2   duty to disclose such facts to members of the Class.  Defendants provided no notice of

3   the inherent and potential risks of use of their product to consumers at the time of sale,

4   but rather concealed those risks through omissions of material fact and through

5   affirmative representations in marketing, sales and operational material that represent the

6   products as safe and defect-free.  By and through such conduct, Defendants breached the

7   duties of care they owed to the Class, including the duty to warn them of dangerous

8   defects in Defendants' refrigerators.  Defendants post-sale actions are deceptive and

9   misleading in that they conceal and/or minimize the dangers and risks inherent in the use

10  of Defendants' products from both consumers and federal regulators, and lead both

11  consumers and federal regulators to believe that there is a single design and

12  manufacturing defect in some of their refrigerators that is corrected through product

13  safety recalls, when in reality there are several design and manufacturing defects in all of

14  their products, none of which are corrected through the product safety recalls Defendants

15  have conducted.  Notwithstanding Defendants' recall and retrofit campaigns, the risk of

16  fire remains.  In fact, Defendants' recent safety recalls caused further harm to consumers

17  by retrofitting the defective refrigerators with a device that masks the defects by disabling

18  the electronic controls within the refrigerator before the refrigerator has a chance to ignite

19  a fire.  The harm caused by this is felt when the refrigerator malfunctions and fails, and

20  the retrofit device permanently disables the electronic controls.  If the refrigerator is no

21  longer under warranty, the consumer must replace the refrigerator at his/her own cost.  If

22  the refrigerator is under warranty, Defendants still shift some or all of the cost of repair or

23  replacement onto consumers by concealing and failing to disclose material facts to

24  consumers regarding the terms of the warranty programs offered by Defendants.  In either

25  event, the consumer unknowingly ends up with the same defective product that failed in

26  the first place, *i.e.* one of Defendants' refrigerators with the same defective design,

27  retrofit and susceptibility to dangerous fires.  This harm to consumers is the direct result

28  of Defendants' intentional act of placing defective products into the stream of commerce,

and Defendants' intentional decision to retrofit the product with devices that do not remedy any of the design and manufacturing defects but instead disable and/or destroy the product and impose the entire cost onto the consumer.

7. In short, Defendants' N6, N8 and 1200 Series gas absorption refrigerators all continue to share common defects which are dangerous to Class members who own them. All Defendants' gas absorption refrigerators (even those that have been replaced with new or retrofitted Norcold gas absorption refrigerators or cooling units) continue to suffer from the same common latent defects in the design of the refrigerator cooling units' (1) boiler tubing; and, (2) safety fuse plug, which renders the units susceptible to danger of overheating, fracture, leak of flammable gases, ignition and in turn, fire. Despite this, Defendants, and each of them, have concealed, withheld and omitted disclosure of common material facts from the Class about the continuing dangerous nature of their gas absorption refrigerators. Even if an original unit has been replaced or received Defendants' retrofit when recalled, Defendants' gas absorption refrigerators continue to suffer from these common latent defects and risks of fire. Despite any recall or retrofit, the gas absorption refrigerators owned and possessed by Class members continue to present a dangerous fire risk to all Class members as evidenced by the Plaintiffs and Class members who have experienced fires in units which have undergone Defendants' retrofits. As described within, Defendants' recall retrofits do not replace or remedy the defects in the refrigerator cooling unit which cause and/or enhance fires. Fires continue to occur in units that have been retrofitted. And even if the retrofit is successful in cutting off electric power to the refrigerator before the latent defects in the cooling unit cause a fire, the result is a permanently disabled unit that cannot be repaired and must be replaced, leading to financial losses for all Class members. Thus, to date, the true nature of these risks of danger, fire and financial loss have not been fully disclosed by Defendants. These omissions are common to the Class and have caused common injury to the Class. Had the truth been fully disclosed, as Defendants had a duty to do at all times, reasonable consumers, like Plaintiffs, would have acted differently and taken

steps to protect themselves, as described further below.  All Class members possess a recreational vehicle that, once the truth is disclosed, is of diminished value due to the presence of one of Defendants' N6, N8 or 1200 Series gas absorption refrigerators, as opposed to a unit without the latent defects and risks of fire.  The proper remedy is not a replacement of a Norcold gas absorption refrigerator or a retrofitted Norcold gas absorption refrigerator – both of which still contain the same latent defects, which create the risk of fire.  Rather, the proper remedy is the provision of a gas absorption refrigerator that does not contain the latent defects in the cooling unit described below, and is therefore safe to use for its intended purpose.  This lawsuit seeks such remedies and confers a public benefit.

8.      Plaintiffs bring this lawsuit against Defendants individually and on behalf of the Class of all other similarly situated purchasers and owners of Defendants' gas absorption refrigerators within the Class Period.  Plaintiffs allege representative claims for unfair competition, unfair and deceptive acts and practices, breach of express and/implied warranty, negligence, and unjust enrichment under the statutory and common laws of the states in which the named Plaintiffs reside.

## II.    JURISDICTION AND VENUE

9.      This Court has personal jurisdiction over Defendants because a substantial portion of the wrongdoing alleged by Plaintiffs occurred in the State of California and this District, Defendants have sufficient minimum contacts with and/or otherwise intentionally avails itself of the markets in the State of California and this District, and Defendants have sufficient contracts with the State of California and this District such that it is fair and just for Defendants to adjudicate this dispute here.

10.     Defendants have asserted that his Court has jurisdiction over all claims set forth herein as on January 16, 2013,  Defendants filed a Notice of Removal, supported the Declaration of J. David Roberts, claiming that this Court has jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. 1332(d).

COMPLAINT (CLASS ACTION)

11.     Venue is proper in this District because Plaintiff KAHLER is a resident of this District, received notice of product safety recalls in this District; had recall/retrofits of Defendants' products in this District; a substantial part of the events, transactions, and/or omissions giving rise to the claims asserted herein occurred in this District; and, a substantial portion of Defendants' alleged wrongdoing is believed to have occurred in this District.

12.     Venue is also proper in this Court because, upon information and belief, more Class members reside in California than any other state.

### III.     PARTIES

**A.     Plaintiffs and Class Representatives**

**California Plaintiffs and Class/Sub-Class Representative**

13.     Plaintiff Paul Kahler ("KAHLER") is a consumer residing in Huntington Beach, California.  KAHLER is a firefighter with the Fountain Valley Fire Department who purchased a 2006 Fleetwood Revolution Class A motor home equipped with a Norcold 1200 Series gas absorption refrigerator as original equipment on or about January 19, 2010 from Days RV/Auto Sales in Corbin, Kentucky.  As with all class members, the Norcold refrigerator in KAHLER's RV was designed, manufactured, sold, distributed, constructed, manufactured and/or assembled and put into the stream of commerce by Defendants, and each of them.  At relevant times, thereafter, KAHLER owned and possessed the RV containing the Norcold refrigerator in California and thus, was owed the ongoing duties to disclose dangerous defects by Defendants in California.  KAHLER owned the motor home and Norcold refrigerator during the Class Period and is a member of the Class.  KAHLER's refrigerator was subject to Defendants' product safety recalls and has had all of the relevant recall and retrofits performed on his refrigerator, including having the refrigerator examined and repaired by Jerry Alexander, Norcold's Technical Service Trainer.  Notwithstanding this fact, on or about August 28, 2012, the refrigerator malfunctioned and started a fire. The fire caused damage to property other than the gas absorption refrigerator.  In addition, the fire caused damage

8

to KAHLER's personal property that was located within the RV at the time it was destroyed by the fire. The fire occurred in Lake San Pedro, California and caused damage to the refrigerator and its contents, requiring replacement.  Prior to that time, Defendants failed to disclose to KAHLER the same facts they possessed, described below, regarding the gas absorption refrigerator's inherent defects, risks and safety hazards, information that they exclusively possessed but withheld, concealed and failed to disclose to KAHLER and the other members of the Class.  The facts concealed by Defendants were material.  Defendants had an ongoing duty, throughout the Class Period, to disclose these facts to KAHLER and the Class.  Reasonable consumers, like KAHLER and the Class, would want to know about the Norcold gas absorption refrigerator's inherent defects, ongoing risks and safety hazards.  A reasonable consumer is the ordinary consumer acting reasonably under the circumstances, who is not versed in the art of inspecting and judging a product, or in the process of its preparation or manufacture.  Like other reasonable consumers, had KAHLER been provided all material facts regarding the gas absorption refrigerator's inherent defects, risks and safety hazards that Defendants exclusively possessed but omitted, withheld and concealed from KAHLER and the Class, KAHLER would have been aware of the safety concerns present and acted differently, including but not limited to not purchasing (or retaining) a product equipped with a Norcold refrigerator containing the latent defects described within. The Defendants' wrongful conduct, as described herein, has caused and will continue to cause Plaintiffs and all Class Members injury in fact that is common to Plaintiffs and all Class Members. Among other things, and regardless of whether Defendants paid for any recall or retrofit, as a result of Defendants' conduct described herein, Plaintiffs and all Class Members lost the benefit of their bargain as they unknowingly overpaid for a defective Norcold refrigerator, the Norcold refrigerator has diminished in value, the Norcold refrigerators have suffered a loss of usefulness, and Plaintiffs and all Class Members are (or have been) exposed to further costs and expenses to dispose of and/or replace said refrigerators, in that the refrigerators' cooling units contain chemicals/substances that are

9

1    corrosive (ammonia), explosive (hydrogen) and a known carcinogen (sodium chromate).

2    The amount of said common injury and damage will be proven at trial according to proof.

3            14.   Plaintiffs Fran and Michelle Curtis (collectively referred to as "CURTIS")

4    are consumers residing in Antioch, California.   CURTIS purchased a Keystone Raptor

5    5th wheel trailer equipped with a Norcold N811 (N8 Series) gas absorption refrigerator as

6    original equipment on or about November 13, 2010 from Camping World in Bakersfield,

7    California.  As with all class members, the Norcold refrigerator in CURTIS' RV was

8    designed, manufactured, sold, distributed, constructed, manufactured and/or assembled

9    and put into the stream of commerce by Defendants, and each of them.  CURTIS owned

10   the 5th wheel trailer and Norcold refrigerator during the Class Period and are members of

11   the Class.  Notwithstanding the fact that CURTIS' refrigerator shared the same common

12   design defects as all of Defendants' other N6, N8 and 1200 Series refrigerators, CURTIS'

13   refrigerator was excluded by Defendants from any recall or retrofit campaign, and

14   CURTIS has not therefore received any notice or warning of the inherent defects in their

15   refrigerator, or the safety risks of continued use of the product, from Defendants.  Rather,

16   CURTIS was alerted to the fact of Defendants' limited product safety recall by their

17   insurance agent.  Defendants failed to disclose to CURTIS the same facts they possessed,

18   described below, regarding the gas absorption refrigerator's inherent defects, risks and

19   safety hazards that they exclusively possessed but withheld, concealed and failed to

20   disclose to CURTIS and the other members of the Class.   The facts concealed by

21   Defendants were material.  Defendants had an ongoing duty, throughout the Class Period,

22   to disclose these facts to CURTIS and the Class.  Reasonable consumers, like CURTIS

23   and the Class, would want to know about the Norcold gas absorption refrigerator's

24   inherent defects, ongoing risks and safety hazards.  Like other reasonable consumers, had

25   CURTIS been provided all material facts regarding the gas absorption refrigerator's

26   inherent defects, risks and safety hazards that Defendants exclusively possessed but

27   omitted, withheld and concealed from CURTIS and the Class, CURTIS would have been

28   aware of the safety concerns present and acted differently, including but not limited to

not purchasing (or retaining) a product equipped with a Norcold refrigerator containing the latent defects described within.   The Defendants' wrongful conduct, as described herein, has caused and will continue to cause Plaintiffs and all Class Members injury in fact that is common to Plaintiffs and all Class Members.   Among other things, as a result of Defendants' conduct described herein, Plaintiffs and all Class Members lost the benefit of their bargain as they unknowingly paid for a defective Norcold refrigerator, the Norcold refrigerator has diminished in value, the Norcold refrigerators have suffered a loss of usefulness, and Plaintiffs and all Class Members are (or have been) exposed to further costs and expenses to dispose of and/or replace said refrigerators, in that the refrigerators' cooling units contain chemicals/substances that are corrosive (ammonia), explosive (hydrogen) and a known carcinogen (sodium chromate).   The amount of said common injury and damage will be proven at trial according to proof.

15.   Plaintiff CRAIG POST ("POST") is a consumer residing in Upland, California. POST purchased a 2005 Fleetwood Providence motor home equipped with a Norcold 1200 Series gas absorption refrigerator as original equipment in or about November 2006 from Neil's RV in North Hills, California.   As with all class members, the Norcold refrigerator in POST's RV was designed, manufactured, sold, distributed, constructed, manufactured and/or assembled and put into the stream of commerce by Defendants, and each of them. POST owned the motor home and Norcold refrigerator during the Class Period and is a member of the Class. POST's refrigerator was subject to Defendants' product safety recalls and has had all of the relevant recall and retrofits performed on his refrigerator, including having the refrigerator examined and repaired by Inland Valley RV Repair.   Despite any recall or retrofit, the gas absorption refrigerator continues to present a dangerous fire risk to POST as evidenced by other Plaintiffs and Class members who have experienced fires in their units which have undergone the retrofits. Defendants failed to disclose to POST the same facts they possessed, described below, regarding the gas absorption refrigerator's inherent defects, risks and safety hazards that they exclusively possessed but withheld, concealed and failed to disclose to

11

1  POST and the other members of the Class.  The facts concealed by Defendants were

2  material.  Defendants had an ongoing duty, throughout the Class Period, to disclose these

3  facts to POST and the Class.  Reasonable consumers, like POST and the Class, would

4  want to know about the Norcold gas absorption refrigerator's inherent defects, ongoing

5  risks and safety hazards.  Like other reasonable consumers, had POST been provided all

6  material facts regarding the gas absorption refrigerator's inherent defects, risks and safety

7  hazards that Defendants exclusively possessed but omitted, withheld and concealed from

8  POST and the Class, POST would have been aware of the safety concerns present and

9  acted differently, including but not limited to not purchasing (or retaining) a product

10 equipped with a Norcold refrigerator containing the latent defects described within.  The

11 Defendants' wrongful conduct, as described herein, has caused and will continue to cause

12 Plaintiffs and all Class Members injury in fact that is common to Plaintiffs and all Class

13 Members.   Among other things, as a result of Defendants' conduct described herein,

14 Plaintiffs and all Class Members lost the benefit of their bargain as they unknowingly

15 paid for a defective Norcold refrigerator, the Norcold refrigerator has diminished in

16 value, the Norcold refrigerators have suffered a loss of usefulness, and Plaintiffs and all

17 Class Members are (or have been) exposed to further costs and expenses to dispose of

18 and/or replace said refrigerators, in that the refrigerators' cooling units contain

19 chemicals/substances that are corrosive (ammonia), explosive (hydrogen) and a known

20 carcinogen (sodium chromate).   The amount of said common injury and damage will be

21 proven at trial according to proof.

22        **Florida Plaintiffs and Class/Sub-Class Representative**

23        16.   Plaintiffs Jeff and Susan Etter (hereinafter collectively referred to as

24 "ETTER") are consumers residing in Florida. ETTER purchased a 2007 Damon Tuscany

25 4072 Class A motor home equipped with a Norcold 1200 Series gas absorption

26 refrigerator as original equipment in or about July 2007 from Harberson Swanson RV in

27 Clearwater, Florida. ETTER owned the motor home and Norcold refrigerator during the

28 Class Period and are members of the Class. Before acquiring the 2007 Damon Tuscany,

1    ETTER previously owned a 2000 Gulfstream Independence, which also was equipped

2    with a 1200 Series gas absorption refrigerator, which caught on fire, needed to have the

3    refrigerator replaced and was then traded in as part of ETTER's purchase of the 2007

4    Damon Tuscany equipped with the Norcold 1200 Series refrigerator.¹ The Norcold

5    refrigerators in both of ETTER's RVs were designed, manufactured, sold, distributed,

6    constructed, manufactured and/or assembled and put into the stream of commerce by

7    Defendants, and each of them. At the time of acquisition, ETTER was not provided

8    material facts regarding the fire risks in the 1200 Series refrigerator. Thereafter,

9    ETTER's 1200 series refrigerator was subject to Defendants' product safety recalls and

10   they had all of the relevant recall and retrofits performed on the refrigerator. The first

11   recall kit was installed on ETTER's refrigerator in October 2011, and failed shortly

12   thereafter. The second recall kit, installed in November 2011, also failed and resulted in

13   the failure of the refrigerator cooling unit, which had to be replaced at ETTER's cost,

14   causing further financial injury. ETTER has had two other recall and retrofits kits

15   installed, the last occurring in April of 2012. Despite any recall or retrofit, the gas

16   absorption refrigerator continues to present a dangerous fire risk to ETTER as evidenced

17   by other Plaintiffs and class members who have experienced fires in their units which

18   have undergone the retrofits. At all times, Defendants failed to disclose to ETTER the

19   same facts they possessed, described below, regarding the gas absorption refrigerator's

20   inherent defects, risks and safety hazards that they exclusively possessed but withheld,

21   concealed and failed to disclose to ETTER and the other members of the Class. The facts

22   concealed by Defendants were material. Defendants had an ongoing duty, throughout the

23   Class Period, to disclose these facts to ETTER and the Class. Reasonable consumers,

24   like ETTER and the Class, would want to know about the Norcold gas absorption

25   refrigerator's inherent defects, ongoing risks and safety hazards. Like other reasonable

26   consumers, had ETTER been provided all material facts regarding the gas absorption

27   refrigerator's inherent defects, risks and safety hazards that Defendants exclusively

28   possessed but omitted, withheld and concealed from ETTER and the Class, ETTER

13

1  would have been aware of the safety concerns present and acted differently, including but
2  not limited to not purchasing (or retaining) the 2007 Damon Tuscany equipped with the
3  Norcold 1200 Series refrigerator containing the latent defects described within.   The
4  Defendants' wrongful conduct, as described herein, has caused and will continue to cause
5  Plaintiffs and all Class Members injury in fact that is common to Plaintiffs and all Class
6  Members.  Among other things, as a result of Defendants' conduct described herein, and
7  regardless of whether Defendants paid for any recall or retrofit, ETTER and all Class
8  Members lost the benefit of their bargain as they unknowingly paid for a defective
9  Norcold refrigerator, the Norcold refrigerator has diminished in value, the Norcold
10 refrigerators have suffered a loss of usefulness, and ETTER and all Class Members are
11 (or have been) exposed to further costs and expenses to dispose of and/or replace said
12 refrigerators, in that the refrigerators' cooling units contain chemicals/substances that are
13 corrosive (ammonia), explosive (hydrogen) and a known carcinogen (sodium chromate).
14 The amount of said common injury and damage will be proven at trial according to proof.

15            **Mississippi Plaintiffs and Class/Sub-Class Representative**

16            17.      Plaintiff Leslie "Les" Crawshaw ("CRAWSHAW") is a consumer residing
17 in Gulfport, Mississippi.  CRAWSHAW is a licensed aircraft A&P mechanic and retired
18 military A/C mechanic and retired Department of the Navy aerospace tech.
19 CRAWSHAW purchased a 2001 Monaco Knight motor home equipped with a Norcold
20 N8 Series gas absorption refrigerator as original equipment in or about December 2000
21 from Hawley's Camping Center in Clayton, North Carolina.  The Norcold refrigerator in
22 CRAWSHAW's RV was designed, manufactured, sold, distributed, constructed,
23 manufactured and/or assembled and put into the stream of commerce by Defendants, and
24 each of them. CRAWSHAW owned the motor home and Norcold refrigerator in
25 Mississippi during the Class Period and is a member of the Class.  Notwithstanding the
26 fact that CRAWSHAW's refrigerator shared the same common design defects and safety
27 risks as all of Defendants' other N6, N8 and 1200 Series refrigerators, CRAWSHAW's
28 refrigerator was excluded by Defendants from any recall or retrofit campaign, and

1   CRAWSHAW has not therefore received any notice or warning of the inherent defects in

2   their refrigerator, or the safety risks of continued use of the product, from Defendants.  In

3   fact, CRAWSHAW contacted Defendants on two separate occasions, once in 2002 and

4   again in 2008, to ascertain if his refrigerator was subject to Defendants' product safety

5   recalls.    Each time, CRAWSHAW was told that he was not on the recall list.

6   Notwithstanding this fact, on or about April 19, 2012, the refrigerator malfunctioned and

7   started a fire.  Prior to that time, Defendants failed to disclose to CRAWSHAW the same

8   facts they possessed, described below, regarding the gas absorption refrigerator's inherent

9   defects, risks and safety hazards that they exclusively possessed but withheld, concealed

10  and failed to disclose to CRAWSHAW the other members of the Class.    The facts

11  concealed by Defendants were material.  Defendants had an ongoing duty, throughout the

12  Class Period, to disclose those facts to CRAWSHAW and the Class.    Like other

13  reasonable consumers, had CRAWSHAW been provided all material facts regarding the

14  gas absorption refrigerator's inherent defects, risks and safety hazards that Defendants

15  exclusively possessed but omitted, withheld and concealed from CRAWSHAW and the

16  Class, CRAWSHAW would have been aware of the safety concerns present and acted

17  differently, including but not limited to not purchasing (or retaining) a product equipped

18  with  a  Norcold  refrigerator  containing  the  latent  defects  described  within.

19  Notwithstanding the above information, the refrigerator malfunctioned and started a fire.

20  The fire caused by the gas absorption refrigerator caused damage to property other than

21  the gas absorption refrigerator.  For example, the fire caused damage to CRAWSHAW's

22  RV.    The Defendants' wrongful conduct, as described herein, has caused and will

23  continue to cause Plaintiffs and all Class Members injury in fact that is common to

24  Plaintiffs and all Class Members.   Among other things, Plaintiffs and all Class Members

25  lost the benefit of their bargain as they unknowingly paid for a defective Norcold

26  refrigerator, the Norcold refrigerator has diminished in value, the Norcold refrigerators

27  have suffered a loss of usefulness, and Plaintiffs and all Class Members are (or have

28  been) exposed to further costs and expenses to dispose of and/or replace said

1   refrigerators, in that the refrigerators' cooling units contain chemicals/substances that are

2   corrosive (ammonia), explosive (hydrogen) and a known carcinogen (sodium chromate).

3   The amount of said common injury and damage will be proven at trial according to proof.

4        **New York Plaintiff and Class/Sub-Class Representative**

5       18.   Plaintiff Richard Kaylor ("KAYLOR") is a consumer residing in Clifton

6   Park, New York.  KAYLOR purchased a 2005 American Tradition motor home equipped

7   with a Norcold 1200 LRIM gas absorption refrigerator as original equipment in May

8   2009 through a private sale in Bradenton, Florida.  As with all other class members, the

9   Norcold refrigerator in KAYLOR's  RV was designed, manufactured, sold, distributed,

10   constructed, manufactured and/or assembled and put into the stream of commerce by

11   Defendants, and each of them. KAYLOR owned the motor home and Norcold

12   refrigerator in New York during the Class Period and is a member of the Class.

13   KAYLOR's refrigerator was subject to Defendants' product safety recalls and has had all

14   of the relevant recall and retrofits performed on his refrigerator.  Despite this fact,

15   KAYLOR's refrigerator continued to fail.  Finally, in March 2012, KAYLOR replaced

16   the defective Norcold cooling unit with an Amish cooling unit at his own cost.

17   Defendants failed to disclose to KAYLOR the same facts they possessed, described

18   below, regarding the gas absorption refrigerator's inherent defects, risks and safety

19   hazards that they exclusively possessed but withheld, concealed and failed to disclose to

20   KAYLOR and the other members of the Class.  The facts concealed by Defendants were

21   material. Defendants had an ongoing duty, throughout the Class Period, to disclose those

22   facts to KAYLOR and the Class.  Like other reasonable consumers, had KAYLOR been

23   provided all material facts regarding the gas absorption refrigerator's inherent defects,

24   risks and safety hazards that Defendants exclusively possessed but omitted, withheld and

25   concealed from KAYLOR and the Class, KAYLOR would have been aware of the safety

26   concerns present and acted differently, including but not limited to not purchasing (or

27   retaining) a product equipped with a Norcold refrigerator containing the latent defects

28   described within.  The Defendants' wrongful conduct, as described herein, has caused and

1   will continue to cause Plaintiffs and all Class Members injury in fact that is common to

2   Plaintiffs and all Class Members.   Among other things, regardless of any recall or retrofit

3   provided by Defendants, Plaintiffs and all Class Members were damaged as they lost the

4   benefit of their bargain as they unknowingly paid for a defective Norcold refrigerator, the

5   Norcold refrigerator has diminished in value, the Norcold refrigerators have suffered a

6   loss of usefulness, and Plaintiffs and all Class Members are (or have been) exposed to

7   costs and expenses to dispose of and/or replace said refrigerators, in that the refrigerators'

8   cooling units contain chemicals/substances that are corrosive (ammonia), explosive

9   (hydrogen) and a known carcinogen (sodium chromate).   The amount of said common

10   injury and damage will be proven at trial according to proof.

11   **Pennsylvania Plaintiff and Class/Sub-Class Representative**

12        19.   Plaintiff Brian McBride ("MCBRIDE") is a consumer residing in

13   Souderton, Pennsylvania.   MCBRIDE is a retired, 36-plus year veteran of the

14   Philadelphia Fire Department who purchased a 2009 Fleetwood Bounder motor home

15   equipped with a Norcold 1095 (N8 Series) gas absorption refrigerator as original

16   equipment on or about April 14, 2011 from Media Camping Center in Hatfield,

17   Pennsylvania.   The Norcold refrigerator in MCBRIDE's RV was designed,

18   manufactured, sold, distributed, constructed, manufactured and/or assembled and put into

19   the stream of commerce by Defendants, and each of them. MCBRIDE owned the motor

20   home and Norcold refrigerator in Pennsylvania during the Class Period and is a member

21   of the Class.   Notwithstanding the fact that MCBRIDE's refrigerator shared the same

22   common design defects and safety risks as all of Defendants' other N6, N8 and 1200

23   Series refrigerators, MCBRIDE's refrigerator was excluded by Defendants from any

24   recall or retrofit campaign, and MCBRIDE did not therefore receive any notice or

25   warning of the inherent defects in their refrigerator, or the safety risks of continued use of

26   the product, from Defendants, until September, 2012.  Rather, MCBRIDE was alerted to

27   Defendants' recall in February, 2012 and contacted Norcold to determine if his

28   refrigerator was subject to a product safety recall.  At that time, MCBRIDE was told that

1   he was not on the recall list.  On or about September 28, 2012, MCBRIDE received a

2   product safety recall notice from George Strasburg, Manager of Corporate Product

3   Reliability for Norcold.  The recall notice identified Norcold's 2010 recall of their 1200

4   Series refrigerators.  MCBRIDE again contacted Norcold to determine if his N8 Series

5   refrigerator was subject to a product safety recall.  Norcold never responded.  Defendants

6   failed to disclose to MCBRIDE the same facts they possessed, described below,

7   regarding the gas absorption refrigerator's inherent defects, risks and safety hazards that

8   they exclusively possessed but withheld, concealed and failed to disclose to MCBRIDE

9   and the other members of the Class.  The facts concealed by Defendants were material.

10  Defendants had an ongoing duty, throughout the Class Period, to disclose those facts to

11  MCBRIDE and the Class.  Like other reasonable consumers, had MCBRIDE been

12  provided all material facts regarding the gas absorption refrigerator's inherent defects,

13  risks and safety hazards that Defendants exclusively possessed but omitted, withheld and

14  concealed from MCBRIDE and the Class, MCBRIDE would have been aware of the

15  safety concerns present and acted differently, including but not limited to not purchasing

16  (or retaining) a product equipped with a Norcold refrigerator containing the latent defects

17  described within.  The Defendants' wrongful conduct, as described herein, has caused and

18  will continue to cause Plaintiffs and all Class Members injury in fact that is common to

19  Plaintiffs and all Class Members.  Among other things, Plaintiffs and all Class Members

20  lost the benefit of their bargain as they unknowingly paid for a defective Norcold

21  refrigerator, the Norcold refrigerator has diminished in value, the Norcold refrigerators

22  have suffered a loss of usefulness, and Plaintiffs and all Class Members are (or have

23  been) exposed to further costs and expenses to dispose of and/or replace said

24  refrigerators, in that the refrigerators' cooling units contain chemicals/substances that are

25  corrosive (ammonia), explosive (hydrogen) and a known carcinogen (sodium chromate).

26  The amount of said common injury and damage will be proven at trial according to proof.

27  / / /

28  / / /

**Texas Plaintiff and Class/Sub-Class Representative**

20.     Plaintiff Dennis Osha ("OSHA") is a consumer residing in Georgetown, Texas.  OSHA purchased a 2004 Itasca Suncruiser 38R motor home equipped with a Norcold 1200 LRIM gas absorption refrigerator as original equipment on or about March 1, 2004 from Crestview RV in Buda, Texas.  As with other class members, the Norcold refrigerator in OSHA's  RV was designed, manufactured, sold, distributed, constructed, manufactured and/or assembled and put into the stream of commerce by Defendants, and each of them.  OSHA owned the motor home and Norcold refrigerator in Texas during the Class Period and is a member of the Class.  OSHA's refrigerator was subject to Defendants' product safety recalls and has had all of the relevant recall and retrofits performed on his refrigerator.  In June 2012, OSHA's refrigerator stopped working while he was travelling through Caldwell, Idaho.  OSHA stopped at a local repair shop to have the refrigerator worked on, and while performing the relevant repairs, the shop informed OSHA that the boiler tubing of his unit "was shot" and presented a safety hazard. Defendants failed to disclose to OSHA the same facts they possessed, described below, regarding the gas absorption refrigerator's inherent defects, risks and safety hazards that they exclusively possessed but withheld, concealed and failed to disclose to OSHA and the other members of the Class.  The facts concealed by Defendants were material. Defendants had an ongoing duty, throughout the Class Period, to disclose those facts to OSHA and the Class.  Like other reasonable consumers, had OSHA been provided all material facts regarding the gas absorption refrigerator's inherent defects, risks and safety hazards that Defendants exclusively possessed but omitted, withheld and concealed from OSHA and the Class, OSHA would have been aware of the safety concerns present and acted differently, including but not limited to not purchasing (or retaining) a product equipped with a Norcold refrigerator containing the latent defects described within.  The Defendants' wrongful conduct, as described herein, has caused and will continue to cause Plaintiffs and all Class Members injury in fact that is common to Plaintiffs and all Class Members.   Among other things, regardless of any recall or retrofit performed by

19

1   Defendants, OSHA and all Class Members lost the benefit of their bargain as they

2   unknowingly paid for a defective Norcold refrigerator, the Norcold refrigerator has

3   diminished in value, the Norcold refrigerators have suffered a loss of usefulness, and

4   OSHA and all Class Members are (or have been) exposed to further costs and expenses to

5   dispose of and/or replace said refrigerators, in that the refrigerators' cooling units contain

6   chemicals/substances that are corrosive (ammonia), explosive (hydrogen) and a known

7   carcinogen (sodium chromate).   The amount of said common injury and damage will be

8   proven at trial according to proof.

9           **North Carolina Plaintiff and Class/Sub-Class Representative**

10          21.     Plaintiff James Pearce ("PEARCE") is a consumer residing in Youngsville,

11  North Carolina.  PEARCE purchased a 2004 American Tradition motor home equipped

12  with a 1200 Series gas absorption refrigerator as original equipment in May 2004 from

13  Mike Thompson's RV Superstores in Cathedral City, California.   As with other class

14  members, the Norcold refrigerator in PEARCE's RV was designed, manufactured, sold,

15  distributed, constructed, manufactured and/or assembled and put into the stream of

16  commerce by Defendants, and each of them. PEARCE owned the motor home and

17  Norcold refrigerator in North Carolina during the Class Period and is a member of the

18  Class. PEARCE's refrigerator was subject to Defendants' product safety recalls and has

19  had all of the relevant recall and retrofits performed on his refrigerator, including having

20  the refrigerator examined and repaired by Bill Flemmons RV World.  Defendants failed

21  to disclose to PEARCE the same facts they possessed, described below, regarding the gas

22  absorption refrigerator's inherent defects, risks and safety hazards that they exclusively

23  possessed but withheld, concealed and failed to disclose to PEARCE and the other

24  members of the Class.  The facts concealed by Defendants were material.  Defendants

25  had an ongoing duty, throughout the Class Period, to disclose those facts to PEARCE and

26  the Class.  Like other reasonable consumers, had PEARCE been provided all material

27  facts regarding the gas absorption refrigerator's inherent defects, risks and safety hazards

28  that Defendants exclusively possessed but omitted, withheld and concealed from

1   PEARCE and the Class, PEARCE would have been aware of the safety concerns present
2   and acted differently, including but not limited to not purchasing (or retaining) a product
3   equipped with a Norcold refrigerator containing the latent defects described within. The
4   Defendants' wrongful conduct, as described herein, has caused and will continue to cause
5   Plaintiffs and all Class Members injury in fact that is common to Plaintiffs and all Class
6   Members. Among other things, regardless of any recall or retrofits performed or paid by
7   Defendants, PEARCE and all Class Members lost the benefit of their bargain as they
8   unknowingly paid for a defective Norcold refrigerator, the Norcold refrigerator has
9   diminished in value, the Norcold refrigerators have suffered a loss of usefulness, and
10  PEARCE and all Class Members are (or have been) exposed to further costs and
11  expenses to dispose of and/or replace said refrigerators, in that the refrigerators' cooling
12  units contain chemicals/substances that are corrosive (ammonia), explosive (hydrogen)
13  and a known carcinogen (sodium chromate).   The amount of said common injury and
14  damage will be proven at trial according to proof.

15          **Maryland Plaintiff and Class/Sub-Class Representative**

16          22.     Plaintiff Raymond Rolle, Sr. ("ROLLE") is a consumer residing in
17  Manchester, Maryland. ROLLE purchased a 2006 American Coach Tradition motor
18  home equipped with a Norcold 1200 LRIM gas absorption refrigerator as original
19  equipment on or about May 4, 2006 from Lazydays RV in Seffner, Florida. As with
20  other class members, the Norcold refrigerator in ROLLE's RV was designed,
21  manufactured, sold, distributed, constructed, manufactured and/or assembled and put into
22  the stream of commerce by Defendants, and each of them. ROLLE owned the motor
23  home and Norcold refrigerator in Maryland during the Class Period and is a member of
24  the Class. ROLLE's refrigerator was subject to Defendants' product safety recalls and
25  has had all of the relevant recall and retrofits performed on his refrigerator, including
26  having the refrigerator inspected and repaired by Lazydays RV Service and Master Tech
27  RV Service, in Tampa, FL. Notwithstanding this fact, on or about December 15, 2012,
28  the refrigerator malfunctioned and started a fire. The fire caused damage to property

other than the gas absorption refrigerator. For example, the fire caused a "total loss" to ROLLE's RV. In addition, the fire caused damage to ROLLE's personal property that was located within the RV at the time it was destroyed by the fire. Prior to that time, Defendants failed to disclose to ROLLE the same facts they possessed, described below, regarding the gas absorption refrigerator's inherent defects, risks and safety hazards that they exclusively possessed but withheld, concealed and failed to disclose to ROLLE and the other members of the Class. The facts concealed by Defendants were material. Defendants had an ongoing duty, throughout the Class Period, to disclose those facts to ROLLE and the Class. Like other reasonable consumers, had ROLLE been provided all material facts regarding the gas absorption refrigerator's inherent defects, risks and safety hazards that Defendants exclusively possessed but omitted, withheld and concealed from ROLLE and the Class, ROLLE would have been aware of the safety concerns present and acted differently, including but not limited to not purchasing (or retaining) a product equipped with a Norcold refrigerator containing the latent defects described within. The Defendants' wrongful conduct, as described herein, has caused and will continue to cause ROLLE and all Class Members injury in fact that is common to ROLLE and all Class Members. Among other things, regardless of any recall or retrofit, ROLLE and all Class Members lost the benefit of their bargain as they unknowingly paid for a defective Norcold refrigerator, the Norcold refrigerator has diminished in value, the Norcold refrigerators have suffered a loss of usefulness, and ROLLE and all Class Members are (or have been) exposed to further costs and expenses to dispose of and/or replace said refrigerators, in that the refrigerators' cooling units contain chemicals/substances that are corrosive (ammonia), explosive (hydrogen) and a known carcinogen (sodium chromate). The amount of said common injury and damage will be proven at trial according to proof.

**Tennessee Plaintiffs and Class/Sub-Class Representative**

23.    Plaintiffs Leonard and Orrene Somerville (hereinafter collectively referred to as "SOMERVILLE") are consumers residing in Kingston Springs, Tennessee. SOMERVILLE purchased a 1999 Bluebird Wanderlodge LXI motor home equipped with

1    a Norcold 1200 Series gas absorption refrigerator as original equipment on or about April
2    21, 2005 from John Bleakly Motor Homes in Douglasville, Georgia.  As with other class
3    members, the Norcold refrigerator in SOMERVILLE's RV was designed, manufactured,
4    sold, distributed, constructed, manufactured and/or assembled and put into the stream of
5    commerce by Defendants, and each of them. SOMERVILLE owned the motor home and
6    Norcold refrigerator in Tennessee during the Class Period and is a member of the Class.
7    SOMERVILLE's refrigerator was subject to Defendants' product safety recalls and has
8    had all of the relevant recall and retrofits performed on their refrigerator, including
9    having the refrigerator inspected and repaired by John Bleakly Motor Homes in April
10   2005 before SOMERVILLE took possession of the motor home and by Cullum and
11   Maxey Camping Center.  Notwithstanding this fact, on or about September 30, 2012, the
12   refrigerator malfunctioned and started a fire. The fire caused damage to property other
13   than the gas absorption refrigerator.  For example, the fire caused a "total loss" to the
14   SOMERVILLE's RV.  In addition, the fire caused damage to the SOMERVILLE's
15   personal property that was located within the RV at the time it was destroyed by the fire.
16   Prior to that time, Defendants failed to disclose to SOMERVILLE the same facts they
17   possessed, described below, regarding the gas absorption refrigerator's inherent defects,
18   risks and safety hazards that they exclusively possessed but withheld, concealed and
19   failed to disclose to SOMERVILLE and the other members of the Class.   The facts
20   concealed by Defendants were material.  Defendants had an ongoing duty, throughout the
21   Class Period, to disclose those facts to SOMERVILLE and the Class.   Like other
22   reasonable consumers, had SOMERVILLE been provided all material facts regarding the
23   gas absorption refrigerator's inherent defects, risks and safety hazards that Defendants
24   exclusively possessed but omitted, withheld and concealed from SOMERVILLE and the
25   Class, SOMERVILLE would have been aware of the safety concerns present and acted
26   differently, including but not limited to not purchasing (or retaining) a product equipped
27   with a Norcold refrigerator containing the latent defects described within.   The
28   Defendants' wrongful conduct, as described herein, has caused and will continue to cause

1  SOMERVILLE and all Class Members injury in fact that is common to SOMERVILLE

2  and all Class Members.   Among other things, regardless of any recall or retrofit

3  performed by Defendants, SOMERVILLE and all Class Members lost the benefit of their

4  bargain as they unknowingly paid for a defective Norcold refrigerator, the Norcold

5  refrigerator has diminished in value, the Norcold refrigerators have suffered a loss of

6  usefulness, and Plaintiffs and all Class Members are (or have been) exposed to costs and

7  expenses to dispose of and/or replace said refrigerators, in that the refrigerators' cooling

8  units contain chemicals/substances that are corrosive (ammonia), explosive (hydrogen)

9  and a known carcinogen (sodium chromate).   The amount of said common injury and

10  damage will be proven at trial according to proof.

11  **Oregon Plaintiff and Sub-Class/Class Representative**

12       24.    Plaintiff Emil Vargo ("VARGO") is a consumer residing in Gresham,

13  Oregon.  VARGO purchased a 2005 Country Coach 40' Inspire motor home equipped

14  with a Norcold 1200 Series RIM gas absorption refrigerator as original equipment on

15  November 17, 2005 from Holland Motor Homes in San Diego, California.  As with other

16  class members, the Norcold refrigerator in VARGO's RV was designed, manufactured,

17  sold, distributed, constructed, manufactured and/or assembled and put into the stream of

18  commerce by Defendants, and each of them. VARGO owned the motor home and

19  Norcold refrigerator during the Class Period and are members of the Class.  VARGO's

20  refrigerator was subject to Defendants' product safety recalls and he had all of the

21  relevant recall and retrofits performed on the refrigerator, including but not limited to the

22  installation of the overheating safety switch at a dealership located in Georgia in or

23  around 2009.  On July 1, 2012, VARGO's Norcold refrigerator stopped working in

24  Washington State as a result of the unit overheating and the safety switch activating.

25  Thereafter, VARGO replaced the Norcold refrigerator's cooling unit with a compatible

26  Amish-built cooling unit at a cost of more than $1,800.00.  Defendants failed to disclose

27  to VARGO the same facts they possessed, described below, regarding the gas absorption

28  refrigerator's inherent defects, risks and safety hazards that they exclusively possessed

but withheld, concealed and failed to disclose to VARGO and the other members of the Class.   The facts concealed by Defendants were material.   Like other reasonable consumers, had VARGO been provided all material facts regarding the gas absorption refrigerator's inherent defects, risks and safety hazards that Defendants exclusively possessed but omitted, withheld and concealed from VARGO and the Class, VARGO would have been aware of the safety concerns present and acted differently, including but not limited to not purchasing (or retaining) a product equipped with a Norcold refrigerator containing the latent defects described within.   The Defendants' wrongful conduct, as described herein, has caused and will continue to cause VARGO and all Class Members injury in fact that is common to VARGO and all Class Members.   Among other things, regardless of any recall or retrofit performed or paid for by Defendants, VARGO and all Class Members lost the benefit of their bargain as they unknowingly paid for a defective Norcold refrigerator, the Norcold refrigerator has diminished in value, the Norcold refrigerators have suffered a loss of usefulness, and Plaintiffs and all Class Members are (or have been) exposed to further costs and expenses to dispose of said refrigerators, in that the refrigerators' cooling units contain chemicals/substances that are corrosive (ammonia), explosive (hydrogen) and a known carcinogen (sodium chromate).   The amount of said common injury and damage will be proven at trial according to proof.

**Washington Plaintiff and Sub-Class/Class Representative**

25.   Plaintiffs Richard Spears and Alice Knight (hereinafter collectively referred to as "SPEARS/KNIGHT") are consumers residing in Renton, Washington. SPEARS/KNIGHT purchased a 2000 Winnebago 34' Itasca Horizon motor home equipped with a two-door Norcold gas absorption refrigerator as original equipment in October 2004 from Great American RV in Tacoma, Washington.   As with other class members, the Norcold refrigerator in SPEARS/KNIGHT's RV was designed, manufactured, sold, distributed, constructed, manufactured and/or assembled and put into the stream of commerce by Defendants, and each of them. SPEARS/KNIGHT owned the

25

1    motor home and Norcold refrigerator during the Class Period and are members of the
2    Class. Upon information and belief, SPEARS/KNIGHT's refrigerator was subject to
3    Defendants' product safety recalls. SPEARS/KNIGHT never received notice of any
4    recall by first-class mail, nor did they see any Norcold recall published in "Motorhome
5    Magazine", which they have reviewed monthly since October 2004. On or about August
6    19, 2012, the refrigerator malfunctioned and started a fire while SPEARS/KNIGHT were
7    vacationing in British Columbia, Canada. After noticing a red glow at 3:30 a.m.,
8    SPEARS/KNIGHT, sensing that there was a fire, evacuated from the RV and attempted
9    to extinguish the fire using a personal fire extinguisher to no avail, resulting in substantial
10   fire damage to the RV. The fire caused damage to property other than the gas absorption
11   refrigerator. For example, the fire caused a "total loss" to SPEARS'/KNIGHT's RV. In
12   addition, the fire caused damage to SPEARS/KNIGHT's personal property that was
13   located within the RV at the time it was destroyed by the fire. Thereafter,
14   SPEARS/KNIGHT purchased another 2000 Winnebago 34' Itasca Horizon motor home
15   equipped with a two-door Norcold gas absorption refrigerator as original equipment in
16   August 2012 from Sunset RV in Tacoma, Washington. At the time SPEARS/KNIGHT
17   took steps to verify that the refrigerator in the second RV was subject to Defendants'
18   product safety recalls and had all of the relevant recall and retrofits performed on the
19   refrigerator, including but not limited to the installation of the thermal sensors prior to
20   SPEARS/KNIGHT's purchase. Defendants again failed to disclose to
21   SPEARS/KNIGHT the same facts they possessed, described below, regarding the gas
22   absorption refrigerator's inherent defects, risks and safety hazards that they exclusively
23   possessed but withheld, concealed and failed to disclose to SPEARS/KNIGHT and the
24   other members of the Class. The facts concealed by Defendants were material. Like
25   other reasonable consumers, had SPEARS/KNIGHT been provided all material facts
26   regarding the gas absorption refrigerator's inherent defects, risks and safety hazards that
27   Defendants exclusively possessed but omitted, withheld and concealed from
28   SPEARS/KNIGHT and the Class, SPEARS/KNIGHT would have been aware of the

1 safety concerns present and acted differently, including but not limited to not purchasing

2 (or retaining) a product equipped with a Norcold refrigerator containing the latent defects

3 described within. The Defendants' wrongful conduct, as described herein, has caused and

4 will continue to cause Plaintiffs and all Class Members injury in fact that is common to

5 Plaintiffs and all Class Members. Among other things, Plaintiffs and all Class Members

6 lost the benefit of their bargain as they unknowingly paid for a defective Norcold

7 refrigerator, the Norcold refrigerator has diminished in value, the Norcold refrigerators

8 have suffered a loss of usefulness, and Plaintiffs and all Class Members are (or have

9 been) exposed to further costs and expenses to dispose of said refrigerators, in that the

10 refrigerators' cooling units contain chemicals/substances that are corrosive (ammonia),

11 explosive (hydrogen) and a known carcinogen (sodium chromate). The amount of said

12 common injury and damage will be proven at trial according to proof. As a result of

13 Defendants' conduct, described herein, SPEARS/KNIGHT has been injured, incurred

14 loss-of-money, and been damaged in a manner similar to the Class, in an amount that will

15 be established at trial according to proof.

16 **Illinois Plaintiffs and Sub-Class/Class Representatives**

17      26.     Plaintiff Alan and Sandra Burkhart (hereinafter collectively referred to as

18 "BURKHART") is a consumer residing in Chicago, Illinois. BURKHART purchased a

19 2005 Fleetwood Bounder 38N Diesel Pusher motor home equipped with a Norcold 1200

20 Series gas absorption refrigerator as original equipment in September 2004 from

21 Shabona, RV in Shabona, Illinois. As with other class members, the Norcold refrigerator

22 in BURKHART's RV was designed, manufactured, sold, distributed, constructed,

23 manufactured and/or assembled and put into the stream of commerce by Defendants, and

24 each of them. BURKHART owned the motor home and Norcold refrigerator during the

25 Class Period and is a member of the Class. BURKHART's refrigerator was subject to

26 Defendants' product safety recalls and has had all of the relevant recall and retrofits

27 performed on his refrigerator, including having the refrigerator inspected and repaired by

28 RV Doctor in Salt Lake City, Utah on April 8, 2011. Prior to the refrigerator's complete

1  failure in May or June 2012, BURKHART smelled burning wood while watching TV.

2  Shortly thereafter, BURKHART had the Norcold refrigerator replaced with an Amish

3  refrigerator.   When the Norcold refrigerator was being removed, BURKHART saw

4  charring on the back of the unit near the flue at the top of the case, white powder on the

5  lower tubing, and the insulation was wet from condensation on the back of the unit.  Prior

6  to that time, Defendants failed to disclose to BURKHART the same facts they possessed,

7  described below, regarding the gas absorption refrigerator's inherent defects, risks and

8  safety hazards that they exclusively possessed but withheld, concealed and failed to

9  disclose to BURKHART and the other members of the Class.   The facts concealed by

10  Defendants were material.   Like other reasonable consumers, had BURKHART been

11  provided all material facts regarding the gas absorption refrigerator's inherent defects,

12  risks and safety hazards that Defendants exclusively possessed but omitted, withheld and

13  concealed from BURKHART and the Class, BURKHART would have been aware of the

14  safety concerns present and acted differently, including but not limited to not purchasing

15  (or retaining) a product equipped with a Norcold refrigerator containing the latent defects

16  described within.  The Defendants' wrongful conduct, as described herein, has caused and

17  will continue to cause BURKHART and all Class Members injury in fact that is common

18  to BURKHART and all Class Members.   Among other things, BURKHART and all

19  Class Members lost the benefit of their bargain as they unknowingly paid for a defective

20  Norcold refrigerator, the Norcold refrigerator has diminished in value, the Norcold

21  refrigerators have suffered a loss of usefulness, and BURKHART and all Class Members

22  are (or have been) exposed to further costs and expenses to dispose of and/or replace said

23  refrigerators, in that the refrigerators' cooling units contain chemicals/substances that are

24  corrosive (ammonia), explosive (hydrogen) and a known carcinogen (sodium chromate).

25  The amount of said common injury and damage will be proven at trial according to proof.

26  **Arizona Plaintiffs and Sub-Class/Class Representatives**

27  27.   Plaintiffs George and Kathleen Frederick (hereinafter collectively referred

28  to as "FREDERICK") are consumers residing in Scottsdale, Arizona.  FREDERICK

1    purchased a 2004 Country Coach Inspire motor home equipped with a Norcold 1200

2    Series gas absorption refrigerator as original equipment on in August 2003 from

3    Wheelers Las Vegas RV in Las Vegas, Nevada.   As with other class members, the

4    Norcold refrigerator in FREDRICK's RV was designed, manufactured, sold, distributed,

5    constructed, manufactured and/or assembled and put into the stream of commerce by

6    Defendants, and each of them.   FREDERICK owned the motor home and Norcold

7    refrigerator during the Class Period and are members of the Class.   FREDERICK's

8    refrigerator was subject to Defendants' product safety recalls and they had all of the

9    relevant recall and retrofits performed on the refrigerator, including having the

10   refrigerator examined and repaired by Desert West Coach Services in Phoenix, Arizona

11   on June 7, 2006 and November 10, 2006; and, by Hitchcock RV in Albuquerque, New

12   Mexico on October 5, 2011.   Defendants failed to disclose to FREDERICK the same

13   facts they possessed, described below, regarding the gas absorption refrigerator's inherent

14   defects, risks and safety hazards that they exclusively possessed but withheld, concealed

15   and failed to disclose to FREDERICK and the other members of the Class.   The facts

16   concealed by Defendants were material.   Like other reasonable consumers, had

17   FREDERICK been provided all material facts regarding the gas absorption refrigerator's

18   inherent defects, risks and safety hazards that Defendants exclusively possessed but

19   omitted, withheld and concealed from FREDERICK and the Class, FREDERICK would

20   have been aware of the safety concerns present and acted differently, including but not

21   limited to not purchasing (or retaining) a product equipped with a Norcold refrigerator

22   containing the latent defects described within.   The Defendants' wrongful conduct, as

23   described herein, has caused and will continue to cause FREDERICK and all Class

24   Members injury in fact that is common to FREDERICK and all Class Members.   Among

25   other things, FREDERICK and all Class Members lost the benefit of their bargain as they

26   unknowingly paid for a defective Norcold refrigerator, the Norcold refrigerator has

27   diminished in value, the Norcold refrigerators have suffered a loss of usefulness, and

28   Plaintiffs and all Class Members are (or have been) exposed to further costs and expenses

1    to dispose of said refrigerators, in that the refrigerators' cooling units contain

2    chemicals/substances that are corrosive (ammonia), explosive (hydrogen) and a known

3    carcinogen (sodium chromate).   The amount of said common injury and damage will be

4    proven at trial according to proof.

5        28.     Plaintiffs Alan and Linda Greager (hereinafter collectively referred to as

6    "GREAGER") are consumers residing in Casa Grande, Arizona.  GREAGER purchased

7    a 2003 Travel Supreme 40DS02 motor home equipped with a Norcold 1200 Series gas

8    absorption refrigerator as original equipment on or about August 28, 2003 from Steve

9    Casey's Recreational Sales in Wheatridge, Colorado.  As with other class members, the

10    Norcold refrigerator in GREAGER's RV was designed, manufactured, sold, distributed,

11    constructed, manufactured and/or assembled and put into the stream of commerce by

12    Defendants, and each of them. GREAGER owned the motor home and Norcold

13    refrigerator during the Class Period and is a member of the Class.   GREAGER's

14    refrigerator was subject to Defendants' product safety recalls; however, they have not

15    received any notice of recall/retrofit to date from Defendants.  Notwithstanding this fact,

16    on or about December 30, 2012, the refrigerator malfunctioned and started a fire.  The

17    fire caused damage to property other than the gas absorption refrigerator.  For example,

18    the fire caused a "total loss" to the GREAGER's RV.  In addition, the fire caused damage

19    to the GREAGER's personal property that was located within the RV at the time it was

20    destroyed by the fire.  Prior to that time, Defendants failed to disclose to GREAGER the

21    same facts they possessed, described below, regarding the gas absorption refrigerator's

22    inherent defects, risks and safety hazards that they exclusively possessed but withheld,

23    concealed and failed to disclose to GREAGER and the other members of the Class.  The

24    facts concealed by Defendants were material.  Like other reasonable consumers, had

25    GREAGER been provided all material facts regarding the gas absorption refrigerator's

26    inherent defects, risks and safety hazards that Defendants exclusively possessed but

27    omitted, withheld and concealed from GREAGER and the Class, GREAGER would have

28    been aware of the safety concerns present and acted differently, including but not limited

1   to not purchasing (or retaining) a product equipped with a Norcold refrigerator containing

2   the latent defects described within.  The Defendants' wrongful conduct, as described

3   herein, has caused and will continue to cause GREAGER and all Class Members injury

4   in fact that is common to GREAGER and all Class Members.   Among other things,

5   GREAGER and all Class Members lost the benefit of their bargain as they unknowingly

6   paid for a defective Norcold refrigerator, the Norcold refrigerator has diminished in

7   value, the Norcold refrigerators have suffered a loss of usefulness, and GREAGER and

8   all Class Members are (or have been) exposed to further costs and expenses to dispose of

9   said refrigerators, in that the refrigerators' cooling units contain chemicals/substances that

10  are corrosive (ammonia), explosive (hydrogen) and a known carcinogen (sodium

11  chromate).   The amount of said common injury and damage will be proven at trial

12  according to proof.

13      29.    Each above-named Plaintiffs, like the members of the Class and each Sub-

14  Class, personally have standing to assert the claims alleged herein as each Plaintiff has

15  been injured, damaged, suffered cognizable loss and incurred loss of money by reason of

16  the conduct of Defendants described further herein.  At relevant times within the Class

17  Period, each Plaintiff owned a RV with a defective Norcold gas absorption refrigerator

18  where the risk and possibility of fire has either occurred, and/or remains actual or

19  imminent.  In order to eliminate the serious safety risks involved with the continued use

20  of Defendants' defective products, each Plaintiff has or will be forced to incur costs to

21  replace Defendants' defective refrigerators with refrigerators that are not defective, and

22  do not pose a safety risk when used for their intended purpose.   Those costs include, but

23  are not limited to, parts and labor to remove, replace and dispose of Defendants'

24  refrigerators.   These costs are common to all Plaintiffs and members of each Sub-Class,

25  and constitute economic losses and damages directly and proximately caused by the

26  Defendants' wrongful conduct, as set forth herein.  Regardless of a manifested defect,

27  each Plaintiff has been injured, *inter alia*, because their injuries consist of economic

28  losses which include the diminished value of their RV which results once the full truth

1    regarding the ongoing Norcold defective gas absorption refrigerators is made public.  The

2    information currently in the marketplace regarding the defective Norcold gas absorption

3    refrigerators has caused the value of the RV's containing them to partially drop and once

4    the full extent and complete truth about the defective Norcold gas absorption refrigerators

5    and the continuing risk of fire despite recalls and retrofits is made public the value of any

6    RV containing a Norcold gas absorption refrigerator will drop even more, causing further

7    injury to Plaintiffs and the Class.  Plaintiffs, *inter alia*, seek recovery of the difference

8    between the value of the RV as delivered with the defective Norcold gas absorption

9    refrigerator, and the value those RV's would have had had it been delivered as warranted

10    and not in a defective state.   Plaintiffs suffered economic loss and injury-in-fact because

11    the Norcold gas absorption refrigerators they acquired were defective at the moment of

12    purchase, and at all times continuing thereafter, due to Defendants' concealment of

13    material facts.  Plaintiffs contracted for completely safe products, but did not receive such

14    products but instead, received dangerous products highly susceptible to the risk of fire

15    within the products' useful and anticipated life which are, in turn, worth less.   As a result

16    of the foregoing, Plaintiffs and all class members lost the benefit of their bargain.

17    **B.**    **Defendants**

18         30.    Norcold, Inc. ("Norcold") at points in time relevant to this case was a

19    corporation organized and existing under the laws of the state of Delaware, with its

20    headquarters and principal place of business at 1 Century Drive, Gettysburg, OH 45328.

21    On or about 1997, all of Norcold's assets and stock were purchased by Thetford

22    Corporation and Dyson-Kissner-Moran Corporation ("DKM").   Norcold is authorized to

23    transact business and is doing business in California and other states where the named

24    Plaintiffs identified above reside.

25         31.    Thetford Corporation ("Thetford") is, and at all times mentioned herein

26    was, a corporation organized and existing under the laws of the state of Delaware, with

27    its headquarters and principal place of business  at 7101 Jackson Road, Ann Arbor, MI

28    48103. Plaintiffs are informed and believe and thereon allege that, at least since 1996, all

1  of the assets and stock of Thetford are owned by DKM.   Thetford is authorized to

2  transact business and is doing business in California and other states where the named

3  Plaintiffs identified above reside.

4       32.    DKM is, and at all times mentioned herein was, a corporation organized

5  and existing under the laws of the state of Delaware, with its headquarters and principle

6  place of business at 565 Fifth Avenue, Fourth Floor, New York, NY  10017.  DKM is

7  authorized to transact business and is doing business in California and other states where

8  the named Plaintiffs identified above reside.

9       33.    Plaintiffs are informed and believe and thereon allege that in or about 1997,

10  Defendants DKM and Thetford purchased the assets of Defendant Norcold, and Norcold

11  then became a division of Thetford.  Thereafter, Norcold operated as a division or wholly

12  owned subsidiary of Thetford, and Norcold and Thetford operated as divisions or wholly

13  owned subsidiaries of DKM.  All Defendants are alter-egos of each other, fail to maintain

14  separate identities, and any corporate veils should be pierced.  Norcold is the alter ego of

15  DKM and Thetford as they control and direct Norcold's activities.    Norcold is an

16  instrument for the personal advantage of DKM and Thetford.  There is such a unity of

17  interest and ownership between the Norcold, Thetford and DKM that the separate

18  personalities of Norcold, on one hand, and DKM and Thetford on the other, do not in

19  reality exist.   DKM and Thetford control Norcold to such a degree as to render Norcold

20  the mere instrumentality of both DKM and Thetford.   There would be an inequitable

21  result if the acts in question are treated as those of the Norcold alone.

22       34.    DKM's website confirms that DKM is not merely a passive investor or

23  shareholder in Norcold or Thetford, but is actively involved in directing those companies

24  operations.   http://www.dkmcorp.com/about.html ("For more than 50 years, the DKM

25  formula has included active long-term stewardship of its businesses").

26       35.    Since at least 1997, Thetford and Norcold have operated and have been

27  controlled by DKM as part of DKM's "Recreational Vehicle Group."  As part of the

28  organizational structure established by DKM, Norcold operates and is controlled by

33

Thetford through officers and corporate management that is joint to both entities. Thetford and Norcold officers report directly to DKM. All profits generated by Thetford and Norcold flow directly to DKM. DKM exercises substantial control over the distribution of profits to and between Thetford and Norcold, and further exercises substantial control over the expenditure of monies by Thetford and Norcold. DKM, Thetford and Norcold are privy to, and share amongst themselves (and/or have access to) the same facts and information regarding the gas absorption refrigerator's inherent defects and risks.

36.   DKM has, at all times relevant hereto, combined Thetford and Norcold's management and operations to the point where Norcold has, as a practical matter, ceased to exist as a separate entity. As organized and overseen by DKM, Norcold gas absorption refrigerators are advertised and marketed through Thetford's marketing department, website and sales staff, in conjunction with Thetford's tradename and trademarks. All written advertising for Norcold products is generated by Thetford. Norcold's products are advertised through both DKM and Thetford's websites and marketed collectively thereon as "our refrigerators." See e.g., www.thetford.com/HOME/PRODUCTS/Norcold. Customer service for Norcold products, including warranty claims, is handled through the customer service department of Thetford by Thetford employees. Norcold does not have its own sales staff, or marketing or customer service departments. In short, Norcold is not organized or operated as an independent entity, but is rather the manufacturing division of Thetford, which is wholly owned and controlled by DKM.

37.   DKM has, at all times since at least 1997, exercised substantial control over the design, manufacture, distribution, recall and retrofit of Norcold gas absorption refrigerators. Under the organizational system established and maintained by DKM, Norcold had and has no authority to spend money on changes to the design or manufacture of their gas absorption refrigerators without the prior express consent of DKM. Norcold had and has no authority to initiate recalls of their gas absorption refrigerators without the prior express consent of DKM. Norcold had and has no

1  authority to establish or prosecute a retrofit campaign to remedy defects in their gas

2  absorption refrigerators without the express prior consent of DKM.  Since at least 2000,

3  all decisions regarding recalls/retrofits of Norcold gas absorption refrigerators –

4  including, but not limited to, the decision to initiate the recall, the scope of the recall, and

5  the remedy to be applied through a retrofit campaign – were made by an executive

6  committee that included, and was controlled by, officers and directors of DKM.  Those

7  officers included, but were not limited to, Robert R. Dyson, Chairman and Chief

8  Executive Officers of DKM, and Michael J. Harris, President and Chief Operating Office

9  of DKM.

10      38.   DKM further controlled the decision to initiate product safety recalls of

11  Norcold gas absorption refrigerators through a claims reporting procedure established to

12  allow their direct monitoring of fire claims involving Norcold's products.  Under this

13  system, all fire claims reported to Norcold were tracked by Norcold employees in an

14  Incident Log which identified the claim by date of incident, date reported, model of

15  refrigerator, type of recreational vehicle, etc.  Norcold employees were also delegated the

16  task of investigating each claim, including obtaining fire investigation reports, the latter

17  of which would be included in separate Incident Files.  Under the system established and

18  maintained by DKM, all of this information was forwarded to James FitzSimons, the

19  Secretary and General Counsel of DKM.  Decisions regarding any particular fire claim

20  were made by Mr. FitzSimons in his capacity as Secretary and General Counsel of DKM.

21  DKM made the ultimate decisions regarding the need, timing and scope of recall/retrofit

22  campaigns involving Norcold gas absorption refrigerators based on this fire claim history.

23  Regardless of the fire claim history of Norcold's gas absorption refrigerators, Norcold

24  had no authority to initiate a product safety recall or prosecute a retrofit campaign

25  without the express prior authority of DKM.

26      39.   The commonality of ownership, management and control of Norcold by

27  Thetford, and of Norcold and Thetford by DKM, eliminates any separation or distinction

28  between the entities such that Norcold, at all times since 1997, was and is the alter-ego of

1  Thetford, and Norcold and Thetford were and are the alter-egos of DKM, and for that

2  reason, treating Norcold, Thetford and DKM as independent and distinct entities would

3  be unfair and prejudicial to Plaintiffs.  Further, the close, continuous and direct business

4  relationship between DKM, Thetford and Norcold - including, but not limited to, DKM's

5  close participatory relationship with the design, manufacture, marketing and distribution

6  of Norcold's gas absorption refrigerators; DKM's control over and use of both DKM and

7  Thetford tradenames and/or trademarks in the marketing of Norcold's products;  and the

8  direct financial benefit received by DKM through the sale of Norcold's products –

9  establishes sufficient nexus between DKM and Norcold to render DKM liable for placing

10  Norcold's defective products into the stream of commerce.

11      40.    Plaintiffs are ignorant of the true names and capacities of Defendants sued

12  herein as DOES 1 to 50, inclusive, and therefore sue said defendants by such fictitious

13  names. Plaintiffs will amend this Complaint to allege the true names and capacities of

14  said defendants when ascertained. Plaintiffs are informed and believe, and based thereon

15  allege that each of said fictitiously named defendants acted intentionally, negligently,

16  and/or recklessly or is responsible in some manner for the occurrences herein alleged, and

17  that each of the violations of Plaintiffs' rights as herein alleged were proximately and

18  legally caused by said Defendants' actions.

19      41.    Plaintiffs are informed and believe, and based thereon allege that all of

20  Defendants identified herein, whether identified by name or by fictitious name, were and

21  are the agents, servants, and employees of each of the remaining Defendants, and that in

22  doing the things alleged herein were acting within the purpose, course and scope of said

23  agency, service, and/or employment and with the permission, consent, authorization, and

24  subsequent ratification of each of the remaining defendants.

25      42.    Plaintiffs are informed and believe, and based thereon allege that

26  Defendants agreed to, cooperated with, aided, abetted, encouraged, ratified, and/or

27  adopted the acts, actions, wrongdoing, and representations of each of the remaining

28  Defendants herein, and that in doing any act alleged herein, were acting in concert and

1   through a civil conspiracy by and among each Defendant to further the interests of each
2   Defendant individually, and all Defendants as a group.      For this reason as well, all
3   Defendants are jointly liable to the Class.

4                   IV.    FACTUAL ALLEGATIONS

5          43.    Beginning at least in 1997, and continuing thereafter, Defendants designed,
6   manufactured, assembled, marketed, sold and otherwise placed into the stream of
7   commerce gas absorption refrigerators for use in recreational vehicles and boats.

8          44.    Defendants' gas absorption refrigerators came in various sizes, including
9   six cubic feet (the "N6" Series), eight cubic feet (the "N8" Series), and twelve cubic feet
10  (the ("1200" Series).

11         45.    All of Defendants' gas absorption refrigerators share the same technology,
12  which involves a process whereby a solution of ammonia, water, sodium chromate, and
13  hydrogen gas is heated by electricity or propane until it boils (approximately 400 degrees
14  Fahrenheit), releasing ammonia gas. The gas circulates through a series of tubes at
15  approximately 450 psi.   As the ammonia gas is first condensed to liquid, and then
16  evaporated through interaction with the hydrogen gas, heat is removed from the
17  refrigerator box, causing the temperature in the box to decrease and providing the
18  refrigeration effect.  The series of tubes is referred to as a "cooling unit", and includes the
19  heat source (propane and electric), as well as a condenser, evaporator, absorber, and
20  solution tank.

21  **A.    All of Defendants' Gas Absorption Refrigerators Contain Common Design
22          and Manufacturing Defect.**

23         46.    The cooling units used on all of Defendants' N6/N8 Series refrigerators and
24  1200 Series refrigerators contain common design and/or manufacturing defects that cause
25  and/or enhance fires.  Defendants have instituted two (2) product safety recalls of its
26  N6/N8 refrigerators through the National Highway Traffic Safety Administration
27  (NHTSA) – one in 2000 (NHTSA No. 00E-031) and one in 2002 (NHTSA No. 02E-019).
28  Additionally, Defendants have instituted five (5) separate product safety recalls of its

1   1200 Series refrigerators – NHTSA No. 02E-045 (2002); NHTSA No. 08E-030 (2008);
2   NHTSA Nos. 09E-026 and 09E-027 (2009); and NHTSA No. 10E-049 (2010).  The first
3   six (6) of these recalls involved a single defect common to all of the cooling units used in
4   Defendants' gas absorption refrigerators, described by Defendants as a "low cycle fatigue
5   failure on thermal expansion [when the refrigerator is operated] in the AC mode." The
6   fatigue failure is the result of the inability of the steel tubing used by Defendants' in their
7   cooling units to withstand the fabrication and manufacturing process, and the stresses
8   placed on the tubing during normal operation of the refrigerators, namely, high
9   temperature, high pressure, and the effects of corrosion, including corrosive cooling
10  solution.  The combination of these factors causes microscopic cracks at and around the
11  "boiler tube" – the section of the cooling unit that includes the electric heat inputs, and
12  also includes the area where the boiler tube is dimpled to hold an interior "percolator
13  tube."  Microscopic cracks in the boiler tube section of the cooling unit causes highly
14  flammable cooling solution, ammonia, and hydrogen gas to leak from the cooling unit.
15  When the solution in the cooling unit is reduced by as little as twenty percent (20%), the
16  cooling unit can experience a "run-away heating event" that causes the steel tubing to
17  reach temperatures in excess of 1000 degrees Fahrenheit, resulting in fires, either by
18  ignition of the escaping flammable gases, or by ignition of the combustible unprotected
19  wood inside the refrigerator compartment.

20      47.    The fires caused by Defendants' products create serious safety risks to
21  users of Defendants' products in that the flammable gases released – particularly the
22  hydrogen - can explosively ignite and spread quickly through the refrigerator
23  compartment and into the passenger area of the recreational vehicle.  Such fires also pose
24  a serious safety risk to any person or property in the vicinity of the recreational vehicle in
25  that refrigerator fires can expand quickly outside the RV to structures, other vehicles and
26  people nearby.  This is a common defect present in all Defendants' N6/N8 Series
27  refrigerators and 1200 Series refrigerators, and carries the risk of property damage,
28  serious injury or death to individuals using their products.

COMPLAINT (CLASS ACTION)

48.    In addition to the low cycle fatigue failure modality, which was the subject of the various manufacturer initiated NHTSA recalls described above, Defendants' N6, N8, and 1200 Series refrigerators' cooling units also contain further design/manufacturing defects, including, but not limited to, a "safety fuse."  The safety fuse is a plug made of low melting point tin-bismuth alloy that is inserted into the end of a tube in the cooling unit. The safety fuse is designed to melt and "blow out" at relatively low temperatures (less than 300 degrees Fahrenheit), thereby depressurizing the cooling unit before it ruptures.  However, the safety fuse plug operates on temperature and not on pressure, making it ineffective as a pressure relief system, i.e. it does *not* prevent the cooling unit from rupturing due to high pressure.  Further, when the safety fuse "blows out" because it is exposed to heat – as in a fire - it releases the cooling solution into the enclosed space of the refrigerator compartment at over 400 p.s.i., creating a cloud of highly flammable ammonia and hydrogen gas, which is then ignited by any available ignition source.  The effect of this "safety" device – when operating as designed – is either to initiate a fire where none existed, or make a small fire much worse.  This is a common defect present in all of Defendants' N6/N8 Series refrigerators and 1200 Series refrigerators

**B.    Defendants' Continued to Produce, Market, and Sell Their Gas Absorption Refrigerators Despite Actual Knowledge of The Defects And Propensity To Cause Fires.**

49.    Since at least 2000, Defendants had actual knowledge of the existence of the above-described design and manufacturing defects.  Since at least 1999, Defendants have maintained non-public databases – including Incident Logs, warranty/return databases, and Incident Files – documenting the fire history of their gas absorption refrigerators, and therefore at all times had actual knowledge that the defects in their gas absorption refrigerators were causing millions of dollars of property damage, personal injury and at least one death to users of their product.  Notwithstanding this knowledge, Defendants never modified the design of their gas absorption cooling units, or the fabrication, manufacture or installation of the cooling units, to eliminate the defects, or

39

minimize the effects of the defects.  Defendants never stopped selling and placing the dangerously defective refrigerators into the stream of commerce until the refrigerators could be manufactured to operate safely.  Defendants never provided users of the refrigerators with adequate warnings of the risks of use of the product.  Rather, Defendants actively concealed and minimized the dangers and risks inherent in their defective products from consumers, and federal regulators at NHTSA responsible for ensuring safety on the highways, through a series of stratagems, including, but not limited to:

- Misrepresenting through written warranties provided to purchasers of Defendants' gas absorption refrigerators that the products were free from defects, when in fact Defendants knew that their products contained design defects that created a substantial risk of fire, injury and death when the product was used for its normally intended purpose.  This material fact was not disclosed to the Class, but concealed and suppressed.

- Misrepresenting the nature and number of defects inherent in the design of their gas absorption refrigerators by describing only the "low cycle fatigue failure" involving "some specific gas absorption cooling units."   In fact, the low cycle fatigue failure modality was and is the result of defective cooling unit tubing design common to all Defendants' N6, N8 and 1200 Series gas absorption refrigerators.  Defendants had actual knowledge that the defects were causing fires in RVs from 1999 through the Class Period based on their internal databases, including the Incident Log.  This material fact was not disclosed to the Class, but concealed and suppressed.

- Further, Defendants have actual knowledge, through their fire claim databases and internal testing, that the failure of their cooling units – and resulting fires - due to leaks and overheating, are not limited to low cycle fatigue failure in a single area of the boiler tubing to which all of their recall/retrofit campaigns are directed, but include leaks in other areas of the