cooling unit, including the safety fuse plug, none of which are addressed by Defendants' recall/retrofit campaign. The full extent of the defects and safety risks inherent in the design of the cooling units, and the limitations of Defendants' recall/retrofit campaigns, are material facts which were not disclosed to the Class, but instead concealed and suppressed.

- Concealing the dangerously defective safety fuse plug design.

- Establishing a field testing protocol whereby Defendants' gas absorption refrigerators alleged to be a substantial factor in causing and/or enhancing a fire are pressure tested to determine if they leak due to low cycle fatigue failure in the boiler tubing. The testing protocol arbitrarily sets the maximum pressure of the leak test to 100 p.s.i., notwithstanding the fact that the product normally operates at 450 p.s.i. The testing protocol focuses exclusively on a small section of the boiler tube, notwithstanding the fact that Defendants have actual knowledge through their own testing and warranty databases that their refrigerator cooling units leak in over forty (40) different places. The testing protocol Defendants use is intentionally designed (a) *not* to find the kind of microscopic leaks described by Defendants in their product safety recalls; and, (b) *not* to find leaks in any other part of the refrigerator cooling unit, notwithstanding Defendants' knowledge that such leaks regularly occur. The testing protocol is misleading and deceptive in that it conceals and suppresses material facts regarding the dangerous defects inherent in Defendants' products. Defendants routinely use this testing protocol as part of their risk management practices to reduce their claims exposure, and to mislead consumers, and federal regulators, into believing that Defendants' gas absorption refrigerators are not defective, or that the population of defective refrigerators is smaller than it really is.

- Conducting incomplete and limited manufacturer-initiated recall and retrofit campaigns. Notwithstanding the fact that Defendants had actual knowledge that their N6, N8 and 1200 Series gas absorption refrigerators all shared the same common design defects and safety risks, and continued to cause fires, Defendants excluded all N6 and N8 Series refrigerators from any recall or retrofit campaign, except for a small population manufactured between May and October, 1999. By excluding N6 and N8 Series refrigerators from any recall/retrofit campaign, Defendants suppressed material facts regarding the existence of defects in those refrigerators, and the safety risks involved in the use of the product, from all owners of those models. This concealment of material facts misled owners of N6 and N8 Series refrigerators into believing that their refrigerators did not contain dangerous product safety defects, and were safe to use for their intended purpose. In fact, the N6 and N8 Series refrigerators shared the same safety defects and risks as the 1200 Series, and were causing fires in RVs in the same way as Defendants' 1200 Series refrigerators. Defendants also used this suppression of material facts to mislead consumers and federal regulators regarding the true nature and scope of the product safety defects in their gas absorption refrigerators, i.e. that the existence of defects and safety risks was more limited than it really was.

- Conducting repeated manufacturer-initiated and controlled retrofit campaigns to install various devices onto Defendants' gas absorption refrigerators that were represented to "fix" the defects, while concealing the material facts that the retrofits were ineffective to render the refrigerators safe to use. In truth the retrofit devices – variously described as an algorithm, a thermal safety switch, or a high temperature thermocouple – did not and do not address the defects at all, but only seek to counter the propensity of the defects to cause fires. The retrofit devices also did not

42

1    and do not work to prevent Defendants' products from causing and/or

2    enhancing fires. Defendants' gas absorption refrigerators continue to cause

3    fires, notwithstanding being retrofitted by Defendants.   Defendants, and

4    each of them, have actual knowledge that their retrofit campaigns have

5    been ineffective to render their gas absorption refrigerators safe to use, but

6    have suppressed and concealed that fact from Plaintiffs, all members of the

7    Class, and the federal regulators at NHTSA.

8    •    Minimizing and misleading both the public and federal regulators regarding

9    the true nature and scope of the defects in Defendants' gas absorption

10   refrigerators.   Defendants have been placing dangerously defective gas

11   absorption refrigerators into the stream of commerce since at least 1997.

12   During that time, they have received actual notice of over 2,000 fires

13   involving their product, which they have not only kept individual detailed

14   records of through their Incident Log, but which they have routinely

15   compiled and analyzed on a yearly basis.   While Defendants have

16   continued to sell their defective products during this time, they have never

17   fixed the product so that it would not catch on fire. In fact, Defendants

18   continue to receive new fire claims involving their gas absorption

19   refrigerators at the rate of 1 to 2 per day, 7 days per week, 365 days per

20   year. Defendants have *never* provided consumers with any information

21   regarding the fire claim history of the product, or all of the risks inherent in

22   the use of the product.   Defendants have *never* disclosed to federal

23   regulators the true fire claim history of their product, or the several defects

24   involved in their product. Rather, Defendants have actively concealed the

25   safety risks associated with use of their products.

26   •    Intentionally limiting the number of gas absorption refrigerators subject to

27   some of their product safety recalls, despite having actual knowledge that

28   gas absorption refrigerators not subject to the recalls were also defective

and had a propensity to cause deadly fires. In addition to excluding N6 and N8 Series refrigerators from recall and retrofit campaigns, described above, illustrative is the determination by Defendants to exclude 1200 Series cooling units manufactured after January 1, 2003 from any product safety recall between 2003 and 2010. The purported reason for this exclusion was Defendants' "belief" that cooling units manufactured after January 1, 2003 would not cause fires because of the inclusion of an algorithm chip in the electronic controls of the refrigerator. However, Defendants had actual knowledge by September, 2005 that the algorithm was ineffective to prevent fires in 1200 Series refrigerators, and, by 2010, had further actual knowledge that 1200 Series refrigerators equipped with the algorithm had caused at least 165 fires. Defendants never advised consumers who had algorithm-equipped refrigerators: (a) that their refrigerators had defects which created potential safety risks of fire; (b) that their refrigerators were equipped with a fail-safe device (i.e. the algorithm) that was designed to counter the safety risks inherent in the refrigerators' design; or, (c) that Defendants had determined that the algorithm was not effective to prevent fires and that the manufacturer had decided to move to a different safety device. Defendants never provided owners of algorithm-equipped refrigerators with any warning or other notice of risks in the continued use of their refrigerator until after October 7, 2010, when Defendants finally recalled all 1200 Series refrigerators they ever made.

○ Misrepresenting and misleading consumers and federal regulators regarding the efficacy of their most recent product safety recall through omissions of material fact. The ostensible purpose of the October 7, 2010 recall of 1200 Series refrigerators was to retrofit the products with another safety device to replace the algorithm and thermal safety switch which Defendants finally conceded did not work to stop the refrigerators from causing fires.

44

Defendants represented to both consumers and federal regulators that the new device was effective to render their product safe to use. In fact, the new device is itself defective in design and/or manufacture, in that, in many instances, it simply does not work. Plaintiffs are informed and believe that Defendants are on their fifth or sixth version of the new device, which has not yet proven to work reliably. Even when the new device works, it is ineffective to stop Defendants' product from causing fires, because it does not address or eliminate the design and/or manufacturing defects inherent in Defendants' products. Defendants' products continue to cause fires, even when equipped with the latest safety device. This material fact was not disclosed to the Class, but suppressed.

50. The design and manufacturing defects in Defendants' gas absorption refrigerators, Defendants' active concealment of those defects, and the inadequate and fraudulent product safety recall/retrofit campaigns conducted by Defendants, created serious and unreasonable safety risks to consumers and users of Defendants' products, *i.e.* the risk of property damage, injury and death by fire. These safety risks were and are material to a reasonable consumer, including Plaintiffs and the members of the Class, who own Defendants' products. Had Defendants disclosed the true nature and scope of the safety risks inherent in the use of their product in the sales and marketing material provided consumers along with the product, or with warnings prominently placed on the product, Plaintiffs, and all others similarly situated in the Class, would have been aware of it and acted differently, *i.e.* purchased a different recreational vehicle that did not contain Defendants' defective product; decided not to retain an RV with a Norcold refrigerator and/or, paid less for the recreational vehicle or boat because of the defective product or because of the cost of replacing the defective product with a non-defective product. Defendants had actual and exclusive knowledge of the exact nature and scope of the defects in their products, the fire claim history of the products, and the fact that their recall and retrofit campaigns did not address or eliminate the defects, and therefore,

45

1   at all times, had a duty to disclose the safety risks inherent in the use of their product, and

2   the inadequacies of their recall/retrofit campaigns to Plaintiffs, and to all members of the

3   Class described herein.   However, Defendants at all times actively concealed the true

4   nature and scope of the defects, safety risks, and recall/retrofit inadequacies from

5   Plaintiffs, and the members of the Class described herein.

6       51.   Reasonable consumers, acting diligently, cannot discover the defects at

7   issue.   The defective boiler tubes, safety plugs and/or other parts are not visible to the

8   user of a Norcold gas absorption refrigerator when installed in a RV as intended.

9   **C.**   **Defendants Have an Ongoing Duty to Disclose Material Facts About**
    **Dangerous Products that They Have Placed into the Stream of Commerce.**

10

11       52.   A fraudulent omission is actionable under the laws set forth herein if the

12   omission is of a fact the defendant was obliged to disclose.   Defendants here had an

13   ongoing duty to disclose all material facts regarding the defective gas absorption

14   refrigerators and their continuing dangers as Defendants: (1) had exclusive knowledge of

15   material facts not known to the plaintiff; (2) have actively concealed material facts from

16   Plaintiffs and the Class; and, (3) have made partial representations but also suppressed

17   some material facts.

18       53.   Defendants have a duty to manufacture defect-free products and an ongoing

19   duty to disclose details about known defects, hazards and unreasonable safety risks (such

20   as the fire risks here) regardless of any warranty period both truthfully and completely.

21   Due to the serious dangers involved, Defendants' duty to disclose known defects is

22   ongoing.   The refrigerators that Defendants manufactured and placed into the stream of

23   commerce have at least one common defect that poses a serious risk of fire, injury and

24   death, but they have never eliminated that defect, notwithstanding their actual knowledge

25   of alternative designs that would lessen or eliminate the risks.   On the contrary,

26   Defendants continue to market their refrigerators with representations that they are

27   reliable and defect-free knowing that their products are dangerously defective and fires

28   are still occurring.  Defendants have a duty to recall and retrofit the products so that they

can be operated safely.  While Defendants have conducted a number of product safety recalls and represented that the retrofits would render the products safe to use, they have actual knowledge that the retrofits don't work in that, *inter alia*: (a) they do not eliminate the defect that causes the risk of fire in the first place; and, (b) they are ineffective to counter the risks posed by the defects.  Defendants' products continue to cause fires even after any recall or any retrofit is installed.  These facts, however, are not disclosed to the members of the Class and instead constitute material omissions.

**D.     Material Facts About the Ongoing Fire Danger Despite Any Recalls or Retrofits Are Concealed and Suppressed by Defendants.**

54.     Defendants, and each of them, had and have actual knowledge that their N6, N8 and 1200 Series gas absorption refrigerators contain defects which cause fires. As part of their manufacturer-initiated recall/retrofit campaigns, Defendants' recall notices state that the recalls and accompanying retrofits "seek to minimize the risk of injury or death due to fire". However, Defendants, and each of them, wholly omit, suppress and conceal from Plaintiffs and Class members the material fact that their recall and retrofit campaigns neither eliminate nor cure the inherent defects in Defendants' N6, N8 and 1200 Series refrigerators, and that their recall/retrofits therefore do not eliminate the ongoing risk of fire, damage, injury and death to users of their products. To the contrary, Defendants, and each of them, have actual knowledge that their recall/retrofit campaigns are ineffective to render their products safe to use, and that Defendants' N6, N8 and 1200 Series refrigerators continue to cause fires even after being recalled and retrofitted. These material omissions act as a misrepresentation in that Defendants' recall notices communicate and convey a false sense of safety to consumers, and a belief that if the product is retrofitted, it is safe to use. These omissions result in consumers unknowingly continuing to use a dangerously defective product, thereby exposing themselves, and all others around them, to the risk of property damage, serious injury and death.

55.     Despite knowledge of the defects and fire risks, Defendants continue to this day to    market    their    gas    absorption    refrigerators    on    the

1   www.thetford.com/HOME/PRODUCTS/Norcold website, and other materials, through

2   such terms "superior cooling units for superior performance," "quality, integrity and

3   reliability are built into each unit," "well-designed," and "superior cooling unit for

4   exceptional performance and durability" without mention of the defects and fire risks.

5   Due to the omissions, these statements, therefore, were misleading.

6       56.    Thus, common omissions of material fact have been made to the entire

7   Class by Defendants during the Class Period. Those Class members who never received

8   a recall notice were not informed of the ongoing danger inherent in continued use of their

9   Norcold gas absorption refrigerator. Those Class members who received a recall notice

10   likewise were never informed of the ongoing danger inherent in continued use of their

11   Norcold gas absorption refrigerator, regardless of whether their unit was retrofitted.

12       57.    Had Defendants not concealed the material facts described above, which

13   implicate safety concerns, Plaintiffs and the Class would have been aware of those facts,

14   acted differently and not been injured and damaged.

15       58.    As a result of Defendants' concealment and other actions outlined above,

16   Plaintiffs and the members of the Class that owned and/or own Defendants' gas

17   absorption refrigerators have been misled by Defendants' omissions into purchasing,

18   retaining and/or using the refrigerators, believing them to be safe for their intended

19   purpose. Plaintiffs and the members of the Class have further been misled by

20   Defendants' omissions into believing that their refrigerators do not contain dangerous

21   defects or potential risks or, if the refrigerators were part of a product safety recall by

22   Defendants, that any defects or potential safety risks have been eliminated by

23   Defendants' retrofit campaigns. In fact, Defendants' gas absorption refrigerators have

24   never been, and are not, safe for their intended purpose in that Defendants have never

25   eliminated the design and manufacturing defects which cause their products to ignite

26   fires. Plaintiffs reasonably relied upon Defendants' conduct described herein.

27   Defendants made material omissions regarding the defects, dangers and hazards

28   associated with the gas absorption refrigerators, information solely within Defendants'

1   control, rendering it impossible for Plaintiffs and the members of the Class to know the

2   hazards associated with the gas absorption refrigerators they purchased.   As a result,

3   Plaintiffs and the members of the Class who own Defendants' gas absorption

4   refrigerators continue, unknowingly, to be put at risk of damage, injury and death through

5   the use of Defendants' defective gas absorption refrigerators.

6   **E.    Defendants' Recalls Cause Further Injury To Consumers By Destroying**

7       **Their Refrigerators Before A Fire Is Ignited.**

8       59.    Defendants did not initiate their recalls of N6, N8 and 1200 Series

9   refrigerators to eliminate the defects in said products that cause and/or enhance fires,

10   therefore rendering the products safe to use,.   Rather, the Defendants, and each of them,

11   initiated product safety recalls to conceal and mask the true nature and extent of the

12   defects and dangers involved in the use of their products, and to mislead consumers and

13   federal regulators into the belief that Defendants' recalls were both comprehensive and

14   effective when they were not.

15       60.    In September 2005, Defendants began to install a Thermal Safety Switch

16   (TSS) on all new Norcold 1200 Series refrigerators.   The TSS was a metal sleeve

17   installed toward the base of the refrigerator chimney/flue, with a thermal sensor designed

18   to cut all power to the refrigerator in the event of excessive heat being detected in the

19   refrigerator cabinet.   Excess heat was a sign that the cooling unit was defective,

20   overheating and likely to ignite a fire.   Defendants did not begin to offer the TSS to

21   consumers through product safety retrofit campaigns until March 2008.   Defendants

22   never offered the TSS to owners of N6 and N8 Series refrigerators, notwithstanding the

23   fact that those products shared the same defects and safety risks as the 1200 Series

24   refrigerators.

25       61.    Beginning with the October 2010 product recall, Defendants began to

26   replace the TSS with a new device – the High Temperature Sensor ("HTS").   Unlike the

27   TSS – which measured heat inside the refrigerator cabinet – the HTS was designed to be

28   attached directly to, and to measure the temperature of, the refrigerator cooling unit boiler

1  tube, i.e. the tube that is heated with either the 110 VAC heaters or propane burner.  The
2  HTS was designed to measure and understand the boiler temperature, and if the module
3  sensed high temperature from the boiler tube, to cut off electric power to the refrigerator
4  before the cooling unit could overheat and cause a fire. Defendants never offered the TSS
5  to owners of N6 and N8 Series refrigerators, notwithstanding the fact that those products
6  shared the same defects and safety risks as the 1200 Series refrigerators.

7       62.    Neither of the above-mentioned retrofits worked to eliminate the defects
8  and inherent safety risks in Defendants' refrigerators.  As a result, common defects and
9  risk of dangerous fires still remain in N6, N8 and 1200 series refrigerators.  For example,
10  neither of the retrofits have dealt with – much less eliminated – the propensity of the
11  cooling units to leak cooling solution and flammable gases, which cause the cooling units
12  to overheat and cause fires.  Neither of the retrofits has been able to control – much less
13  eliminate – the excessive temperatures leaking cooling units achieve, which lead to fires.
14  Neither of the retrofits has addressed the defective design of the safety fuse plug common
15  to all of Defendants' products.  Finally, neither retrofit did anything to protect the
16  combustibles inside the refrigerator compartment – such as the bare wood of the
17  compartment itself – from the excessive heat and/or fire resulting from a malfunctioning
18  cooling unit.  Upon information and belief, every new gas absorption refrigerator sold by
19  Defendants contains the same design and/or manufacturing defects as described above,
20  with the sole exception that the new refrigerators are equipped with the Thermocouple
21  safety device.  These facts have not been disclosed to members of the Class.

22       63.    With both of the above-mentioned retrofits, once the fail-safe devices
23  "trip," the electric power to the refrigerator is shut down, and there is no alternative but to
24  replace the cooling unit or get a new refrigerator, since once the module is tripped the
25  refrigerator can no longer operate.  Thus, Defendants' retrofits do not "fix" the defects
26  inherent in the product but simply mask the defects by destroying a malfunctioning
27  cooling unit and refrigerator, presumably before it destroys a consumer's recreational
28  vehicle, or worse, causes a devastating fire.    Defendants have and continue to

50

1   intentionally conceal the operation and effect of the TSS and HTS from consumers,

2   including Plaintiffs and members of the Class described herein.

3       64.    In 2000, and again in 2002, Defendants issued a recall for a limited

4   population of N6 and N8 Series refrigerators, which were manufactured between May

5   and October, 1999.  The recall has never been expanded to the entire population of N6

6   and N8 Series refrigerators.  Norcold N6 and N8 Series refrigerators that have been

7   manufactured since 2000 are constructed the same way, have the same problems with the

8   boiler tubing and overheating that the 1200 series units have,  continue to pose the risk of

9   catching on fire, and have continued from 2000 through the Class Period to cause fires.

10  Despite this, Defendants have never attempted to address this problem through a recall or

11  otherwise.

12      65.    Defendants' above-described concealment of material facts regarding their

13  gas absorption refrigerators and the ineffective, misleading and fraudulent recall and

14  retrofit campaigns Defendants have initiated, have injured and harmed, and continue to

15  harm Class members in *inter alia*, the following ways.  *First*, by failing to disclose

16  complete and accurate information regarding the nature and scope of the design and

17  manufacturing defects in their product, Defendants have misled, and continue to mislead

18  consumers into the belief that Defendants' products are safe to use for their intended

19  purpose, when in fact said products constitute a serious fire hazard.  *Second*, Defendants'

20  limited, misleading and ineffective recall and retrofit campaigns have created, and

21  continue to create, the false impression with consumers that (1) if they own a N6 or N8

22  Series refrigerator, it is not defective and is safe to use, when in fact the N6 and N8 Series

23  contain the same common defects and safety risks as the 1200 Series;  and, (2) if they

24  own a 1200 Series refrigerator and participate in the recall campaigns, their gas

25  absorption refrigerators will be rendered safe to use, when in fact the retrofits used by

26  Defendants are ineffective to prevent their products from causing fires; the defects

27  inherent in the refrigerators will cause fires whether retrofitted or not; and, 1200 Series

28  refrigerators have and continue to leak, overheat and cause fires, notwithstanding being

51

equipped with the latest retrofit. *Third*, Defendants have failed, and continue to fail to disclose to consumers that the retrofit campaigns are not only ineffective in stopping fires, but that the devices installed through said campaigns actually operate to destroy consumers' refrigerators, requiring them to purchase a replacement refrigerator. *Fourth*, Defendants have actively concealed and failed to disclose material facts regarding the existence and scope of warranty protection available to consumers regarding Defendants' products, and deny warranty coverage to consumers, forcing consumers to incur the entire cost of repairing or replacing Defendants' defective products. If warranty coverage is denied, consumers in the Class are forced to incur the entire cost of repairing or replacing Defendants' defective products. Alternatively, if the refrigerator is replaced under warranty, the consumer is harmed because he or she receives another of Defendants' gas absorption refrigerators with the same defects and risks of fire as the unit replaced. *Fifth*, whether the refrigerator is replaced, or subject to Defendants' retrofit campaign, consumers are forced to incur the incidental costs, including costs to deliver their vehicles to dealers and RV repair shops, and thereby incur further damages and expenses for loss of use of the vehicles/boats while the replacement/retrofit is done. Many consumers have had to incur these costs and expenses on more than one occasion due to the multiple and ineffective recall campaigns. Finally, due to Defendants concealment of material facts, all Class members' own property of diminished value. From the date the true facts regarding the dangerous and continuing safety hazards inherent in all Defendants' gas absorption refrigerators is disclosed, the units have diminished value in the marketplace. All of these costs and expenses to consumers are the result of Defendants placing dangerously defective products into the stream of commerce in the first place, and thereafter failing to effectively recall and retrofit the products so that they are safe for their intended use.

66. Defendants' conduct, as outlined herein, is unfair, misleading and deceptive. Consumers are induced into believing that Defendants' products are not defective, or that any defects have been corrected through the product safety recalls. In

52

1    reality, Defendants are doing nothing to correct the defects and only installing a retrofit

2    that attempts to eliminate the propensity to cause fires by destroying the refrigerator

3    entirely.

4         67.    Rather than design and manufacture a product that is safe to use,

5    Defendants are in fact turning their design and manufacturing defects into a profit

6    generating mechanism.   If the defects in Defendants' refrigerator cause a fire that

7    destroys the product, Defendants make money selling the consumer a new refrigerator.  If

8    a consumer's refrigerator is destroyed because of the devices retrofitted by Defendants

9    through their recall campaigns, the effect is the same – Defendants make money selling

10   another refrigerator.   In either event, the consumer is damaged by being forced to pay

11   some or all of the cost of replacing Defendants' defective product.   Further, in those

12   instances where Plaintiffs and members of the Class have purchased another of

13   Defendants' refrigerators, Defendants have, and continue, to profit from their own

14   wrongful conduct.

15        68.    In all scenarios, Plaintiffs and Class members have not received the value

16   for which they bargained when they purchased Defendants' product.

17        **V.    ACCRUAL OF CLAIMS AND EQUITABLE TOLLING**

18        69.    Since at least 1999, Defendants, and each of them, have knowingly sold gas

19   absorption refrigerators that were defectively designed, would fail prematurely, and were

20   not suitable for their intended use.   At all relevant times, Defendants also knew that the

21   design defects in their gas absorption refrigerators created and constituted a serious safety

22   and fire hazard, and that their products were in fact causing fires in recreational vehicles

23   on almost a daily basis for more than a decade, including during the Class Period and

24   continuing through the present time.   Further, since at least 2000 and at all times

25   extending through the Class Period, Defendants knew that the design defects and safety

26   hazards in their gas absorption refrigerators could be substantially decreased, if not

27   totally eliminated, by the adoption of alternate designs readily available in the market.

28

COMPLAINT (CLASS ACTION)

70.     Notwithstanding Defendants' knowledge of the design defects and inherent safety risks in their gas absorption refrigerators, and their knowledge of alternate designs to eliminate the defects and safety hazards, at all times since at least 2000 and continuing through the Class Period Defendants failed and refused to alter their gas absorption refrigerator design, and instead engaged in a continuous pattern of deception, suppression and concealment of material facts, designed to mislead Plaintiffs and Class Members into believing that the Norcold gas absorption refrigerators they owned were safe. Defendants' manufacturer-initiated NHTSA recalls between 2000 and 2010 were part of the concealment and deception.  Six (6) of the seven (7) recalls initiated during this time were limited to a small population of units, notwithstanding the fact that the entire population of refrigerators shared common defects and serious safety risks to consumers. All seven (7) recalls involved retrofit campaigns that neither addressed the inherent defects in Defendants' refrigerators, nor rendered the refrigerators safe to use. Defendants, and each of them, knew that their recall/retrofit campaigns were neither comprehensive nor effective, but concealed this fact from owners of their product. Defendants' continuing concealment misled consumers in at least two ways.  First, if a consumer's refrigerator was not in a recall population, the consumer was necessarily misled into believing that the refrigerator did not contain defects and safety risks, and it was therefore safe to use.  Second, if a consumer's refrigerator was subject to one or more of Defendants' recall/retrofit campaigns, the consumer was misled into believing that the retrofit proposed by Defendants was effective to render their refrigerator safe to use.  In that the defects and safety risks to users of Defendants' refrigerators manifested themselves over time, and were not therefore readily apparent to the reasonable consumer, there was no way for consumers, including Plaintiffs and Class members, to discover the defects and safety risks of Defendants' products except from Defendants themselves.  Rather than provide consumers with complete and accurate information based on their exclusive and superior knowledge of the performance of their products – particularly the fire claim history of the N6, N8 and 1200 Series refrigerators -

54

Defendants, and each of them, engaged in a continuing and consistent pattern and practice of deception and concealment, up to and through the Class Period, to mislead consumers into believing Defendants' products were defect-free and safe to use. As a result, consumers had no knowledge of the true nature and extent of the safety risks involved in continuing to use Defendants' products. By such actions and omissions of material fact, Defendants, and each of them, affirmatively concealed Plaintiff's causes of action and the claims of the members of the Class.

71.     Defendants had a duty to disclose material facts to Plaintiffs and the Class regarding the ongoing dangers of Norcold gas absorption refrigerators, despite any retrofits, at all times before and during the Class Period. Such disclosures should have been provided to Plaintiffs and each Class member in the state in which they reside. Each day in which Defendants did not do this constitutes an actionable offence in the state in which the Plaintiff and Class member resides. Defendants' failure to disclose all material facts to Plaintiffs and the Class prevented Plaintiffs and the Class from being able to discover the truth about the dangerous products, despite reasonable diligence, and to take further steps to protect themselves, their property and to assert their rights. As such, Plaintiffs' and each Class members' claims based on Defendants omissions accrue during the Class Period.

72.     The common omissions made by Defendants represent affirmative acts that were intended to prevent, and did in fact prevent Plaintiffs and members of the Class from discovering their potential claims. Because of the nature of concealment and the testing needed to discover the inherent defects in Defendants gas absorption refrigerators, Plaintiffs and members of the Class could not, even with the exercise of due diligence, have independently discovered their cause of action. Defendants exclusively possessed this information.

73.     To this day, Defendants have continued this concealment and suppression by failing to inform the public about the true nature and scope of the defects and safety risks inherent in the use of their gas absorption refrigerators.

74.     Each Plaintiff and each Class member had a right to receive a full and complete disclosure from Defendants in their state of residence, on each day during the Class Period, that: (1) the Norcold gas absorption they owned or otherwise possessed continued to present dangerous risks of fire despite any retrofit; (2) if there was an incident and the retrofit mechanisms was triggered, the result would be a complete shutdown of the refrigerator rendering it worthless and in need of complete replacement. Defendants' failure to do this on each day during the Class Period was a separate actionable offence.

75.     Due to Defendants' ongoing and continuous concealment and deception, even extending through the last recall and retrofit, the truth about the continuing fire risk was not disclosed and no reasonable consumer, including Plaintiffs could have discovered the factual knowledge to assert these claims sooner.

76.     Plaintiffs' claims are timely.  At all times and dates within the Class Period, Defendants had a duty to disclose the material facts discussed herein, including the fact that despite any recalls and retrofits to the present day, Defendants series N6, N8 and 1200 series gas absorption refrigerators continue to have inherently dangerous design defects which present the ongoing risk of fire, facts exclusively within Defendants knowledge and which Plaintiffs and Class members could not know about and discover despite reasonable diligence.  Defendants had a duty to disclose these material facts to Plaintiffs and the Class within the limitations period but failed to.  Defendants' failure has caused Plaintiff and the Class injury and loss.  Had Plaintiffs and the Class been provided all material facts regarding the gas absorption refrigerator's inherent defects, risks and safety hazards that Defendants exclusively possessed but omitted, withheld and concealed from Plaintiffs and the Class, they would have been aware of the safety concerns present and acted differently, including but not limited to not purchasing (or retaining) a product equipped with a Norcold refrigerator containing the latent defects described within.  As a result of Defendants' conduct, described herein, Plaintiffs and all Class members have been injured, incurred loss-of-money, and been damaged in a similar

56

1   manner, in an amount which will be established at trial according to proof.  In addition,

2   among other things, due to the foregoing, Plaintiffs and the Class lost the benefit of their

3   bargain as they overpaid for their RV's containing the defective Norcold refrigerator;

4   their RV's containing the Norcold refrigerator have a diminished value, and the RV's

5   containing the Norcold refrigerator have a loss of usefulness, all in amounts to be proven

6   at trial.

7        77.    In addition, based on this conduct and the allegations herein, Defendants

8   are estopped from relying on any statute of limitations or other time-related defense in

9   this action.  Defendants affirmatively misrepresented and actively concealed the true

10  nature, character, and quality of the gas absorption refrigerators and, for the reasons

11  described herein, were under a continuous duty to disclose to Plaintiffs and the Class the

12  facts they omitted and concealed.  Plaintiffs and the members of the Class reasonably

13  relied upon Defendants' misrepresentations (by omission) and active concealment and

14  hence, could not bring the claims asserted herein sooner.  As a result of Defendants'

15  fraudulent concealment, equity requires that the statute of limitations on Plaintiffs' and

16  the putative class members' claims be tolled.

17            **VI.    CLASS ACTION ALLEGATIONS**

18       78.    Plaintiffs bring this action on behalf of themselves and as a class action,

19  pursuant to the applicable rules of civil procedure, on behalf of the "Class" consisting

20  defined as:

21         All persons, who during the Class Period, purchased and/or owned a
           Norcold N6, N8 and/or 1200 Series gas absorption refrigerator in the states
22         of California, Florida, Texas, New York, Pennsylvania, Maryland,
           Tennessee, Mississippi, Oregon, North Carolina, Washington, Illinois and
23         Arizona (the "Class").

24  Within the Class are the following Sub-Classes:

25                    The California State Sub-Class

26         All persons, who during the Class Period, purchased and/or owned a
           Norcold N6, N8 and/or 1200 Series gas absorption refrigerator in California
27         (the "California State Sub-Class").

28

COMPLAINT (CLASS ACTION)

## The Florida State Sub-Class

All persons, who during the Class Period, purchased and/or owned a Norcold N6, N8 and/or 1200 Series gas absorption refrigerator in Florida (the "Florida State Sub-Class").

## The Texas State Sub-Class

All persons, who during the Class Period, purchased and/or owned a Norcold N6, N8 and/or 1200 Series gas absorption refrigerator in Texas (the "Texas State Sub-Class").

## The New York State Sub-Class

All persons, who during the Class Period, purchased and/or owned a Norcold N6, N8 and/or 1200 Series gas absorption refrigerator in New York (the "New York State Sub-Class").

## The Pennsylvania State Sub-Class

All persons, who during the Class Period, purchased and/or owned a Norcold N6, N8 and/or 1200 Series gas absorption refrigerator in Pennsylvania (the "Pennsylvania State Sub-Class").

## The Maryland State Sub-Class

All persons, who during the Class Period, purchased and/or owned a Norcold N6, N8 and/or 1200 Series gas absorption refrigerator in Maryland (the "Maryland State Sub-Class").

## The Tennessee State Sub-Class

All persons, who during the Class Period, purchased and/or owned a Norcold N6, N8 and/or 1200 Series gas absorption refrigerator in Tennessee (the "Tennessee State Sub-Class").

## The Mississippi State Sub-Class

All persons, who during the Class Period, purchased and/or owned a Norcold N6, N8 and/or 1200 Series gas absorption refrigerator in Mississippi (the "Mississippi State Sub-Class").

## The Oregon State Sub-Class

All persons, who during the Class Period, purchased and/or owned a Norcold N6, N8 and/or 1200 Series gas absorption refrigerator in Oregon (the "Oregon State Sub-Class").

///

///

COMPLAINT (CLASS ACTION)

<u>The North Carolina State Sub-Class</u>

All persons, who during the Class Period, purchased and/or owned a Norcold N6, N8 and/or 1200 Series gas absorption refrigerator in North Carolina (the "North Carolina State Sub-Class").

<u>The Washington State Sub-Class</u>

All persons, who during the Class Period, purchased and/or owned a Norcold N6, N8 and/or 1200 Series gas absorption refrigerator in Washington (the "Washington State Sub-Class").

<u>The Illinois State Sub-Class</u>

All persons, who during the Class Period, purchased and/or owned a Norcold N6, N8 and/or 1200 Series gas absorption refrigerator in Illinois (the "Illinois State Sub-Class").

<u>The Arizona State Sub-Class</u>

All persons, who during the Class Period, purchased and/or owned a Norcold N6, N8 and/or 1200 Series gas absorption refrigerator in Arizona (the "Arizona State Sub-Class").

The "Class Period" for the Class and any Sub-Class dates back the length of the longest applicable statute of limitations for any claim asserted on behalf of that Class or Sub-Class from the date this action was commenced and continues through the present and the date of judgment. Excluded from the classes are: (a) any officers, directors or employees of Defendants; (b) any judge assigned to hear this case (or spouse or family member of any assigned judge); (c) any employee of the Court; (d) any juror selected to hear this case; and, (e) anyone who has suffered personal injury.

79.    All requirements for class certification in Fed. R. Civ. P. 23(a), 23(b)(1), 23(b)(2) and/or 23(b)(3) (or any other applicable state or federal rule of civil procedure) are satisfied with respect to the Class and each of the Sub-Classes.

80.    Numerosity of the Class. Members of the Class and each of the State Sub-Classes are so numerous that their individual joinder herein is impracticable. The precise number of members of the Class and each of the Sub-Classes and their addresses are presently unknown to Plaintiffs. Plaintiffs are informed and believe that Defendants have manufactured and sold over 200,000 N6, N8, and 1200 Series gas absorption refrigerators in the United States since 1996, of which over 10,000 are currently owned by

59

1    individuals/entities located in the State of California alone.  Plaintiffs therefore allege that

2    the total number of members in each of the State Sub-Classes is well in excess of 500

3    persons and/or entities who would fall within the proposed class definitions.

4        81.    Ascertainable Class.    The community of interest among these class

5    members in the litigation is well defined and the proposed classes are ascertainable from

6    objective criteria.  If necessary to preserve the case as a class action, the court itself can

7    redefine the Class and any Sub-Class.

8        82.    Common Questions of Fact and Law Exist and Predominate over Individual

9    Issues.  There is a well-defined community of interest in the questions of law and fact

10   involved affecting the parties to be represented.  These common questions of law and fact

11   exist as to all members of the Class and predominate over the questions affecting only

12   individual members of the Class.  These common legal and factual questions include

13   without limitation:

14              a.    Whether Defendants engaged in the conduct as alleged herein;

15              b.    Whether the N6, N8 and 1200 series gas absorption refrigerators that

16                    Defendants manufactured and placed into the stream of commerce

17                    have a common defect;

18              c.    Whether Defendants made material omissions about the N6, N8 and

19                    1200  series  gas  absorption  refrigerators  that  Defendants

20                    manufactured and placed into the stream of commerce;

21              d.    Whether Defendants practices violate applicable law;

22              e.    Whether Plaintiffs and the other members of the Class are entitled to

23                    actual, statutory, or other forms of damages, and other monetary

24                    relief;

25              f.    Whether Plaintiffs and other members of the Class are entitled to

26                    equitable relief, including but not limited to injunctive relief and

27                    restitution; and,

28

COMPLAINT (CLASS ACTION)

g.     Whether Defendants' concealment of material facts tolls the statute of limitations for class members.

83.    Defendants have engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the other members of the Class. Similar or identical statutory and common law violations, business practices, and injuries are involved as to all members in the Class and each State Sub-Class. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

84.    Plaintiffs are members of and present claims that are typical of the claims of members of the Class.  Plaintiffs each owed one of the Norcold gas absorption refrigerators at issue during the Class Period.  Plaintiffs and all Class members each sustained damages arising from Defendants' wrongful conduct, as alleged more fully herein.  The same material facts that Defendants withheld from the Plaintiffs were withheld from the other members of the Class.  The test for materiality is an objective test subject to class wide proof.

85.    All members of the Class have been the subject of Defendants' unfair and unlawful business practices as described herein.  The relief sought is common, unitary, and class-wide in nature.

86.    Adequacy of Representation.  Plaintiffs will fairly and adequately represent and protect the interest of the members of the Class.  Plaintiffs share a common interest with all Plaintiff class members, with respect to the conduct of Defendants herein, and redress of same.  Plaintiffs have suffered an injury-in-fact as a result of the conduct of Defendants, as alleged herein.  Plaintiffs have retained counsel who are competent and experienced in the prosecution of complex consumer fraud, mass tort and class actions. Plaintiffs and their counsel intend to prosecute this action vigorously and faithfully for the benefit the State Sub-Class members.  Plaintiffs have no interests contrary to the class members, and will fairly and adequately protect the interests of the State Sub-Classes.

COMPLAINT (CLASS ACTION)

87.    Community of Interest. The proposed State Sub-Classes have a well defined community of interest in the questions of fact and law to be litigated. The common questions of law and fact are predominant with respect to the liability issues, relief issues and anticipated affirmative defenses. The Named Plaintiffs have claims typical of the Class. Without limitation, as a result of Defendants' conduct alleged herein, Plaintiffs were: (a) injured; (b) deprived of the value of the goods that they bargained for; and, (c) sustained pecuniary loss in an ascertainable amount to be proven at the time of trial.

88.    Superiority of Class Adjudication. The certification of a class in this action is superior to the litigation of a multitude of cases by members of the putative classes. Class adjudication will conserve judicial resources and will avoid the possibility of inconsistent rulings. Moreover, there are class members who are unlikely to join or bring an action due to, among other reasons, their reluctance to sue Defendants and/or their inability to afford a separate action. Equity dictates that all persons who stand to benefit from the relief sought herein should be subject to the lawsuit and hence subject to an order spreading the costs of the litigation among the class members in relationship to the benefits received. Even if the members of the classes themselves could afford individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Further, a class action is superior and necessary to protect the Class' rights as the recalls, either voluntary or through any agency, such as NHTSA, have been ineffective and continue not to be effective. Fire risk remains even after any recalls. Further, any recalls, either voluntary or through any agency, cannot provide the remedies and relief sought in this action.

COMPLAINT (CLASS ACTION)

89.     In the alternative, the above-defined Class and each State Sub-Classes may be certified pursuant to Fed. R. Civ. P. 23(b)(1) and (b)(2) because:

a.     The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual class members' claims which would establish incompatible standards of conduct for Defendant;

b.     The prosecution of separate actions by individual members of the classes would create a risk of adjudications which would as a practical matter be dispositive of the interests of other members of the classes who are not parties to the adjudications, or which would substantially impair or impede the ability of other class members to protect their interests; and,

c.     Defendants have acted or refused to act on grounds generally applicable to the classes, thereby making appropriate final and injunctive relief with respect to the Class and each State Sub-Classes.

## VII.   INTENT

90.     Defendants each knowingly and intentionally committed the acts, concealments and material omissions alleged herein.   All actions and omissions by Defendants were willful and not the result of mistake or inadvertence.   At all times relevant, Defendants were aware of the defective nature of their N6, N8 and 1200 series gas absorption refrigerators. Despite this, Defendants manufactured, marketed and sold, as fit for their intended purpose, their defective gas absorption refrigerators.   Defendants each knowingly and intentionally undertook and directed that their respective business undertake the illicit practices and conceal the material facts which are the subject of this suit.

/ / /

/ / /

COMPLAINT (CLASS ACTION)

## FIRST CAUSE OF ACTION

### Violation of Consumer Protection Statutes
### (On Behalf of California, Florida, North Carolina, New York, Maryland, Texas, Pennsylvania, Oregon, Washington, Arizona, and Illinois State Sub-Classes)

91.   Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as though fully stated herein.

92.   Plaintiffs bring this action on behalf of themselves and on behalf of the California, Florida, North Carolina, New York, Maryland, Texas, Pennsylvania, Oregon, Washington, Arizona, and Illinois State Sub-Classes against Defendants under the state consumer protection statutes referenced below.

93.   This claim is based on Defendants' deceptive and misleading conduct and common omissions of material fact.

94.   Each of the Plaintiffs and proposed Class members is a consumer, purchaser, or other person entitled to the protection of the consumer protection laws of the state in which they reside and purchased and/or owned one or more of Defendants' N6, N8 or 1200 Series gas absorption refrigerators, either as separate products, or as installed in recreational vehicles, for personal, family, or household purposes.

95.   Defendants' N6, N8 and 120 Series gas absorption refrigerators are goods, products, consumer goods, merchandise, property, and/or assets as those terms are defined under the applicable state statutes identified in Paragraphs 119 to 129 below.

96.   Each N6, N8 or 1200 Series gas absorption refrigerator owned by Class members contains an inherent defect, which is substantially certain to result in malfunction during the useful life of the product when used as reasonable anticipated and intended.

97.   By manufacturing, marketing and distributing for sale the N6, N8 and 120 Series gas absorption refrigerators, Defendants engaged in trade or commerce, the sale of goods, and/or practices affecting commerce within the meaning of the applicable state statute identified in Paragraphs 119 to 129 below.

COMPLAINT (CLASS ACTION)

98.     By failing to disclose and concealing the defective nature of the gas absorption refrigerators from Plaintiffs and prospective Class members, Defendants have engaged in deceptive, unfair, fraudulent, and misleading acts and practices in connection with consumer transactions, as Defendants' have represented that their refrigerators had characteristics and benefits that they do not have, and represented that their refrigerators were of a particular standard, quality or grade when they were of another.

99.     Defendants knew that their N6, N8 and 1200 Series gas absorption refrigerators were defectively designed, would fail prematurely, and were not suitable for their intended use. Defendants also knew that the design defects in their gas absorption refrigerators created and constituted a serious safety and fire hazard.  Further, Defendants knew that the design defects and safety hazards in their gas absorption refrigerators could be substantially decreased, if not totally eliminated, by the adoption of alternate designs readily available in the market.

100.    Notwithstanding Defendants' knowledge of the design defects and inherent safety risks in their gas absorption refrigerators, and their knowledge of alternate designs to eliminate the defects and safety hazards, Defendants failed and refused to alter their gas absorption refrigerator design, and instead engaged in a continuous pattern of deception and concealment, designed to mislead Plaintiffs and members of the Class into believing that their gas absorption refrigerators were safe, when in fact they were, and continue to be, dangerously defective.

101.    Defendants, at all times up to the filing of this Complaint, have engaged in a pattern of concealment and misrepresentation designed to mislead Plaintiffs and all members of the Class into believing that Defendants' refrigerators they owned were either free of defects, or that any defects had been fully and completely eliminated through Defendants' retrofit campaigns.  As a result of Defendants' concealment and misrepresentation, Plaintiffs did not know, and could not through the exercise of reasonable diligence be expected to know, of the defects and safety risks involved in their use of Defendants' products, or of Defendants' fraudulent, unlawful and unfair conduct,

65

as outlined above, until their own gas absorption refrigerators were recalled, retrofitted and then failed.

102. Through the above-described omissions, Defendants have engaged in deceptive business practices including:

    a.    misrepresenting by omission that the gas absorption refrigerators have characteristics, uses, benefits, and qualities which they do not have;

    b.    misrepresenting by omission that the gas absorption refrigerators are of a particular standard, quality, and grade when they are not;

    c.    advertising the gas absorption refrigerators with the intent not to sell them as advertised;

    d.    misrepresenting by omission that a transaction involving the gas absorption refrigerators confers or involves rights, remedies, and obligations which it does not; and,

    e.    misrepresenting by omission that the subject of a transaction involving the gas absorption refrigerators has been supplied in accordance with a previous representation when it has not.

103. Despite reasonable diligence, neither Plaintiffs, nor any reasonable consumer acting in the ordinary course of use, including Class members, could learn the facts Defendants knowingly concealed from the general public. The defective boiler tubes and safety plug are not readily apparent or visible to Class members using the refrigerators as intended in the ordinary course. The only time a fire risk becomes apparent is when it occurs. By that time, it is too late for Plaintiffs and Class members, like other reasonable consumers, to take practical steps to protect themselves and their property from fire danger.

104. Defendants' unfair and deceptive acts and/or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

COMPLAINT (CLASS ACTION)

105.   Defendants knew that their gas absorption refrigerators were defectively designed and/or manufactured, would fail prematurely, and were not fit for their intended purpose.   Despite this, Defendants marketed and sold these products to the Class for financial gain.

106.   Defendants were under an ongoing and continuous duty to Plaintiffs and the Class Members to disclose the defective nature of their refrigerators because:

      a.   Defendants were in a superior position to know the true state of facts about the safety defects in their gas absorption refrigerators;

      b.   Plaintiffs and Class members could not reasonably have been expected to learn or discover that the refrigerators had dangerous safety defects until they manifested failure; and,

      c.   Defendants knew that Plaintiffs and Class members could not reasonably have been expected to learn or discover the safety defects in the refrigerators.

107.   As described herein, Defendants have engaged in consumer-oriented conduct that was materially misleading and generally directed at the consuming public.

108.   Proof of individual reliance or individual injury on the part of absent Class members is not required to establish a basis for relief under many of the consumer protection statutes Plaintiffs seek to apply.

109.   To the extent that reliance is required for relief under any of the consumer protection statutes Plaintiffs seek to apply, it is proper to presume reliance on the part of Plaintiffs and Class members due to Defendants' omissions and concealment of material facts.   Reasonable consumers would expect to be warned by a products manufacturer of all facts regarding serious dangers, as exist here.   Defendants deliberately withheld information from the Class that severe fires could result from the use of Defendants' gas absorption refrigerators, which could cause serious bodily harm or death.   Given the severity of the consequences, which Defendants failed to disclose, the materiality of such an omission cannot be questioned.

110.   In failing to disclose the defects in their product, Defendants knowingly and intentionally concealed material facts and breached their duty not to do so.

111.   The facts concealed or not disclosed by Defendants to Plaintiffs and members of the Class are material in that reasonable consumers would have considered them to be important in deciding whether to purchase (or retain) Defendants' products or pay a lesser price.  Had Plaintiffs and the Class members known of true extent of the defective nature of Defendants' products, they would not have purchased (or retained) the products, or would have paid less for them.

112.   Plaintiffs and Class members reasonably expected that Defendants' gas absorption refrigerators would function properly and not be susceptible to the hazards described within for the life of their recreational vehicles.  That is the reasonable and objective consumer expectation for gas absorption refrigerators.

113.   Plaintiffs purchased RV's with Norcold gas absorption refrigerators with the understanding that the refrigerators would function safely as warranted and without unreasonable risk of fire when sold, that Defendants had specific information about dangerous defects in the refrigerators that affected their ability to function as warranted, and that they did not disclose that material information to Plaintiffs and the Class but instead concealed such information.  Defendants have had multiple opportunities to disclose the full truth about the defects and the continuing fire risks to Plaintiffs and the Class but have failed to do so.

114.   To the extent required, the Plaintiffs have provided Defendants pre-filing notice under each of the below listed statutes that require such notice and/or limited their claims.

115.   By letter dated December 5, 2012, Plaintiffs notified Defendants of its violations of the CLRA and demanded that Defendants provide a remedy to both them and the California State Sub-Class that fully rectifies its misconduct.  Despite provision of written notice to Defendants of the asserted violation of CLRA §1770 *et seq.* and other applicable laws, pursuant to Cal. Civ. Code §1782, and the passage of more than 30 days,

68

1  to-date Defendants have not agreed to rectify the conduct complained of, as described

2  within, and provide any relief demanded to Plaintiffs or any Class member.   Hence,

3  Plaintiffs now assert a claim for damages under the CLRA on behalf of the California

4  State Sub-Class.

5        116.   By letter dated January 23, 2013, mailed to Defendants, Plaintiffs notified

6  Defendants of its violations of the Texas Deceptive Trade Practices Act ("TDTPA") and

7  demanded that Defendants provide a remedy that rectifies its misconduct for all members

8  of the Texas State Sub-Class.  Until 60 days from January 23, 2013 passes, any claims for

9  damages should be abated.  Plaintiffs assert claims under the TDTPA at this time to

10  minimize any potential prejudice to the Texas State Sub-Class members due to the

11  potential passage of the statute of limitations.   Therefore, at this time and until March 25,

12  2013, Plaintiffs do not seek recovery of damages on behalf of the Texas State Sub-Class

13  under Tex. Bus. & Com. §§17.46 *et seq.* but only injunctive, declaratory and equitable

14  relief.  Damage claims for the Texas State Sub-Class should be abated until a reasonable

15  time (60 days) as set forth in Tex. Bus. & Com. §17.505(a), passes from the January 23,

16  2013 notice but are affirmatively asserted as of that date (March 25, 2013).

17        117.   Defendants' unlawful, unfair and fraudulent conduct, described above,

18  presents a continuing threat to Plaintiffs, the members of the Class, and to the general

19  public.  Unless enjoined, Defendants will continue to place dangerously defective gas

20  absorption refrigerators into the stream of commerce, and will continue to conceal and

21  mislead consumers regarding the inherent defects and safety risks associated with use of

22  the product.  Unless enjoined, Defendants will continue to conceal and mislead owners of

23  their gas absorption refrigerators into believing that their products are safe, or that any

24  risks have been completely eliminated through Defendants' fraudulent and ineffective

25  recall and retrofit campaigns.  Such conduct presents a continuing threat to owners of

26  Defendants' products, in that they will be unknowingly exposed to serious safety risks

27  through the continued use of Defendants' product, including the risk of property damage,

28  injury and death.  Defendants' conduct also presents a continuing risk to members of the

1   public in that the risk of property damage, injury and death by fire extends beyond the

2   owners of Defendants' products, to anyone living next door, camping in the same

3   campground, or driving on the same highway as an owner of a recreational vehicle

4   containing one of Defendants' gas absorption refrigerators.  Injunctive relief is therefore

5   appropriate and necessary to eliminate a serious safety risk to Plaintiffs, all members of

6   the California State Sub-Class, and members of the general public.

7          118.    Plaintiffs assert claims, based on the above-described conduct, on behalf of

8   the following Sub-Classes under the following statutes:

9          119.    The California State Sub-Class: Defendants' practices, as alleged, were and

10  are in violation of California's Consumer Legal Remedies Act, Cal. Civ. Code §1750 *et*

11  *seq.*

12         120.    The North Carolina State Sub-Class: Defendants' practices, as alleged,

13  were and are in violation of N.C. Gen. Stat. §§75-1.1 *et seq.*

14         121.    The Florida State Sub-Class: Defendants' practices, as alleged, were and

15  are in violation of Fla. Stat. §§501.201 *et seq.*

16         122.    The New York State Sub-Class: Defendants' practices, as alleged, were and

17  are in violation of New York's Consumer Protection from Deceptive Acts and Practices

18  statute, N.Y. Gen. Bus. Law §§349 *et seq.*

19         123.    The Maryland State Sub-Class: Defendants' practices, as alleged, were and

20  are in violation of Md. Code Ann., Com. Law §§13-101 *et seq.*

21         124.    The Texas State Sub-Class: Defendants' practices, as alleged, were and are

22  in violation of Tex. Bus. & Com. §§17.46 *et seq.*

23         125.    The Pennsylvania State Sub-Class: Defendants' practices, as alleged, were

24  and are in violation of Pa. Stat. Ann. Tit. 73 §§201-1 *et seq.*

25         126.    The Oregon State Sub-Class: Defendants' practices, as alleged, were and

26  are in violation of Or. Rev. Stat. §§646.608 *et seq.*

27         127.    The Washington State Sub-Class: Defendants' practices, as alleged, were

28  and are in violation of Wash. Rev. Code §§19.86.920 *et seq.*

COMPLAINT (CLASS ACTION)

128.   <u>The Arizona State Sub-Class</u>: Defendants' practices, as alleged, were and are in violation of Ariz. Rev. Stat. Ann. §§45-1522 *et seq.*

129.   <u>The Illinois State Sub-Class</u>: Defendants' practices, as alleged, were and are in violation of Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS §505/2 *et seq.* and Illinois Deceptive Trade Practices Act, 815 ILCS §510/2 *et seq.*

130.   In addition and/or in the alternative, all Class members assert claims against Defendants under N.Y. Gen. Bus. Law §§349 *et seq.* as the deceptive and misleading acts and omissions complained of were conducted, managed and directed by DKM in and from its offices in New York.  Defendants engaged in consumer-oriented activities as their actions caused consumers in the Class injury or harm to the public interest.  Those deceptive and unlawful acts emanated from and harmed Plaintiffs and Class members nationwide, including their state of residence. Further DKM controlled the other defendants, as described above, with regard to the matters and conduct complained of herein, in and from its offices and headquarters in New York.  N.Y. Gen. Bus. Law §§349 *et seq.* operates to protect consumers, regardless of state of residency, from persons and companies performing unlawful and misleading acts in and from New York state which emanate to and harm consumers both inside and outside of New York. Hence, all class members have common claims against DKM and the other Defendants for violation of N.Y. Gen. Bus. Law §§349 *et seq.*

131.   As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiffs and Class Members have suffered and will continue to suffer actual damages.   Plaintiffs and Class Members have been misled into purchasing and owning dangerously defective gas absorption refrigerators that cannot be used safely for their intended purpose, and which therefore need to be replaced.   Defendants, and each of them, have failed and refused, and continue to fail and refuse, to acknowledge their responsibility for placing dangerously defective products into the stream of commerce, and have further failed and refused to eliminate the defects and render their products safe to use.   Through their wrongful conduct, as described above, Defendants, and each of

71

1  them, have foisted the responsibility – and the costs – of manufacturing a safe product, or

2  rendering their defective product safe, onto the Plaintiffs and Class Members.    The

3  resulting damage and injury is common to all Plaintiffs and Class Members, and can only

4  be adequately remedied through the common, class-wide relief sought herein.

5      132.   Plaintiffs and the Class Members are entitled to legal and equitable relief

6  against Defendants, including injunctions, consequential damages, rescission, restitution,

7  attorneys' fees, costs of suit, prejudgment interest and other relief as appropriate.

8  ### SECOND CAUSE OF ACTION

9  **Breach of Express Warranty**
**(On Behalf of All Plaintiffs and the Class/Sub-Classes)**

10

11     133.   Plaintiffs hereby incorporate by reference every other paragraph of this

12  Complaint as through fully stated herein.

13     134.   Plaintiffs bring this action on behalf of themselves and on behalf of the

14  Class and the California, Florida, Texas, New York, Pennsylvania, Maryland, Tennessee,

15  Mississippi, Oregon, North Carolina, Washington, Illinois and Arizona State Sub-Classes

16  against Defendants.

17     135.   Defendants made statements of fact, which were received by Plaintiffs and

18  members of the Class.  Defendants' statements included, but were not limited to: (a) they

19  had a global reputation for excellence in the design and manufacture of gas absorption

20  refrigerators based on many years of experience that created an assurance of quality in

21  their products;  (b)   their gas absorption refrigerators were designed and manufactured to

22  meet the highest standards of reliability and performance;   (c) quality, integrity and

23  reliability were built into each unit made in America by an American-owned company;

24  (d) that the refrigerators were superior, with exceptional performance;  and, (e)  that the

25  refrigerators were the hallmark of performance and reliability by America's leading

26  manufacturer of refrigerators and freezers for RV, Marine and Truck markets.

27

28

COMPLAINT (CLASS ACTION)

136.    Defendants also provided Plaintiffs and members of the Class with written warranties and owner's manuals in which they stated and warranted that their gas absorption refrigerators were free from defects.

137.    In addition, upon information[1] and belief, Defendants also made the same statement of facts outlined above and provided the same written warranties and owner's manual mentioned above, which were received by all manufacturers of RV's (and/or their distributors/dealers and other agents) and formed the basis of the bargain in the contracts between Defendants and all manufacturers of RV's (and/or their distributors/dealers and other agents) to install/include Defendants' gas absorption refrigerators into the manufacturers RV's.

138.    Defendants knew or should have known that the gas absorption refrigerators would ultimately be used by Plaintiffs, Class members, and members of public.

139.    As the intended consumers and ultimate users of the Norcold gas absorption refrigerators, Plaintiff and the Class are third-party beneficiaries of any contracts between Defendants and the RV manufacturers (and/or their dealers/distributors/agents); from whom Plaintiffs obtained RV's containing Norcold gas absorption refrigerators. Plaintiffs and the Class, not any dealership, are the parties intended to be benefited by any such contract because they are the people actually using the refrigerators in the manner intended.

140.    Defendants' gas absorption refrigerators were defective, in that they contained design and manufacturing defects which created and/or enhanced fires, with the potential of causing serious damage, injury and/or death.

141.    Defendants have failed to deliver to Plaintiffs, members of the Class and RV manufacturers (and/or their dealers/distributors/agents) the things purchased, and have delivered a thing other than the thing purchased, and have thus breached the express warranties of sale.

142.    Defendants intentionally and deceptively withheld material facts regarding the product defects from Plaintiffs, Class members and RV manufacturers (and/or their dealers/distributors/agents).

143.    To the extent any notice is required,  notice of the alleged breach of express warranty due to defects creating fire risk have been provided to Defendants as evidenced by their Incident Log showing a widespread problem, yet Defendants continued in their failure to fix the actual problems and continued in their intentional concealment of material facts.   Other Class members cannot provide notice until a dangerous fire occurs as they still do not possess all facts to convey in any such notice due to Defendants' concealment of material facts.    In such situations, any further requirement of individual notice before pursuing such claim and remedies is unfair and/or unreasonable due to the serious dangers still present.  A Class member should not have to put themselves at continued risk of a possible fatal fire incident before being able to pursue remedies.

144.    As such, Plaintiffs notified Defendants of the breach within a reasonable time, and/or were not required to do so because affording Defendants a reasonable opportunity to cure its breach would have been futile.  Defendants were on notice of the defects contained in their gas absorption refrigerators.

145.    The defects and fire risks continue to exist yet are concealed by Defendants.

146.    By way of the foregoing, Defendants breached their express warranties to the Class and each Sub-Class.

147.    The California Sub-Class: Defendants' practices, as alleged, were and are in violation of California Commercial Code §2313.

148.    The North Carolina Sub-Class: Defendants' practices, as alleged, were and are in violation of N.C. Gen. Stat. Ann. §25-2-313.

149.    The Florida Sub-Class: Defendants' practices, as alleged, were and are in violation of Fla. Stat. Ann. §672.313.

150.    The New York Sub-Class: Defendants' practices, as alleged, were and are in violation of N.Y. U.C.C. Law §§2-313.

151. <u>The Pennsylvania Sub-Class</u>: Defendants' practices, as alleged, were and are in violation of 13 Pa. Cons. Stat. Ann. §2313.

152. <u>The Maryland Sub-Class</u>: Defendants' practices, as alleged, were and are in violation of Md. Code Ann., Com. Law §2-313.

153. <u>The Texas Sub-Class</u>: Defendants' practices, as alleged, were and are in violation of Tex. Bus. & Com. Code Ann. §2.313.

154. <u>The Mississippi Sub-Class</u>: Defendants' practices, as alleged, were and are in violation of Miss. Code. Ann. §75-2-313.

155. <u>The Tennessee Sub-Class</u>: Defendants' practices, as alleged, were and are in violation of Tenn. Code Ann. §47-2-313.

156. <u>The Washington Sub-Class</u>: Defendants' practices, as alleged, were and are in violation of Wash. Rev. Code Ann. §62A.2-313.

157. <u>The Arizona Sub-Class</u>: Defendants' practices, as alleged, were and are in violation of Ariz. Rev. Stat. Ann. §47-2313.

158. <u>The Illinois Sub-Class</u>: Defendants' practices, as alleged, were and are in violation of IL ST CH 810 §5/2-313.

159. <u>The Oregon Sub-Class</u>: Defendants' practices, as alleged, were and are in violation of Or. Rev. Stat. § 72.3130.

160. As a direct and proximate result of Defendants' breach, Plaintiffs and members of the Class have suffered, and will continue to suffer, economic damages, in an amount that will be established at trial according to proof.

161. Plaintiffs and the Class Members are entitled to legal and equitable relief against Defendants, including consequential damages, rescission, attorneys' fees, costs of suit, and other relief as appropriate.

/ / /

/ / /

/ / /

/ / /

### THIRD CAUSE OF ACTION

**Breach of Implied Warranty**
**(On Behalf of the California, Pennsylvania, Maryland, Texas,**
**Mississippi, Tennessee, and Washington State Sub-Classes)**

162.   Plaintiffs hereby incorporate by reference every other paragraph of this Complaint as through fully stated herein.

163.   Plaintiffs bring this action on behalf of themselves and on behalf of California, Pennsylvania, Maryland, Texas, Mississippi, Tennessee, and Washington State Sub-Classes against Defendants, under the implied warranty statutes of the various states outlined below.

164.   Defendants were at all relevant times the manufacturer, distributor, warrantor, and/or seller of the defective gas absorption refrigerators.  Defendants knew or had reason to know of the specific use for which their gas absorption refrigerators were purchased.

165.   At the time Defendants marketed and otherwise placed their gas absorption refrigerators into the stream of commerce, they knew that the refrigerators were going to be installed in recreational vehicles which would then be sold to consumers, including Plaintiffs and members of the Class, for personal and recreational use. Defendants also knew that consumers, including Plaintiffs and members of the Class, would have no ability or opportunity to inspect their gas absorption refrigerators for defects, but instead would rely on skill and judgment to furnish safe and reliable gas absorption refrigerators that were suitable for their particular purpose and free of dangerous defects that could start fires.

166.   To the extent required, upon information and belief, Plaintiffs and all Class members, if not in privity with Defendants, are third-party beneficiaries of the contracts entered into between the manufacturers of Plaintiffs' and Class members' RVs and/or the Norcold installing contractors, and/or agents and Defendants.

167.   To the extent required, upon information and belief, Plaintiffs and all Class members are third-party beneficiaries of the contracts entered into between Defendants

76

1   and the manufacturers of Plaintiffs' and Class members' RVs and/or the installing

2   contractors, because Plaintiffs and Class members received the direct benefit of those

3   contracts. Defendants and the manufacturers of Plaintiffs' and Class members' RVs

4   and/or the installing contractors intended for Plaintiffs and Class members to directly

5   benefit from any contracts given that the Defendants gas absorption refrigerators were to

6   be installed on Plaintiffs' and Class Members' RVs.

7        168.   Defendants were aware of the particular purpose that each Plaintiff and

8   class member had for the Norcold gas absorption refrigerators obtained – to have a safe,

9   properly working refrigeration unit in their RV that did not present a dangerous risk of

10   fire. Defendants failed to supply such gas absorption refrigerators as, as described, the

11   refrigerators present a dangerous fire risk.

12        169.   Upon information and belief, Defendants and all manufacturers of RV's

13   (and/or their distributors/dealers and other agents) have contracts which contain the

14   implied warranty of merchantability where any and all Norcold gas absorption

15   refrigerators supplied by Defendants were to be fit for ordinary purposes, safe, not

16   dangerous and susceptible to fire.

17        170.   As the intended consumers and ultimate users of the Norcold gas

18   absorption refrigerators, Plaintiff and the Class are third-party beneficiaries of any

19   contracts between Defendants and the RV manufacturers (and/or their

20   dealers/distributors/agents), from whom Plaintiffs obtained RV's containing Norcold gas

21   absorption refrigerators, which contain the implied warranty of merchantability and to be

22   fit for ordinary purposes, safe, not dangerous and susceptible to fire. Plaintiffs and the

23   Class, not any dealership, are the parties intended to be benefited by any such contract

24   because they are the people actually using the refrigerators in the manner intended.

25        171.   Plaintiffs and members of the Class relied on Defendants' skill and

26   judgment to furnish safe and reliable gas absorption refrigerators that were suitable for

27   their particular purpose and free of dangerous defects that could start fires.

28

172.   Defendants provided Plaintiffs and members of the Class with an implied warranty that their gas absorption refrigerators and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold and not dangerous and susceptible to causing fires.   However, the gas absorption refrigerators Defendants provided to Plaintiffs and the Class are not fit and suitable for their ordinary purpose because, *inter alia*, they contained design and manufacturing defects which were likely to create and/or enhance fires, with the potential of causing serious damage, injury and/or death.

173.   Defendants impliedly warranted that the gas absorption refrigerators were of merchantable quality and fit for such use, did not contain dangerous defects and were not susceptible to causing fires.  This implied warranty included, among other things: (1) a warranty that the gas absorption refrigerators were manufactured, supplied, distributed, and/or sold by Defendants were safe and reliable for their intended purpose; and (2) a warranty that their gas absorption refrigerators would be fit for their intended use while the gas absorption refrigerators were being operated.

174.   Defendants' gas absorption refrigerators supplied to Plaintiffs and the Class did not possess the basic degree of fitness for ordinary use due to the defects described which created unreasonable risk of fire and danger.   The defects are so basic that they render the refrigerator (and the RV containing them) unfit for ordinary purposes.   As such, they are not merchantable.

175.   The implied warranties were made not only at the time of sale and when the refrigerators were placed into the stream of commerce, but also at the time of the last recalls and the retrofits.  At those times, Defendant impliedly warranted that the gas absorption refrigerators were of merchantable quality and fit for such use, did not contain dangerous defects and were not susceptible to causing fires.  Continuing through the present, Defendants continue to hold out and market the gas absorption refrigerators as safe and fit.  Yet as shown by recent fires experienced by Plaintiffs and other class members, which continue through the present, regardless of any recalls, retrofits or

78

1  replacements, the refrigerators are still not safe, are dangerous and are susceptible to
2  causing fires.

3       176.    Contrary to the applicable implied warranties, Defendants' gas absorption
4  refrigerators at the time of sale and thereafter were not fit for their ordinary and intended
5  purpose.   Instead, Defendants' gas absorption refrigerators are and continue to be
6  defective and dangerous.

7       177.   The California Sub-Class:  Defendants' practices, as alleged, were and are
8  in violation of California Commercial Code §2314.

9       178.   The Pennsylvania Sub-Class:  Defendants' practices, as alleged, were and
10  are in violation of 13 Pa. Cons. Stat. Ann. §2314.

11      179.   The Maryland Sub-Class:  Defendants' practices, as alleged, were and are
12  in violation of Md. Code Ann., Com. Law §2-314.

13      180.   The Texas Sub-Class:  Defendants' practices, as alleged, were and are in
14  violation of Tex. Bus. & Com. Code Ann. §2.314.

15      181.   The Mississippi Sub-Class:  Defendants' practices, as alleged, were and are
16  in violation of Miss. Code. Ann. §75-2-314.

17      182.   The Tennessee Sub-Class:  Defendants' practices, as alleged, were and are
18  in violation of Tenn. Code Ann. §47-2-314.

19      183.   The Washington Sub-Class:  Defendants' practices, as alleged, were and
20  are in violation of Wash. Rev. Code Ann. §62A.2-314.

21      184.   As a direct and proximate result of Defendants' breach, Plaintiffs and
22  members of the Class have suffered, and will continue to suffer, significant damages, loss
23  and injury in an amount that will be established at trial according to proof.

24      185.   Plaintiffs and the Class Members are entitled to legal and equitable relief
25  against Defendants, including consequential damages, rescission, attorneys' fees, costs of
26  suit, and other relief as appropriate.

27  / / /

28  / / /

COMPLAINT (CLASS ACTION)

# FOURTH CAUSE OF ACTION

## Violation of Song-Beverly Consumer Warranty Act, California Civil Code §1790, *et seq.*
### (On Behalf of the California Plaintiffs and the California State Sub-Class)

186.   Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as though stated herein.

187.   Plaintiffs KAHLER, CURTIS and POST bring this claim individually and on behalf of all others similarly situated in the California State Sub-Class.

188.   Plaintiffs and all members of the California State Sub-class are consumers who purchased and/or owned one or more of Defendants' N6, N8 or 1200 Series gas absorption refrigerators, either as separate products, or as installed in recreational vehicles as original equipment.  Defendants' refrigerators were purchased primarily for family and household use, and said products were therefore "consumer goods" as that term is defined in the Song-Beverly Consumer Warranty Act (hereinafter the "ACT"), Cal. Civil Code §1790, *et seq.*

189.   Plaintiffs and all members of the California State Sub-Class are "buyers" of consumer goods under the ACT.

190.   Defendants are "manufacturers" and/or "distributors" under the ACT.

191.   Defendants offered, sold, distributed and otherwise placed their gas absorption refrigerators into the stream of commerce accompanied by express warranties that the products were reliable and free of defects.  In addition to these express warranties, the sale of Defendants' gas absorption refrigerators were accompanied by Defendants' implied warranties that their refrigerators were merchantable, and fit for the purpose for which they were intended. However, Defendants' gas absorption refrigerators are not fit for their ordinary purpose.

192.   The above-described defects and non-conformities to warranty of Defendants' gas absorption refrigerators manifested themselves within the applicable express warranty period, and/or within the applicable express warranty period as

COMPLAINT (CLASS ACTION)