UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFERY ETTER, ET AL., <br><br> Plaintiffs, <br><br> vs. <br><br> THETFORD CORP., ET AL., <br><br> Defendants. | CASE NO. 8:13-81-JLS (RNBx) <br><br> **ORDER DENYING WITHOUT PREJUDICE PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT (Doc. 196)** |

## I. INTRODUCTION

Before the Court is a Motion for Preliminary Approval of Class Action Settlement filed by Plaintiffs Dennis Osha, James Pearce, Craig Post, Raymond Rolle, Sr., Leonard Somerville, Orrene Somerville, Richard Spears, Alice Knight, Alan Burkhart, George Frederick, Kathleen Frederick, Alan Greager, Linda Greager, Charles Chow, John Robinson, and Randy Depree ("Settling Plaintiffs"). (Mot., Doc. 196.)[1] Plaintiff Jeffery Etter filed an Opposition, and Settling Plaintiffs replied. (Opp'n, Doc. 202;[2] Reply, Doc. 213.) Having considered the papers, heard oral argument, and taken the matter under submission, the Court DENIES Settling Plaintiffs' Motion without prejudice.

## II. BACKGROUND

On December 12, 2013, Plaintiffs Jeffery Etter, Susan Etter, Paul Kahler, Fran Curtis, and Michelle Curtis filed a class action Complaint in Orange County Superior Court against Defendants Thetford Corp., Norcold, Inc., and Dyson-Kissner-Moran Corp. (Notice of Removal Ex. A, Doc. 1.) Defendants removed the case to this Court on January 16, 2013. (Notice of Removal.) On April 15, 2013, Plaintiffs filed a First Amended Complaint ("FAC"), adding certain individuals as Plaintiffs. (FAC at 1, Doc. 40.)[3]

---

[1] Chow, Robinson, and Depree are not Plaintiffs in this action, but are Plaintiffs in the related action *Chow v. Norcold, Inc.*, Case No. SACV 14-6759-JLS (RNBx) (C.D. Cal). Documents on the docket in *Chow* shall be referred to using "*Chow* Doc."

[2] The docket reflects that the Opposition was filed by Jeffery Etter. In support of the Opposition, Jeffery Etter's counsel filed declarations by Plaintiffs Jeffery and Susan Etter, Paul Kahler, and Brian McBride. (Docs. 203-205.)

[3] The following individuals were added: Leslie Cranshaw, Richard Kaylor, Brian McBride, Dennis Osha, James Pearce, Craig Post, Raymond Rolle, Sr., Emil Vargo, Leonard Somerville, Orrene Somerville, Richard Spears, Alice Knight, Alan Burkhart, Sandra Burkhart, George Frederick, Kathleen Frederick, Alan Greager, and Linda Greager.

According to the FAC, Defendants design, manufacture, and sell gas absorption refrigerators for use in recreational vehicles. (*Id.* ¶ 3.) At issue in this action are Defendants' twelve-cubic-foot model ("1200 Series"), eight-cubic-foot model ("N8 Series"), and six-cubic-foot model ("N6 Series"). (*Id.* ¶¶ 3, 44) All three refrigerators have a cooling unit that functions by heating a solution, resulting in the release of ammonia gas that circulates through a series of tubes. (*Id.* ¶ 45.) Plaintiffs allege that the tubing in the cooling units in all three models share a common tendency to corrode, crack, and leak, resulting in fires. (*Id.* ¶ 46.) Plaintiffs further allege that Defendants knew, but failed to disclose and concealed, that their refrigerators contained this design defect. (*Id*. ¶¶ 102, 216.) On the basis of these and other allegations, Plaintiffs assert claims in the FAC against Defendants on behalf of themselves and various putative classes for (1) violation of consumer protection statutes, (2) breach of express warranty, (3) breach of implied warranty, (4) violation of the Song-Beverly Consumer Warranty Act, (5) violation of California's Unfair Competition Law, and (6) restitution. (*Id.* at 64-91.)[4]

On December 27, 2013, Plaintiffs filed a Motion for Class Certification, and after the Court struck the motion for failure to comply with the Local Rules, Plaintiffs filed a Renewed Motion for Class Certification on May 5, 2014. (Docs. 52, 117.) After briefing on the motion had been completed, the parties attended six in-person sessions with a neutral mediator. (Robinovitch Decl. ¶ 20, Doc. 185.) On July 18, 2014, a settlement in principal was reached (*id.* ¶ 31), and on July 24, 2014, the Court vacated the hearing on the Renewed Motion for Class Certification. (Doc. 173.)

On August 8, 2014, Charles Chow, Randy Dupree, and John Robinson filed a class action complaint against Defendants in the related case *Chow v. Norcold, Inc.*,

---

[4] Certain Plaintiffs also assert individual claims against Defendants for strict products liability and negligence. (*Id.* at 91-96.)

Case No. SACV 14-6759-JLS (RNBx) (C.D. Cal).  (*Chow* Compl., *Chow* Doc. 1.) Based on allegations similar to those in the FAC, the complaint in *Chow* asserts claims against Defendants for (1) violation of New York's Consumer Protection from Deceptive Acts and Practices Statute, (2) violation of the Michigan Consumer Protection Act, (3) violation of the Ohio Consumer Sales Practice Act, (4) violation of the Magnusson-Moss Warranty Act for breach of express warranty, (5) violation of the Magnusson-Moss Warranty Act for breach of implied warranty, (6) breach of express warranty, (7) breach of implied warranty, (8) violation of the Song-Beverly Consumer Warranty Act, (9) violation of California's Unfair Competition Law, and (10) restitution.  (*Id.* at 46-86.)

Thereafter, Defendants and certain Plaintiffs executed a Class Action Settlement Agreement resolving class claims in both this action and the *Chow* action. (Robinovitch Decl. Ex. E ("Agreement").)  The Agreement defines the Settlement Class as follows:

> the Settling Plaintiffs and all persons in the United States, who:
> (i) currently own, or formerly owned, a Norcold, , [sic] 1200 Series Gas Absorption Refrigerator or Cooling Unit that was manufactured during the time period starting January 1, 2002, and continuing to and including October 1, 2012, and/or; (ii) currently own a Norcold, , [sic] N6 Series Gas Absorption Refrigerator or Cooling Unit, or N8 Series Gas Absorption Refrigerator or Cooling Unit, manufactured during the time period starting January 1, 2009, and continuing to and including December 31, 2013.

(Agreement §§ I.A.14, II.C.)[5]  Settling Plaintiffs' counsel estimate that there are 575,432 members of the Settlement Class.  (Marker Decl. ¶ 26, Doc. 187.)

Under the Agreement, Defendants will pay, in three installments, $33,000,000 into a settlement fund for the benefit of the class.  (Agreement § II.D.1)  From the fund, $2,500,000 will be paid to the claims administrator for administration expenses, with any balance to revert to the fund.  (*Id.* § II.D.2.)  Plaintiffs' counsel may apply for an award of attorney's fees and costs not to exceed 25% of the fund.  (*Id.* § VII.B.)  Those Plaintiffs who executed the Agreement or are designated as a class representative may petition the Court for an award from the fund of "up to $100.00 per hour . . . for their time in connection with [this action and the *Chow* action], with a suggested $5,000 minimum award."  (*Id.* §§ I.A.19, 64, VII.E.)  The remainder of the fund will be distributed to class members who timely submit a claim.  (*Id.* § II.D.5.)  The plan of allocation provides for the distribution of shares of the settlement fund as follows:

---

[5] Excluded from the Settlement Class are "(a) any officers, directors or employees of Defendants; (b) any judge assigned to hear this case (or spouse or family member of any assigned judge); (c) any employee of the Court; (d) any juror selected to hear this case; (e) anyone who has or may have claims against Defendants for personal injury, wrongful death or for damage to property other than to the Norcold refrigerator he/she owns; (f) anyone who had claims against Defendants for personal injury, wrongful death or for damage to property and said claims have been fully resolved by way of settlement, dismissal or judgment; (g) anyone who purchased a Norcold Gas Absorption Refrigerator as used equipment, either as a stand-alone product or as a component part of a used RV sale, that no longer had a Norcold Cooling Unit installed at the time of purchase but rather had a cooling unit manufactured by a manufacturer other than Norcold at the time of purchase, and (h) persons who timely and properly exclude themselves from the Class as provided in this Agreement."  (*Id.*)

| | |
|---|---|
| Current owner of a 1200 Series refrigerator | 25 shares |
| Former owner of a 1200 Series refrigerator who "incurred out of pocket expenses to repair and/or replace the Gas Absorption Refrigerator or Cooling Unit" | 25 shares |
| Former owner of a 1200 Series refrigerator who "has not incurred any out of pocket expenses to repair and and/or replace the Gas Absorption Refrigerator or Cooling Unit" | 1 share |
| Current owner of a N6 or N8 Series refrigerator | 3 shares |

(*Id.* § II.D.5.ii.)[6] Counsel for Settling Plaintiffs estimate that there are approximately 117,343 current 1200 Series owners, 24,723 former 1200 Series owners with expenses, 74,169 former 1200 Series owners without expenses, and 359,197 current N6 and N8 Series owners. (Marker Decl. ¶ 26.) In addition to a share of the settlement fund, current owners of an N6 or N8 Series refrigerator will receive a three-year extended warranty covering replacement of any cooling unit that fails due to a leak. (Agreement § II.D.1.ii.) The settlement also provides for a warning to be distributed to claimants with a 1200 Series refrigerator. (*Id.* § II.D.1.iii.)

In return for the consideration described above, the Settlement Class releases "any claim of any kind related, arising from, related to, connected with, and/or in any way involving" this action and the *Chow* action or "the subject Gas Absorption

---

[6] Under the Agreement, unclaimed portions of the fund will be distributed in *cy pres* to the International Association of Firefighters, "or as may be directed and approved by the Court." (*Id.* § II.D.2.vi.) However, "[n]ot just any worthy recipient can qualify as an appropriate *cy pres* beneficiary." *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012). Instead, there must be a driving nexus between the plaintiff class and the *cy pres* beneficiaries such that the award does not benefit a group "too remote from the plaintiff class." *Id*. While this action involves products allegedly presenting a fire risk, it remains a consumer class action, and a fireman's union is too remote from the Settlement Class to be an appropriate *cy pres* recipient. In the event Settling Plaintiffs renew this Motion, they must select a new, appropriate *cy pres* recipient.

Refrigerators." (*Id.* § VI.B.) Expressly excluded from this release are claims for "personal injury, wrongful death or actual physical property damage arising from a leak, fire or other accident involving any Subject Gas Absorption Refrigerator." (*Id.* § VI.C.) The Agreement defines such claims as "Reserved Claims." (*Id.*)

The Agreement further provides for the settlement of certain Plaintiffs' Reserved Claims in return for additional consideration for those Plaintiffs. (*Id.* § IX.) Specifically, in exchange for a release of Reserved Claims, Ray Rolle will receive $11,353.86, Leonard and Orrene Somerville will receive $68,744.60, Richard Spears and Alice Knight will receive $11,454.82, Alan and Linda Greager will receive $57,938.92, and Alan Burkhart will receive $500.00. (*Id.* § IX.4.i.) These payments "shall be made by Defendants . . . within 45 days of the Effective Date." (*Id.* § IX.4.ii.) The Effective Date is "the latest date on which the Final Order and/or Final Judgment approving th[e] Agreement becomes final." (*Id.* § I.A.31.)

### III. CONDITIONAL CERTIFICATION OF THE CLASS

Settling Plaintiffs ask the Court to conditionally certify the Settlement Class for settlement purposes only under Federal Rule of Civil Procedure 23(a) and 23(b)(3), and to appoint as class representatives Dennis Osha, James Pearce, Craig Post, Raymond Rolle, Sr., Leonard Sommerville, Orrene Somerville, Richard Spears, Alice Knight, Alan Burkhart, George Frederick, Alan Greager, Linda Greager, Charles Chow, John Ribonson, and Randy Dupree. (Mot. at 3; Mem. at 23.)

#### A. Legal Standard

When conditionally certifying a class for settlement purposes, a court "must pay undiluted, even heightened, attention to class certification requirements." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) (quotation marks omitted).

"To obtain class certification, a class plaintiff has the burden of showing that the requirements of Rule 23(a) are met and that the class is maintainable pursuant to Rule 23(b)." *Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010). "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011). "Under Rule 23(a), the party seeking certification must demonstrate, first, that":

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

*Id.* at 2548 (quoting Fed. R. Civ. P. 23(a)). "Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Id.* Here, Plaintiff seeks certification of the Settlement Class under Rule 23(b)(3), which permits maintenance of a class action if

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3). "Rule 23 does not set forth a mere pleading standard," thus "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 131 S. Ct. at 2551. This requires a district court to conduct a "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." *Id.*

8

## B. Discussion

Rule 23(a)(4) permits certification of a class action only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). For the reasons discussed below, the Court concludes that Settling Plaintiffs have failed to demonstrate that the proposed class representatives will fairly and adequately protect the interests of the Settlement Class.

Class action settlement agreements that provide benefits to named plaintiffs not shared with the rest of the class have the capacity to create conflicts of interest that destroy the adequacy of class representatives and their counsel. *See Radcliffe v. Experian Info. Solutions Inc.,* 715 F.3d 1157, 1164 (9th Cir. 2013) (holding that disproportionate incentive awards to named plaintiffs conditioned on their support for the settlement undermined the adequacy of the named plaintiffs and their counsel). Thus, incentive awards that are disproportionate to the relief afforded to class members may "threaten[] the capacity of the[l]ead [p]laintiffs to adequately represent the class." *Wallace v. Countrywide Home Loans, Inc.*, No. SACV 8-1463-JLS (MLGx), ECF No. 445 at 7-9 (C.D. Cal. Apr. 14, 2014) (finding that incentive awards of $50,000 per class representative precluded approval of a class action settlement).

The Agreement here allows for class representatives to petition the Court for incentive awards of "up to $100.00 per hour . . . for their time in connection with [this action and the *Chow* action], with a suggested $5,000 minimum award." (*Id.* §§ I.A.19, 64, VII.E.) Because Settling Plaintiffs have not provided the Court with any estimates of the number of hours the proposed class representatives have

expended, the Court cannot determine whether or not the incentive awards corrupt the proposed class representatives' adequacy. Consequently, the Court cannot conditionally certify the class.

Additionally, eight of the proposed class representatives are receiving payments in the Agreement for the release of their Reserved Claims. (*See* Agreement § IX.4.)[7] These amounts are not incentive awards, but they are payments to class representatives separate from and in addition to the relief provided to the class. The additional consideration is not insubstantial, ranging from $500 to $68,744.60. (*Id.* § IX.4.ii.) By comparison, the value of the entire settlement fund, before any allocation of fees and costs, is a mere $57 per member of the Settlement Class. It is unlikely all class members will submit a claim, and the plan of allocation does not provide for the equal distribution of the fund. If all class members participated, counsel for Settling Plaintiffs estimate that payments would range from $7.02 to $175.40. (Marker Decl. ¶ 37.) If five percent participated, payments would range from $140.32 to $3,508.08. (*Id.*) Under any measure, for those eight Plaintiffs releasing their Reserved Claims, much of the value of the settlement comes not from relief afforded to them as class members, but from relief afforded to them for the release of Reserved Claims.

There is, of course, nothing inherently improper about a class representative settling an individual claim with a defendant. However, the Agreement here

---

[7] That these Plaintiffs have Reserved Claims to release would, even without the conflict issues identified below, seem to preclude them from representing the Settlement Class. Reserved Claims are claims for "personal injury, wrongful death or actual physical property damage arising from a leak, fire or other accident involving any Subject Gas Absorption Refrigerator." (*Id.* § VI.C.) The Agreement specifically excludes from the definition of the Settlement Class "anyone who has or may have claims against Defendants for personal injury, wrongful death or for damage to property other than to the Norcold refrigerator he/she owns" and "anyone who had claims against Defendants for personal injury, wrongful death or for damage to property and said claims have been fully resolved by way of settlement, dismissal or judgment." (*Id.* § I.A.14.)

provides that consideration for the release of Reserved Claims will be paid only in the event the entire settlement is approved by the Court. (*See* Agreement §§ I.A.31, IX.4.ii.) There is no compelling reason to link the two settlements, and doing so provides those Plaintiffs releasing their Reserved Claims with a substantial reason to support the settlement separate and apart from any interest they have solely as members of the Settlement Class. This conflict destroys the adequacy of those eight Plaintiffs releasing their Reserved Claims.

There are other Plaintiffs whose ability to serve as class representatives has not been similarly compromised. There is not, however, counsel available to serve as an adequate representative of those Plaintiffs. The law firms of Ridout Lyon + Ottoson, LLP and Zimmerman Reed, PLLP represent all of the putative class representatives in this action. (*See* Mot. at 1.) Ridout and Zimmerman thus represent the eight putative class representatives with interests in conflict with those of the class. If the Court were to appoint Ridout and Zimmerman as lead counsel, they would be "simultaneously representing clients with conflicting interests." *Radcliffe*, 715 F.3d at 1167. Ridout and Zimmerman have taken no steps to remedy the conflict, and, as the Ninth Circuit has stated, "[c]onflicted representation provides an independent ground for reversing [a] settlement." *Id.* In sum, the inclusion of the individual settlements of Reserved Claims in the Agreement precludes the Court from finding that the proposed class representatives and their current counsel are adequate representatives of the Settlement Class.

Lastly, the plan of allocation in the Agreement does not treat 1200 Series owners and N6 and N8 Series owners alike. Indeed, current 1200 Series owners will receive monetary relief eight times greater than what current N6 and N8 Series owners will receive. (*See* Agreement § II.D.5.ii.) The Agreement provides N6 and N8 Series owners with an extended warranty, but Settling Plaintiffs do not contend that the value of this warranty is equivalent to the additional monetary relief afforded to 1200 Series owners. Rather, Settling Plaintiffs argue that the plan of

allocation is justified by the higher cost of 1200 Series cooling units and the greater frequency of reported incidents in 1200 Series units. (Mem. at 12.) These arguments, even if correct, only confirm that N6 or N8 Series owners and 1200 Series owners are differently situated with respect to the settlement of this action.

All of the proposed class representatives other than Richard Spears and Alice Knight are alleged to have owned 1200 Series refrigerators. (*See* FAC ¶¶ 15, 20-23, 25-28; *Chow* Compl. ¶¶ 13-15. *See also* Thompson Decl. Ex. 7, Doc. 137 (Defendants' chart identifying models owned by Plaintiffs).) Spears and Knight owned an N8 Series refrigerator. (*See* Thompson Decl. Ex. 1 ("Spears Depo.") at 31:2-4.) However, because Spears and Knight negotiated a release of their Reserved Claims, they are not, as discussed above, adequate class representatives. Further, as Settling Plaintiffs note, Spears' and Knight's N8 Series refrigerator was manufactured before 2000. (*See* Mem. at 14 n.5; Spears Depo. at 16:15-19.) The Settlement Class includes owners of N6 and N8 Series refrigerators only if the unit was "manufactured during the time period starting January 1, 2009, and continuing to and including December 31, 2013." (Agreement §§ I.A.14, II.C.) "[A] class representative must be part of the class . . . ." *Dukes*, 131 S. Ct. at 2550 (quotation marks omitted). Spears and Knight are included in the Settlement Class because it is specifically defined to include "Settling Plaintiffs." (Agreement §§ I.A.14, II.C.) Spears and Knight are not, however, class members under the definition applicable to all class members other than the "Settling Plaintiffs," and they are therefore not adequate class representatives. Consequently, there is no adequate class representative who currently owns an N6 or N8 Series refrigerator.

Because the settlement treats N6 and N8 Series owners less favorably than 1200 Series owners, a group of proposed class representatives that only includes 1200 Series owners is inadequate to represent the Settlement Class. Not one of the proposed class representatives both owns an N6 or N8 Series refrigerator and is an

otherwise appropriate class representative.  For this reason, in addition to the two reasons identified above, the Court cannot conditionally certify the Settlement Class.

## IV. CONCLUSION

The Motion is DENIED without prejudice.  To remedy the deficiencies discussed above, Defendants and Settling Plaintiffs may amend the Agreement and seek permission to amend the Court's Scheduling Order to add new parties.  Any supplement to the Motion or motion or stipulation to amend the scheduling order and add new parties must be filed no later than **60 days** from the date of this Order. If the Court does not receive a supplement by that time, it will proceed with the litigation and reset the trial and pretrial dates and the hearing on Plaintiffs' Motion for Class Certification.  Settling Plaintiffs shall notice a hearing date on any supplement to the Motion, and the date noticed must be at least **35 days** after the date the supplement is filed.

DATED: October 14, 2014         _____JOSEPHINE L. STATON_____
                                JOSEPHINE L. STATON
                                UNITED STATES DISTRICT JUDGE