UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFERY ETTER et al., | CASE NO. SACV 13-00081-JLS (RNBx) |
| Plaintiffs, | |
| vs. | **ORDER GRANTING PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT (Doc. 411)** |
| THETFORD CORPORATION et al., | |
| Defendants. | |

1    Before the Court is a Renewed Motion for Preliminary Approval of Proposed Class

2  Action Settlement filed by Settling Plaintiffs.[1]  (Renewed Mot., Doc. 411.)  Settling

3  Plaintiffs ask the Court to (1) preliminarily approve the proposed Settlement; (2)

4  provisionally certify the proposed Settlement Class; (3) appoint certain individuals as

5  Class Representatives and certain attorneys as Class Counsel; (4) approve the proposed

6  Notice Plan; and (5) schedule the final Fairness Hearing and set related deadlines.  (*Id.* at

7  19.)  For the reasons stated below, the Court GRANTS Settling Plaintiffs' Motion.

8  **I.    <u>BACKGROUND</u>**

9

10    On December 12, 2012, Plaintiffs filed a class action Complaint in Orange County

   Superior Court against Defendants.  (Notice of Removal, Ex. A, Doc. 1.)  Defendants

11  removed the case to this Court on January 16, 2013.  (Notice of Removal.)  Plaintiffs filed

12  a First Amended Complaint on April 15, 2013.  (FAC, Doc. 40.)

13    According to the FAC, Defendants design, manufacture, and sell gas absorption

14  refrigerators for use in recreational vehicles.  (FAC ¶ 3.)  At issue in this action are

15  Defendants' twelve-cubic-foot model ("1200 Series"), eight-cubic-foot model ("N8

16  Series"), and six-cubic-foot model ("N6 Series").  (*Id.* ¶¶ 3, 44.)  All three refrigerators

17  have a cooling unit that functions by heating a solution which prompts the release of

18  ammonia gas that circulates through a series of tubes.  (*Id.* ¶ 45.)  Plaintiffs allege that the

19  tubing in the cooling units in all three models share a common tendency to corrode, crack,

20  and leak, resulting in fires.  (*Id.* ¶ 46.)  Plaintiffs further allege that Defendants knew, but

21  failed to disclose and concealed, that their refrigerators contained this design defect.  (*Id.*

22  ¶¶ 102, 216.)  On the basis of these and other allegations, Plaintiffs assert claims in the

23

24  ———————————

25    [1] The following individuals comprise Settling Plaintiffs: James Pearce, Craig Post, George

26  Frederick, Kathleen Frederick, John Robinson, Randy Dupree, Ray Burkhead, Linda Pierson, and

   Gordon Williamson. (*See* Renewed Mot. at 2, Doc. 411.)  It is unclear whether Charles Chow also

27  should be included as a Settling Plaintiff.  (*Compare* Renewed Mot. at 4 (listing Charles Chow as

   a proposed class representative) *with* Renewed Mot. at 2 (not listing Charles Chow as a Settling

28  Plaintiff).)

FAC against Defendants on behalf of themselves and various putative classes for (1) violation of consumer protection statutes, (2) breach of express warranty, (3) breach of implied warranty, (4) violation of the Song-Beverly Consumer Warranty Act, (5) violation of California's Unfair Competition Law, (6) restitution, (7) strict products liability, and (8) negligence.  (*Id.* ¶¶ 91-251.)

The parties attended six in-person sessions with a neutral mediator.  (First Robinovitch Decl. ¶ 20, Doc. 185.)  On July 18, 2014, a settlement in principal was reached.  (*Id.* ¶ 31.)  On August 28, 2014, Charles Chow, Randy Dupree, and John Robinson filed a class action complaint against Defendants in the related case *Chow v. Norcold, Inc.*, Case No. SACV 14-6759-JLS (RNBx) (C.D. Cal).  (Chow Compl., Chow Doc. 1.)  Thereafter, Defendants and Settling Plaintiffs executed a Class Action Settlement Agreement resolving class claims in both this action and the *Chow* action.  (First Robinovitch Decl., Ex. E, "Agreement," Doc. 185-5.)

This Court has previously considered several iterations of the proposed settlement agreement and on two occasions has denied preliminary approval because the proposed agreement was deficient.  (First Order, Doc. 221; Suppl. Mot. Order, Doc. 401.)  Because these issues have been discussed at length, the Court will not rehash those prior deficiencies or modifications.  Rather, the Court will focus on the latest iteration of the agreement.

On September 4, 2015, Settling Plaintiffs filed a Renewed Motion for Preliminary Approval of Proposed Class Action Settlement.  (Renewed Mot., Doc. 411.)  In that filing, Settling Plaintiffs assert that "counsel for both Settling Plaintiffs and Defendants have engaged in renewed arms-length negotiations aimed at improving the settlement and addressing the issues raised by the Court."  (*Id.* at 1; Second Robinovitch Decl. ¶¶ 6, 11, Doc. 412.)  According to Settling Plaintiffs, "the parties' revisions to the [Revised] Settlement Agreement attempted to address and modify only the new issues identified by the Court" in its Supplemental Motion Order, while "maintaining all other material terms

1    of the settlement." (Renewed Mot. at 2.)  In support of their Renewed Motion, Settling

2    Plaintiffs attached a new settlement agreement ("Second Revised Agreement").  (Second

3    Robinovitch Decl., Ex. A, Second Revised Agreement, Doc. 412-1.)

4            The Second Revised Agreement reflected four substantive changes.  (Renewed Mot.

5    at 1-2.)  First, it "[i]ncrease[d] the non-reversionary, monetary fund created from $33

6    million to $36 million." (*Id.* at 1.)  Second, it "[i]ncrease[d] the share allocation that class

7    members with N6 and N8 units making claims will receive from 3 to 5[.]" (*Id.*)  Third, it

8    "[r]emove[d] as proposed class representatives those Plaintiffs who also present individual,

9    non-class tort claims under Counts 7 and 8 of the operative complaint[.]" (*Id.* at 2.)

10   Finally, the revised agreement "[e]xpands the warning given to class members regarding

11   the alleged defect to class members with N6 and N8 Series units." (*Id.*)

12           On October 23, 2015, the Court heard oral arguments on Plaintiff's renewed motion

13   and took the matter under submission.  (Minutes, Doc. 439.)  At the hearing, the Court

14   expressed tentative approval as to the increased amount of the overall settlement.

15   (Transcript at 7:5-11, Doc. 438.)  However, the Court identified three areas of continued

16   concern.

17           First, the Settling Plaintiffs' had failed to provide a sufficient evidentiary basis for

18   concluding that the risk of fire incidents was substantially greater in the 1200 Series than

19   in either the N6 or N8 Series refrigerators.  (*Id.* at 7:15-8:10, 10:7-11:2.)  As the Court

20   emphasized, without evidence to support that the incidents of fire occurred with much

21   greater frequency in the 1200 Series than in the N6 or N8 Series, there is no principled

22   distinction for awarding 1200 Series owners a greater number of shares.  (*Id.*)

23           Second, there needed to be greater precision in the allocation of shares to former

24   owners of the 1200 Series who incurred out-of-pocket repair or replacement expenses.  (*Id.*

25   at 11:3-12:11.)  As the Court explained, under the Second Revised Agreement, a former

26   owner of the 1200 Series whose only harm was economic loss is entitled to one share.

27   (*Id.*)  In contrast, a former owner who demonstrates some out-of-pocket expenses is

28

awarded twenty-five shares, irrespective of and without verifying the *actual* expenses incurred.  (*Id.*)  The Court found such a distinction to be irrational.

Finally, the warning needed to be distributed to all class members who receive notice of the settlement, rather than only those class members who file a claim.  (*Id.* at 38:3-20.)  Based on these three concerns, the Court withheld a decision on Settling Plaintiffs' renewed motion for preliminary approval and granted leave to the Parties to file supplemental briefing.  (Order at 2, Doc. 448.)

On November 6, 2015, Settling Plaintiffs' filed an addendum to the Second Revised Agreement.  (Addendum, Doc. 447-1.)  The Addendum purports to address two of the concerns identified by the Court.  First, it modifies the allocation of shares to former owners of the 1200 Series refrigerator.  (Addendum § I.2.ii.)  Second, it expands the universe of individuals who would receive warning notices to include all class members. (*Id.* at § II.4-5.)  Separately, in the briefs submitted in support of the Addendum, the Settling Plaintiffs directed the Court to the "Incident Log," which forms the evidentiary basis for Settling Plaintiffs' position that the risk of fire incidents was substantially greater in the 1200 Series refrigerators relative to either the N6 or N8 Series refrigerators.  (Notice of Settlement Addendum at 1-2, Doc. 440.)

Under the terms of the Addendum, the modified allocation of shares for former owners of the 1200 Series is as follows:

| **Aggregate repair / replacement cost** | **Shares** |
| --- | --- |
| Over $1,700.00 | 25 shares |
| From $1,360.01 to $1,700.00 | 20 shares |
| From $1,020.01 to $1,360.00 | 15 shares |
| From $680.01 to $1,020.00 | 10 shares |
| From $340.01 to $680.00 | 5 shares |
| From $68.01 to $340.00 | 3 shares |

| From $0.01 to $68.00 | 1 share |
|---|---|

(Addendum § I.2.ii.b-c.)  A former owner of a 1200 Series refrigerator would be required to submit a claim form, together with evidentiary support in form of receipts or proofs of payment, under penalty of perjury in order to be eligible to receive shares.  (*Id.* at § I.2.ii.a-b.)

On November 17, 2015, Settling Plaintiffs filed a supplemental memorandum in support of their Renewed Motion for Preliminary Approval of Proposed Class Action Settlement.  (Suppl. Mem., Doc. 449.)  Non-Settling Plaintiffs opposed.  (Suppl. Opp., Doc. 451.)  Settlings Plaintiffs replied.  (Suppl. Reply, Doc. 455.)

As has been repeatedly made clear, the Court's obligation at the preliminary approval stage is to determine if the proposed settlement is "fundamentally fair, adequate, and reasonable" – not whether the settlement is perfect.  *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 377 (9th Cir. 1995) ("Under Fed. R. Civ. P. 23(e), the district court determines whether a proposed settlement is 'fundamentally fair, adequate, and reasonable.'").  Having carefully considered Settling Plaintiffs' Renewed Motion, as well as the supplemental memorandum and related briefing, the Court concludes Settling Plaintiffs have adequately addressed the Court's three remaining concerns identified in October 23, 2015 hearing.  Therefore, the Court will turn to the issue of provisional certification and preliminary approval.

## II.    PROVISIONAL CERTIFICATION OF THE CLASS

Settling Plaintiffs request that the Court provisionally certify the proposed Settlement Class.  (Renewed Mot. at 19.)

### A. Legal Standard

"To obtain class certification, Plaintiff must demonstrate that the proposed settlement class meets the four requirements of Rule 23(a) and the two requirements of Rule 23(b)(3)."  *Litty v. Merrill Lynch & Co., Inc.*, No. CV 14-0425 PA (PJWx), 2015 WL 4698475, at *2 (C.D. Cal. Apr. 27, 2015).  The threshold task is to determine whether the

proposed settlement class satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure applicable to all class actions, namely: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *Id.* Additionally, there is an implied requirement "that the class be sufficiently definite and ascertainable." *Doyle v. Chrysler Group LLC*, No. SACV 13-00620 JVS (ANx), 2014 WL 7690155, at *5 (C.D. Cal. Oct. 9, 2014). Separately, certification under Rule 23(b)(3) requires "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 981 (C.D. Cal. 2015).

## B. Discussion

### 1. Requirements of Rule 23(a)

Here, Settling Plaintiffs request the Court to "certify [a] nationwide class for settlement purposes." (Revised Mot. at 22, Doc. 196.) Because the Parties have reached a settlement prior to class certification, "the court must pay undiluted, even heightened attention to class certification requirements because, unlike in a fully litigated class action suit, the court will not have future opportunities to adjust the class." *Litty*, 2015 WL 4698475 at *2. *See also Hanlon*, 150 F.3d at 1019.

"The requirement of an ascertainable class is met as long as the class can be defined through objective criteria." *Forcellati v. Hyland's, Inc.*, No. CV 12-1983-GHK MRWx, 2014 WL 1410264, at *5 (C.D. Cal. Apr. 9, 2014). Here, the proposed class consists of any person in the United States who (1) currently owns, or formerly owned, a Norcold 1200 Series refrigerator manufactured between January 1, 2002 and October 1, 2012, or (2) currently owns a Norcold N6 or N8 refrigerator manufactured between January 1, 2009 and December 31, 2013. (Second Revised Agreement § I.15.) The class definition includes a particular make, model, and production period for the product at issue – each of which is an objective, verifiable fact. *See, e.g., Parkinson v. Hyundai Motor Am.*, 258

F.R.D. 580, 593-94 (C.D. Cal. 2008).  Thus, the Court concludes that the proposed class is sufficiently ascertainable.

The requirement of "numerosity" is discharged if "the class is so large that joinder of all members is impracticable."  *Hanlon*, 150 F.3d at 1019 (citing Fed. R. Civ. P. 23(a)(1)).  Here, the Settling Plaintiffs contend that, based on a review of Defendants' records, there are over 500,000 individuals who meet the class definition.  (Revised Mem. at 23.)  Because joinder of these individuals is impracticable, the Court finds that the proposed class satisfies Rule 23's "numerosity" requirement.

"A class has sufficient commonality 'if there are questions of fact and law which are common to the class.'"  *Hanlon*, 150 F.3d at 1019 (citing Fed. R. Civ. P. 23(a)(2)).  This requirement is satisfied where there are "shared legal issues with divergent factual predicates" or where there is "a common core of salient facts coupled with disparate legal remedies within the class."  *Id.*  Here, the central dispute turns on the nature of the defect which caused the boiler tubes to leak.  (Revised Mem. at 24.)  Because the facts underlying this dispute will not vary for any of the class members, the Court finds that there exists "a common core of salient facts" sufficient to establish "commonality" under Rule 23(a)(2).  *Hanlon*, 150 F.3d at 1019.

"The typicality prerequisite of Rule 23(a) is fulfilled if 'the claims or defenses of the representative parties are typical of the claims or defenses of the class.'"  *Id.* at 1020 (quoting Fed. R. Civ. P. 23(a)(3)).  A class representative's claims are "typical" if they are "reasonably co-extensive with those of absent class members[.]"  *Id.*  Here, the Class Representatives' claims are that Defendants engaged in deceptive conduct by "selling refrigerators with defects, failing to inform consumers of the defects, and failing to properly repair the defects pursuant to its warranties."  (Revised Mot. at 24.)  This is the same theory that underlies the claims of all other class members.  Moreover, the defect alleged by the Class Representatives is identical to the defect impacting other class

members.  (*Id.*)  Based on these facts, the Court concludes that Rule 23(a)'s "typicality" requirement is satisfied.

Rule 23(a)'s final requirement is that "the representative parties will fairly and adequately protect the interests of the class."  *Hanlon*, 150 F.3d at 1020 (citing Fed. R. Civ. P. 23(a)(4)).  Determining adequacy requires a Court to consider (1) whether there exist conflicts between named plaintiffs or class counsel and absent class members, and (2) whether named plaintiffs and class counsel will vigorously prosecute the action.  *Id.* Previously, the Court identified two significant concerns relating to adequacy.  (Order at 9-13.)  First, the Court took issue with both the proposed incentive awards for class representatives and with the additional payments to be made to eight proposed class representatives in connection with the release of certain "reserved claims."  (*Id.* at 9-10.) Second, the Court found that "the plan of allocation in the Agreement does not treat 1200 Series owners and N6 and N8 Series owners alike."  (*Id.* at 11.)  While the Parties sought to address these deficiencies in their Supplemental Motion for Preliminary Approval (Suppl. Mot., Doc. 228), the Court found the proposed remedies inadequate.  (Suppl. Mot. Order at 11-14.)

In response, the Parties again modified the proposed settlement agreement.  In particular, Settling Plaintiffs adopted a suggestion from the Court to remove as proposed class representatives certain individuals who had previously engaged in settlement discussion with Defendants as to certain Reserved Claims.  (Renewed Mot. at 18-19.) Additionally, the Parties revised the allocation plan such that, while still focused on owners of the most hazardous refrigerators (i.e., the 1200 Series), "increased benefits" would accrue to owners of the N6 and N8 models.  (*Id.* at 10, 15 (describing increase in shares allocated to N6 and N8 owners from 3 to 5 shares).)

At the October 23, 2015 hearing on Settling Plaintiffs' renewed motion, the Court expressed a related but distinct concern regarding the proposed allocation.  As summarized in a subsequent order, the Court requested "further modifications pertaining to the number

of shares allotted to former owners of the 1200 Series who incurred out-of-pocket repair or
replacement expenses[.]"  (Order at 1, Doc. 448.)  In response, the Parties filed the
Addendum, which, in relevant part, sought to address the Court's concern by "providing
for gradations in the share allocations provided to former 1200 owners based on the
amounts that they attest under penalty of perjury that they spent on repairs or replacement
cooling units."  (Suppl. Mem. at 5.)  The revised allocation for former owners of the 1200
Series is as follows:

| **Aggregate repair / replacement cost** | **Shares** |
|---|---|
| Over $1,700.00 | 25 shares |
| From $1,360.01 to $1,700.00 | 20 shares |
| From $1,020.01 to $1,360.00 | 15 shares |
| From $680.01 to $1,020.00 | 10 shares |
| From $340.01 to $680.00 | 5 shares |
| From $68.01 to $340.00 | 3 shares |
| From $0.01 to $68.00 | 1 share |

(Addendum § I.2.ii.b-c.)

The Non-Settling Plaintiffs contend that the revised allocation for former 1200
Series owners only exacerbates the "disparity" between owners of the 1200 Series and
owners of the N6 and N8 Series models.  (Suppl. Opp. at 5.)  Non-Settling Plaintiffs argue
that, in addition to providing gradations in the share allocation to former 1200 Series
owners, Settling Plaintiffs' Supplemental Memorandum also substantively changes which
former owners are eligible for shares in the first place.  (*Id.* at 4.)  Non-Settling Plaintiffs
contend that prior to the Addendum, former owners of the 1200 Series models were
eligible to submit a claim if they incurred "out of pocket expenses to repair and/or replace
the Gas Absorption Refrigerator or Cooling Unit, or incurred a related loss[.]"  (Second
Revised Agreement § II.D.5.ii.b.)  If adopted, however, the Addendum would modify this
language such that former 1200 Series owners can recover if they "incurred out of pocket

expenses to repair and/or to replace the Gas Absorption Refrigerator or Cooling Unit *due to a suspected cooling unit leak or as a precautionary measure regarding a potential cooling unit leak, . . . or incurred a related loss due to a suspected cooling unit leak*[.]" (Addendum § I.2.ii.b (emphasis added).)

Non-Settling Plaintiffs contend that "the new language allowing former 1200 Series owners to share in the settlement benefits for 'suspected' or 'potential' cooling unit leaks is not similarly extended to former owners of N6/N8 refrigerators . . . or to current owners of N6/N8 refrigerators under the proposed extended warranty." (Suppl. Opp. at 5.) As a starting point, former owners of the N6 and N8 models are excluded from the proposed class entirely and are therefore not bound by the settlement agreement. Thus, the settlement cannot create a disparity as to those individuals. Moreover, the Second Revised Agreement expressly provides that current owners of the N6 and N8 models will receive an extended warranty. (Second Revised Agreement § II.D.2.vii-viii.) This adequately offsets any disparity purportedly introduced by the revised language. Therefore, the Court rejects the arguments raised by the Non-Settling Plaintiffs as to the revised allocation plan for former owners of the 1200 Series.

As to adequacy of counsel, the Court must consider (1) the work completed to identify and investigate potential claims, (2) counsel's experience with class actions, (3) counsel's knowledge of applicable law, and (4) the resources that counsel is positioned to commit to representing the class. *See* Fed. R. Civ. P. 23(g)(1)(A). Here, Settling Plaintiffs have provided substantial evidence of proposed counsels' experience prosecuting and litigating consumer class actions. (*See, e.g.*, First Robinovitch Decl. ¶¶ 2-15; Ridout Decl. ¶¶ 3-20, Doc. 186.) Moreover, the extensive time and resources invested in this matter to date supports the conclusion that proposed class counsel will robustly prosecute the instant action.

In sum, the Court concludes that the iterative changes incorporated by the Settling Plaintiffs – i.e., the removal of certain proposed class representatives, the increased share

allotment to N6 and N8 owners, and the graded allocation of shares to the former owners of 1200 Series units – are sufficient to resolve the Court's earlier "adequacy" concerns. As a result, the Court finds that the Second Revised Agreement "fairly and adequately protect[s] the interests of the class," and, therefore, satisfies the requirements of Rule 23(a)(4). *Hanlon*, 150 F.3d at 1020.

### 2.   Requirements of Rule 23(b)(3)

Settling Plaintiffs seek class certification pursuant to Rule 23(b)(3). (Revised Mot. at 26-28.) Specifically, Settling Plaintiffs contend that "[t]he salient evidence necessary to establish Plaintiffs' claims is common to both the Class Representatives and all members of the Class – they would all seek to prove that Defendants' refrigerators have common defects and that Defendants' conduct was wrongful." (*Id.* at 26.) Likewise, Settling Plaintiffs contend, class certification in the instant action "conserves both individual and already-strapped judicial resources" while "protect[ing] putative class members' due process rights." (*Id.* at 27-28.) Therefore, Settling Plaintiffs argue that a class action is a superior method of resolving this dispute. (*Id.*)

The predominance requirement under Rule 23(b)(3) is "far more demanding" than the commonality requirement of Rule 23(a). *See In re ConAgra Foods*, 90 F. Supp. 3d at 981. "If common questions 'present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication,' then 'there is clear justification for handling the dispute on a representative rather than on an individual basis[.]'" *Id.* (citing *Hanlon*, 150 F.3d at 1022.) Here, the Court concludes that all putative class members share a common evidentiary challenge: proving that Defendants' refrigerators had a defect and showing that Defendants' conduct was wrongful. Because much of this evidence relates to conduct by the Defendants, rather than actions by individual class members, the Court concludes that a "significant aspect of the case" can be resolved in a single adjudication. *In re ConAgra Foods*, 90 F. Supp. 3d at 981. This satisfies the predominance requirement of Rule 23(b)(3).

The superiority requirement of Rule 23(b)(3) requires the Court to find that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *See* Fed. R. Civ. P. 23(b)(3). Several factors should guide the Court's inquiry: (1) the interest of members of the class in individually controlling the prosecution or defense of a separate action; (2) the extent and nature of any litigation concerning the controversy that has already been commenced; (3) the desirability of concentrating the litigation in a certain forum; and (4) the difficulties likely to be encountered in the management of the class. *Id.* Here, the size of each individual class members' recovery relative to the cost of litigating this complex action favors proceeding as a class action. *See, e.g.*, *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 671 (C.D. Cal. 2014) (discussing value of class action mechanism in cases where there is a sizeable disparity between a plaintiff's expected recovery and the cost of litigation). Moreover, the Settlement's robust notice provisions, which will inform each potential class member of his or her right to opt out, preserve the right of any individual who desires to possess greater control over the litigation. *See, e.g.*, *Spann v. J.C. Penney Corp.*, 307 F.R.D. 508, 532 (C.D. Cal. 2015). Finally, because adjudication of individual claims in this matter would require duplicative consideration of the same central questions, "class-wide litigation . . . will reduce litigation costs and promote greater efficiency." *Maddock v. KB Homes, Inc.*, 248 F.R.D. 229, 248 (C.D. Cal. 2007). Based on these facts, the Court concludes that Rule 23(b)(3)'s superiority requirement is satisfied.

### 3.  Conclusion Regarding Provisional Class Certification

In sum, the Court finds that Settling Plaintiffs have satisfied the requirements set forth in Rules 23(a) and 23(b)(3). Accordingly, the Court (1) provisionally certifies the proposed Settlement Class, (2) appoints James Pearce, Craig Post, George Frederick, Kathleen Frederick, Charles Chow, John Robinson, Randy Dupree, Ray Burkhead, Gordon Williamson, and Linda Pierson as Class Representatives, and (3) appoints Hart L.

1 Robinovitch, Christopher P. Ridout, Caleb Marker, J. Gordon Rudd, Jr. of Zimmerman

2 Reed, L.L.P. as Class Counsel.  (Renewed Mot. at 4.)

3 **III.    PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

4 Settling Plaintiffs request that the Court preliminarily approve the proposed

5 Settlement.  (Renewed Mot. at 19.)

6 **A.    Legal Standard**

7 "The initial decision to approve or reject a settlement proposal is committed to the

8 sound discretion of the trial judge."  *Officers for Justice v. Civil Serv. Comm'n of the City*

9 *and Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).  To preliminarily approve a proposed

10 class-action settlement, Federal Rule of Civil Procedure 23(e)(2) requires the Court to

11 determine whether the proposed settlement is fair, reasonable, and adequate.  *See* Fed. R.

12 Civ. P. 23(e)(2).  In turn, review of a proposed settlement typically proceeds in two stages,

13 with preliminary approval followed by a final fairness hearing.  *See* Federal Judicial

14 Center, *Manual for Complex Litigation*, § 21.632 (4th ed. 2004).

15 Although there is a "strong judicial policy that favors settlements, particularly

16 where complex class action litigation is concerned," *Linney v. Cellular Alaska P'ship*, 151

17 F.3d 1234, 1238 (9th Cir. 1998) (citation omitted), "[t]he purpose of Rule 23(e) is to

18 protect the unnamed members of the class from unjust or unfair settlements affecting their

19 rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008) (citation omitted).

20 Accordingly, "[t]o determine whether a settlement agreement meets these standards, a

21 district court must consider a number of factors, including: the strength of plaintiffs' case;

22 the risk, expense, complexity, and likely duration of further litigation; the risk of

23 maintaining class action status throughout the trial; the amount offered in settlement; the

24 extent of discovery completed, and the stage of the proceedings; the experience and views

25 of counsel; the presence of a governmental participant; and the reaction of the class

26 members to the proposed settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir.

27 2003) (internal citation and quotation marks omitted).  "The relative degree of importance

28

14

1   to be attached to any particular factor will depend upon and be dictated by the nature of the

2   claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances

3   presented by each individual case." *Officers for Justice*, 688 F.2d at 625.  "'It is the

4   settlement taken as a whole, rather than the individual component parts, that must be

5   examined for overall fairness,' and 'the settlement must stand or fall in its entirety.'"

6   *Staton*, 327 F.3d at 960 (alterations omitted) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d

7   1011, 1026 (9th Cir. 1998)).

8          In addition to these factors, where "a settlement agreement is negotiated prior to

9   formal class certification," the Court must also satisfy itself that "the settlement is not the

10  product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab.*

11  *Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011) (quotation marks omitted).  In such

12  circumstances, courts apply "a higher standard of fairness and a more probing inquiry than

13  may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864

14  (9th Cir. 2012) (internal quotation marks and citation omitted).  Accordingly, courts "must

15  be particularly vigilant not only for explicit collusion, but also for more subtle signs that

16  class counsel have allowed pursuit of their own self-interests and that of certain class

17  members to infect the negotiations." *In re Bluetooth Headset*, 654 F.3d at 947.  Such signs

18  include (1) "when counsel receive a disproportionate distribution of the settlement,"

19  (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of

20  attorneys' fees separate and apart from class funds," and (3) "when the parties arrange for

21  fees not awarded to revert to defendants rather than be added to the class fund." *Id.*

22  (quotation marks omitted).

23         At this preliminary stage and because Class Members will receive an opportunity to

24  be heard on the settlement, "a full fairness analysis is unnecessary[.]" *Alberto v. GMRI,*

25  *Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008).  Instead, preliminary approval and notice of

26  the settlement terms to the proposed class are appropriate where "[1] the proposed

27  settlement appears to be the product of serious, informed, non-collusive negotiations,

28

[2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with the range of *possible* approval[.]"  *In re Tableware Antitrust Litig*., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (emphasis added) (internal quotation marks and citation omitted); *see also Acosta v. Trans Union*, *LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) ("To determine whether preliminary approval is appropriate, the settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on the Final Approval, after such time as any party has had a chance to object and/or opt out." (emphasis in original)).

### B.   <u>Discussion</u>

#### 1.   Strength of Plaintiffs' Case

Basic to the process of deciding whether a proposed compromise is fair and equitable "is the need to compare the terms of the compromise with the likely rewards of litigation."  *Acosta*, 243 F.R.D. at 389 (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968)).  *See also In re Tableware Antitrust Litig*., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) ("To evaluate adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." (citations omitted)).  "In so doing, a court must 'apprise [itself] of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated."  *Acosta*, 243 F.R.D. at 389 (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982)).

Here, although Plaintiffs contend their case is strong, Plaintiffs concede that significant risks exist.  (Mem. at 27-28, Doc. 184.)  In particular, Plaintiffs admit that "the defendant most likely to be found liable here should the case proceed is Norcold – the smallest Defendant with the shallowest finances."  (*Id.* at 28.)  For their part, Defendants contest the idea that Norcold is the alter ego of either Thetford or DKM, a fact that, if true, would render Plaintiffs unable to prevail against these two entities at trial.  (*See, e.g.*, Opp. to Class Cert. Mot. at 33, Doc. 134.)  Moreover, to prevail, Plaintiffs would need to

succeed at several stages: class certification, summary judgment, and, ultimately, at trial. Given the complexity of this case and the evidentiary challenges that exist, success at each of these stages is no small feat – and certainly not an inexpensive one.  "In light of these considerations, the uncertainties, risks, and additional costs inherent to further litigation weigh in favor of granting final approval of the proposed Settlement." *Roberti v. OSI Systems, Inc.*, No. CV 1309174 MWF MRW, 2015 WL 8329916, at *4 (C.D. Cal. Dec. 8, 2015).  Therefore, this factor favors preliminary approval.

### 2.  Risk, Expense, Complexity, and Likely Duration of Further Litigation

There exists a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998).  This case was initially filed on December 12, 2012 and has been pending before the Court for more than three years.  There is little doubt that, absent a settlement, this case will continue for some time to come.  Moreover, the Court has previously recognized "the complex nature of this case."  (Order at 1, Doc. 404.)   These facts strongly support the conclusion that a fair and reasonable settlement will benefit the entirety of the class.  *See, e.g.*, *Hightower v. JPMorgan Chase Bank, N.A.*, No. CV 11-1802 PSG (PLAx), 2015 WL 9664959, at *6 (C.D. Cal. Aug. 4, 2015).  Therefore, this factor likewise favors preliminarily approving the Second Revised Agreement.

### 3.  Risk of Maintaining Class Action Status Throughout Trial

A closely related factor requires the Court to assess the likelihood that Plaintiffs can maintain certification of the class through the duration of trial.  *See Staton*, 327 F.3d at 959.  As Plaintiffs concede, "certifying a class for litigation purposes could present some difficulties."  (Mem. at 26.)  Although the Court need not rule on the merits of the arguments, Defendants raise several independent grounds for denying certification of the class.  (*See generally* Opp. to Renewed Class Cert., Doc. 134; Opp. to Class Cert., Doc. 73.)  These arguments are adequate to "introduce at least some risk of failing to maintain

1   class certification[,]" and, as a result, this factor favors preliminary approval.  *Klee v.*

2   *Nissan N. Am., Inc.*, No. CV 12-08238 AWT (PJWx), 2015 WL 4538426, at *7 (C.D. Cal.

3   July 7, 2015).

4                   **4.  Amount Offered in Settlement**

5           The Court finds the amount offered in the settlement to be reasonable.  Under the

6   Second Revised Agreement, Defendants would pay $36 million into a settlement fund for

7   the benefit of the class.  This amount is $3 million higher than what was initially proposed

8   to the Court by the Parties.  (*Compare* Agreement § II.D.1, Doc. 185-5 *with* Second

9   Revised Agreement at 23-26, Doc. 412-1.)  Moreover, this amount takes into account the

10  evidence proffered by Defendants that a larger settlement poses meaningful risks of

11  bankruptcy and default for Norcold.  (Defs' Renewed Mem. at 1; Robinovitch Decl. ¶ 11,

12  Doc. 412.)  Such an outcome would substantially delay, and potentially even preclude, a

13  positive outcome for many putative class members.  Finally, as discussed previously, the

14  value of the settlement must be considered in light of the anticipated risks of further

15  litigation.  *Roberti*, 2015 WL 8329916 at *4-5 (citation omitted).  In sum, the Court finds

16  that the $36 million settlement amount favors preliminary approval of the Second Revised

17  Agreement.

18                   **5.  Stage of the Proceedings**

19          "This factor requires the Court to evaluate whether 'the parties have sufficient

20  information to make an informed decision about settlement.'"  *Id.* at *5.  Here, Settling

21  Plaintiffs have undertaken "substantial investigation," including "legal research, fact-

22  gathering, and formal discovery" in support of this litigation.  (Mem. at 23.)  Formal

23  discovery has involved the review of tens of thousands of pages of documents, depositions,

24  and consultation with multiple experts.  (*Id.*)  Based on these facts, the Court finds that the

25  Parties have sufficiently developed the record such that an "informed decision about

26  settlement" can be made.  *Roberti*, 2015 WL 8329916 at *5.  This factor also favors

27  preliminary approval.

28

1

**6.   Experience and Views of Counsel**

2          As courts in the Ninth Circuit have recognized, "[t]he recommendations of

3   plaintiffs' counsel should be given a presumption of reasonableness."  *In re American*

4   *Apparel, Inc. v. S'holder Litig.*, No. CV 10-06352 MMM (JCGx), 2014 WL 10212865, at

5   *14 (C.D. Cal. July 28, 2014) (citation omitted).  This presumption is justified because

6   "[p]arties represented by competent counsel are better positioned than courts to produce a

7   settlement that fairly reflects each party's expected outcome in litigation."  *Id.* (citation

8   omitted).  Here, Settling Plaintiffs' current attorneys have provided substantial evidence of

9   their experience prosecuting and litigation consumer class actions.  (*See, e.g.*, First

10  Robinovitch Decl. ¶¶ 2-15; Ridout Decl. ¶¶ 3-20.)  These attorneys collectively "endorse

11  the Settlement as being fair, reasonable, and adequate" pursuant to Rule 23(e)(2).  (Mem.

12  at 29.)

13          However, our analysis under this factor must also consider that in or around July

14  2014, Terrence A. Beard, who had previously represented the putative class, refused to

15  consent to the settlement and thereafter opposed each proposed settlement agreement on

16  behalf of the Non-Settling Plaintiffs.  (Notice of Intent to Object at 1-2, Doc. 176.)  Over

17  the next twenty months, Beard, joined later by other counsel, strenuously objected to each

18  iteration of the settlement agreement.  (*See, e.g.*, Opp. to Preliminary App., Doc. 202; Opp.

19  to Revised Preliminary App., Doc. 259; Opp. to Renewed Mot. for Preliminary App., Doc.

20  429; Opp. to Supp. Mem., Doc. 451.)  In fact, Beard not only continues to object to the

21  Second Revised Agreement as modified by the Addendum, but asserts that "the proposed

22  settlement is getting worse for class members – not better."  (Opp. to Supp. Mem. at 8.)

23  Even at this advanced stage of negotiations, Beard contends that "a denial of the proposed

24  settlement will allow the parties to return to the bargaining table . . . and fashion a

25  settlement that actually addresses the Defendants' defective products, provides meaningful

26  relief to maximum number of class members, and which can actually pass muster as fair,

27  reasonable, and adequate[.]"  (*Id.*)

28

1         At the heart of Beard's and the Non-Settling Plaintiffs' objections are two different

2   sets of arguments: the first, arguments concerning alleged deficiencies in the Second

3   Revised Agreement; and, the second, arguments in support of an alternative proposed

4   settlement that incorporates greater injunctive relief.  (Opp. to Renewed Mot. for

5   Preliminary App. at 7-15 (describing inadequate size of settlement and unfair plan of

6   distribution), 15-23 (detailing an alternative proposed settlement premised on injunctive

7   relief); Opp. to Supp. Mem. at 1-5 (challenging inclusion of former Series 1200 owners in

8   class and arguing Addendum introduces both subjectivity and disparity into proposed

9   settlement).)

10        As to the alleged deficiencies in the Second Revised Agreement and Addendum,

11  Beard and the Non-Settling Plaintiffs raise five arguments.  First, the Non-Settling

12  Plaintiffs contend that the $36 million size of the settlement reflects only a "paltry 9%

13  increase in the gross settlement fund[.]"  (Opp. to Renewed Mot. for Preliminary App. at

14  8-9.)  In a second, related argument, the Non-Settling Plaintiffs posit that the projected size

15  of each individual claimant's recovery will, at best, cover only a fraction of replacement

16  costs.  (*Id.* at 13-15.)  Neither of these arguments is persuasive.  Although the Non-Settling

17  Plaintiffs may be dismayed by Defendants' financial position, Defendants have

18  nevertheless provided numerous declarations substantiating it.  (*See, e.g.*, Chamberlin

19  Decl., Doc. 415; Farnan Jr. Decl., Doc. 418; Phillips Decl., Doc. 419.)  As the Court made

20  clear at oral argument, the Court accepts Defendants' contention, supported by evidence,

21  that $36 million represents their maximum contribution.  For the same reason, the Non-

22  Settling Plaintiffs' argument concerning individual claimants is unavailing.  While the

23  final recovery available to individual claimants is contingent on the claims rate, the Court

24  finds that the aggregate size of the settlement – and, relatedly, each individual claimant's

25  recovery – is fully supported by the reality of Defendants' financial position.

26        The Non-Settling Plaintiffs identify three other purported deficiencies in the

27  proposed settlement.  First, they protest that the proposal excludes owners of Series 1200

28

1    units manufactured between 1997 and 2002, which, according to the Non-Settling

2    Plaintiffs, are the oldest and thus highest risk units.  (Opp. to Renewed Mot. for

3    Preliminary App. at 10-12.)  Compounding this error of omission, according to the Non-

4    Settling Plaintiffs, is the proposed settlement's allocation of shares to former owners of the

5    Series 1200, who no longer face any on-going risk of fire.  (*Id.* at 12.)  Second, the Non-

6    Settling Plaintiffs raise concerns regarding the Second Revised Agreement's

7    undifferentiated award of twenty-five shares to former owners who claim even a minimal

8    expense related to their unit.  (*Id.*)  Each of these arguments is unconvincing.  Current or

9    former owners of a Series 1200 unit manufactured between 1997 and 2002 are excluded

10   from the settlement and retain all their rights against Defendants.  As a result, their

11   exclusion from the proposed settlement is a neutral factor.  Moreover, the rationale for

12   including former Series 1200 owners in the settlement is to resolve their potential claims

13   for economic loss, which is a reasonable objective for both parties.  Furthermore, the

14   Defendants and Settling Plaintiffs have, in the Addendum, provided for a differentiated

15   award of shares to former owners based on the size of the expense incurred.  Therefore,

16   these arguments by the Non-Settling Plaintiffs are not persuasive.

17          Finally, as discussed in greater detail, *supra* at 9-11, the Non-Settling Plaintiffs

18   argue that changes proposed in the Addendum introduce subjective elements into the

19   claims process.  (Opp. to Supp. Mem. at 4-6.)  However, these relatively minor issues,

20   should they arise at all, are properly resolved by the claims administrator.

21          In the alternative, the Non-Settling Plaintiffs assert that the proposed settlement

22   "completely overlook[s] the better settlement option in this case, which is simply to have

23   Norcold replace the faulty pre-2012 Series 1200 cooling units with new cooling units and

24   inspect and warranty the N6/N8 Series units."  (Opp. to Renewed Mot. for Preliminary

25   App. at 15-23.)  As an initial matter, the Non-Settling Plaintiffs err when they assert that

26   there is, in fact, a "better settlement option" in this case.  There is no other proposed

27   settlement before the Court.  Therefore, these arguments are misdirected.  More broadly,

28

1    however, the Non-Settling Plaintiffs' argument reflects a misunderstanding of the Court's

2    role in approving class action settlements.  *See Hanlon*, 150 F.3d at 1027 ("Again and

3    again, the objectors reiterated that their primary concern was the safety of the vehicles and

4    the prevention of injury.  Of course, it is possible . . . that the settlement could have been

5    better.  But this possibility does not mean the settlement presented was not fair, reasonable

6    or adequate.  Settlement is the offspring of compromise; the question we address is not

7    whether the final product could be prettier, smarter or snazzier, but whether it is fair,

8    adequate and free from collusion.").

9        In sum, the Court recognizes that the attorneys in this case have starkly different

10   views on the reasonableness of the proposed settlement.  However, having carefully

11   considered – and rejected – the arguments raised by the Non-Settling Plaintiffs and their

12   attorneys, the Court concludes that the reasoned views of Settling Plaintiffs' attorneys are

13   entitled to greater weight.  Therefore, the Court finds this factor weighs in favor of

14   approving the proposed settlement.

15          **7.  Signs of Collusion**

16       Because this settlement agreement is negotiated prior to formal class certification,

17   the Court must apply a "higher standard of fairness and a more probing inquiry than may

18   normally be required under Rule 23(e)" to ensure that the settlement is not the product of

19   collusion.  *Dennis*, 697 F.3d at 864 (internal quotation marks and citation omitted).  This

20   heightened standard acknowledges that "settlement classes create especially lucrative

21   opportunities for putative class attorneys to generate fees for themselves without any

22   effective monitoring by class members who have not yet been apprised of the pendency of

23   the action."  *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig*., 55

24   F.3d 768, 788 (3d Cir. 1995).

25       Here, the Second Revised Agreement is the product of an extensive iterative

26   process by and among the Court and the Parties.  The Court has repeatedly identified

27   deficiencies in the proposed settlements and has denied approval without prejudice.  (*See*

28

First Order (denying without prejudice Plaintiffs' Motion for Preliminary Approval); Suppl. Mot. Order (denying without prejudice Settling Plaintiffs' Supplemental Motion for Preliminary Approval).)  Furthermore, throughout this period, the Parties have engaged in extensive, arms-length negotiations during mediation sessions before the Hon. Carl West (Ret.).  (Mem. at 23.)  Based on these facts, the Court concludes that the Second Revised Agreement is not the product of collusion.

### 8.   Conclusion Regarding Class Settlement

For the reasons stated above, the Court preliminarily approves the Second Revised Agreement.  Based on the declarations provided, the Court also appoints Kurtzman Carson Consultants, LLC as Class Administrator.  (*See* Rosenthal Decl. ¶¶ 4-6, Doc. 230.)

## IV.   PRELIMINARY APPROVAL OF CLASS NOTICE FORM AND METHOD

Settling Plaintiffs request the Court to approve the proposed Notice Plan. (Renewed Mem. at 19.)

### A. Legal Standard

An additional aspect of the Court's role in reviewing a proposed settlement is "to ensure that all class members receive adequate notice of the proposed settlement."  *In re Toys R Us-Del., Inc. – Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 448 (C.D. Cal. 2014).  Rule 23(e) requires a Court to "direct notice [of the settlement] in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).  *See also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 945-46 (9th Cir. 2015).  "The notice given must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  *In re Toys R Us-Del., Inc.*, 295 F.R.D. at 448.  Finally, for classes certified pursuant to Rule 23(b)(3), "[r]easonable settlement notice may require individual notice in the manner required by Rule 23(c)(2)(B)[.]" Fed. R. Civ. P. 23 advisory committee's note.  Pursuant to Rule

23(c)(2)(B), the notice must include: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."  Fed. R. Civ. P. 23(c)(2)(B).

### B. Discussion

The Second Revised Agreement, as modified by the Addendum, states that "Class Notice will be accomplished through a combination of the Short Form Notices, Summary Settlement Notice, notice through the Settlement Website, Long Form Notice, Internet Notice, and other applicable notice[.]"  (Second Revised Agreement § III.B.)  Proposed versions of the Long Form Notice, the Short Form Notice, the Summary Settlement Notice, and the Internet Notice have been provided to the Court by the Settling Plaintiffs. (Addendum, Exs. A-C, Doc. 447-1 (amended versions of the Long Form Notice, the Short Form Notice, and the Summary Notice); Robinovitch Decl., Ex. 4, "Internet Notice," Doc. 412-5.)  We address each of the proposed notices below.

### 1. Short Form Notices

The Short Form Notice will be sent via U.S. Mail to the addresses on file for all class members.  (Second Revised Agreement § III.B.1.)  Each Short Form Notice details the terms of the settlement and sets forth the rights of class members.  (Addendum, Ex. B, "Short Form Notice," at 2, Doc. 447-1.)  Significantly, the Short Form Notice informs class members how to obtain the Long Form Notice and the requisite Claim Forms.  (*Id.*) The Short Form Notice also provides that "[t]he Long Form Notice describes how to exclude yourself" from the class.  (*Id.*)  The Second Revised Agreement further obligates the Claims Administrator to undertake several additional steps in the event the notices are returned to sender.  (Second Revised Agreement § III.B.1.)  Finally, the Court notes that the Short Form Notice includes safety warning language as set forth in the Addendum.

1    However, after careful review, the Court identifies two shortcomings with the proposed

2    Short Form Notice.

3         First, although the Notice informs the potential class member of his or her right to

4    "object to the settlement terms," there is no clear statement alerting the reader that they

5    "may enter an appearance through an attorney," as required by Rule 23(c)(2)(B)(iv).

6    Second, the Notice is far too dense and, as a result, will be difficult for the average class

7    member to read and understand.  The content of the Notice should be condensed and re-

8    organized under clear headings such that a reader unfamiliar with the lawsuit can readily

9    understand the salient information.

10                    **2.  Summary Notice**

11        In contrast to the Short Form Notice, the Summary Notice (Addendum, Ex. C, Doc.

12    447-1) – which contains much of the same content – is easy to read and readily conveys

13    the salient information.  No later than thirty days after the Court preliminarily approves the

14    settlement, the Claims Administrator "shall cause the publication of the Summary

15    Settlement Notice" in several newspapers and trade publications.  (Second Revised

16    Agreement § III.B.2.)

17                    **3.  Long Form Notice**

18        The Long Form Notice is likewise well-organized and understandable.  (Addendum,

19    Ex. A, "Long Form Notice," Doc. 447-1.)  The Long Form Notice sets forth a detailed

20    explanation of the underlying lawsuit, including the nature of the class claims.  (*Id.* at 3.)

21    Moreover, in a section entitled "Excluding Yourself From the Settlement by Opting-Out,"

22    the Notice states the "time and manner" for requesting an exclusion and the binding effect

23    of the settlement if one does not opt-out.  (*Id.* at 11-12.)  Additionally, the Notice expressly

24    states that potential class members are permitted to have an attorney appear on their behalf.

25    (*Id.* at 12.)  Accordingly, the requirements of Rule 23(c)(2)(B) are satisfied.  Relatedly, the

26    Court finds that the proposed Claim Form is sufficiently clear and concise to support

27    approval.  (Addendum, Ex. D, Doc. 447-1.)  The Court further concludes that the

28

1  framework set forth in the proposed Claims Review Protocol is reasonable.  (Addendum,
2  Ex. E, "Claims Review Protocol," Doc. 447-1.)

3  **4.    Internet Notice**

4  The Second Revised Agreement likewise obligates the Claims Administrator to
5  publish Internet Notice on several RV-user related websites.  (Second Revised Agreement
6  § III.B.3.)  The Internet Notice, although short, provides notice to potential class members
7  of the fact of settlement, and provides ready access to links containing further information.
8  (Internet Notice at 1.)  The Claims Administrator must publish Internet Notice no later
9  than 30 days after the Court preliminarily approves the settlement.  (Second Revised
10  Agreement § III.B.3.)  The Internet Notice shall run at a minimum of "50 million banner
11  advertisement impressions and 50 million text advertisement impressions[.]"  (*Id.*)

12  **C. <u>Conclusion Regarding Class Notice</u>**

13  In sum, the Court approves the method and content of notice as to the Long Form
14  Notice, the Summary Notice, and the Internet Notice.  The Court ORDERS Settling
15  Plaintiffs to submit a revised version of the Short Form Notice that addresses the
16  aforementioned deficiencies within ten (10) days of this Order.

17  **V.    <u>CONCLUSION</u>**

18  For the reasons stated above, the Court (1) PRELIMINARILY APPROVES the
19  Second Revised Agreement, as amended by the Addendum; (2) PROVISIONALLY
20  CERTIFIES the proposed class; (3) APPOINTS James Pearce, Craig Post, George
21  Frederick, Kathleen Frederick, Charles Chow, John Robinson, Randy Dupree, Ray
22  Burkhead, Gordon Williamson, and Linda Pierson as Class Representatives, and (4)
23  appoints Hart L. Robinovitch, Christopher P. Ridout, Caleb Marker, J. Gordon Rudd, Jr. of
24  Zimmerman Reed, L.L.P. as Class Counsel, and Kurtzman Carson Consultants, LLC as the
25  Claim Administrator.  The Court APPROVES in part the proposed method and form of
26  class notice, but ORDERS Settling Plaintiffs to submit a revised version of the Short Form
27  Notice within ten (10) days of this Order.

28

1       Additionally, the Court sets a fairness hearing for **Friday, June 3, 2016** to

2  determine whether the settlement should be finally approved as fair, reasonable, and

3  adequate to Class Members.  Plaintiffs shall file their motion for final approval no later

4  than **May 6, 2016**.  Class Counsel shall file any supplemental brief in support of their

5  application for fees and costs **no later than 15 days before** the Notice Response Deadline.

6  The Court reserves the right to continue the date of the fairness hearing without further

7  notice to Class Members.

8

9

10

11  DATED: March 29, 2016

12                           JOSEPHINE L. STATON
                               UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28