<table>
<tr><td>

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFERY ETTER; SUSAN ETTER; PAUL KAHLER; FRAN CURTIS; MICHELLE CURTIS; LESLIE CRAWSHAW; RICHARD KAYLOR; BRIAN MCBRIDE; DENNIS OSHA; JAMES PEARCE; CRAIG POST; RAYMOND ROLLE, SR; EMIL VARGO; LEONARD SOMERVILLE; ORRENE SOMERVILLE; RICHARD SPEARS; ALICE KNIGHT; ALAN BURKHART; SANDRA BURKHART; GEORGE FREDERICK; KATHLEEN FREDERICK; ALAN GREAGER; and, LINDA GREAGER, individually, and on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br>  v.<br><br>THETFORD CORPORATION, a Delaware corporation; NORCOLD, INC., a Delaware corporation; THE DYSON-KISSNER-MORAN CORPORATION, a Delaware corporation; and, DOES 1 to 50, inclusive,<br><br>       Defendants. | CASE NO. SACV 13-00081-JLS (RNB)<br><br>**ORDER APPORTIONING THE COURT'S AWARD FOR ATTORNEYS' FEES AND EXPENSES (Docs. 480, 492)** |

</td></tr>
</table>

1

| | |
|---|---|
| *This order also relates to the following related action:*<br><br>CHARLES CHOW, JOHN ROBINSON, RANDY DUPREE, RAY BURKHEAD, LINDA PIERSON, and GORDON WILLIAMSON, individually, and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NORCOLD, INC., a Delaware corporation; THETFORD CORPORATION, a Delaware corporation; THE DYSON-KISSNER-MORAN CORPORATION, a Delaware corporation; and DOES 1 to 50, inclusive.<br><br>Defendants. | CASE NO. SACV 14-06759-JLS (RNB) |

Before the Court are opposing motions over attorneys' fees and costs filed by Class Counsel and Non-Settling Plaintiffs' Counsel. (Class Counsel Mot., Doc. 480; Non-Settling Plaintiffs' Attorneys Fees and Costs Mot., Doc. 492.)

## I. BACKGROUND

On October 25, 2016, the Court granted Settling Plaintiffs' Motion for Final Approval and granted in part Class Counsel's Motion for Attorneys' Fees. The Court found "that an award of twenty-five percent, or $9 million [was] appropriate and reasonable in this action." (Final Approval Order at 44, Doc. 540.) The Court, however, "defer[red] consideration of how to equitably apportion the attorneys' fees award" among Class Counsel and Non-Settling Plaintiffs' Counsel because they were amenable to mediation. (*Id.*) Counsel for both Settling and Non-Settling Plaintiffs participated in an unsuccessful in-person mediation on November 14, 2016 before Martin Quinn at JAMS in San Francisco. (Settling Plaintiffs' Notice to Court Re Mediation at 1, Doc. 544.) On November 21, 2016, attorneys for Settling and Non-Settling Plaintiffs requested that the Court make a final ruling on apportionment of the attorneys' fees award. (*Id.*; Non-Settling Plaintiffs' Notice to Court Re. Mediation at 1, Doc. 545.) On November 22, 2016, the Court ordered Class Counsel and Non-Settling Plaintiffs' Counsel to submit excel versions of their time entries and expenses by December 2, 2016 for the Court's convenience in calculating attorneys' fees and costs. (Order Re Attorneys' Fees at 1, Doc. 546.)

Although the Court requested only excel versions of the billed hours and expenses already submitted, both Class Counsel and Non-Settling Plaintiffs' Counsel included new entries in their excel spreadsheets. The Court will exclude these additional entries in apportioning the Court's award of attorneys' fees and expenses because the Court already provided Counsel for Settling and Non-Settling Plaintiffs a full and fair opportunity to brief their proposals. If Class Counsel or Non-Settling Plaintiffs' Counsel wanted to seek apportionment of the fee award based on anticipated future hours or expenses, they could have included them as part of their proposals. The Court requested excel versions of the

billed expenses and hours only to make calculation of fees and expenses more convenient, not as a prelude to yet another round of briefing in this case.[1]

## II. APPORTIONMENT OF FEE AWARD

### A. Legal Standard

Rule 23(h) authorizes a court to award "reasonable attorneys' fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). For objectors to be entitled to a fee award, their objections must "result in an increase to the common fund." *Rodriguez v. Disner*, 688 F.3d 645, 658 (9th Cir. 2012). When objectors "do not increase the fund or otherwise substantially benefit the class members," they have no right to any fees, "even if they bring about minor procedural changes in the settlement agreement." *Id.* at 658-59 (quoting *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002)); *see Hartless v. Clorox Co.*, 273 F.R.D. 630, 647 (S.D. Cal. 2011), *aff'd in part*, 473 F. App'x 716 (9th Cir. 2012) (noting that an objector's benefit must be "actual and concrete not conceptual or doctrinal").

### B. Discussion

Class Counsel request that this Court apportion the fee award based on billed hours but exclude any hours or expenses Terrence Beard billed after Class Counsel and Defendants executed the initial terms sheet on July 22, 2014. (Reply at 4, 13, Doc. 521.) Class Counsel contend that Hagens Berman should be awarded nothing because its involvement in the suit consisted of attempting to force Class Counsel to cede control of this class action, joining Beard's later objections, and brainstorming an "alternative" settlement agreement with Beard. (*Id.* at 21-22.) Non-Settling Plaintiffs' Counsel, by

---

[1] Although the Court did not consider any additional entries included on the excel spreadsheets, the Court ordered the parties to lodge the excel versions submitted to the Court on the docket. (Order, Doc. 548.)

4

contrast, seek half of the Court's award of attorneys' fees and additional compensation for their expenses. (Non-Settling Mem. at 1, Doc. 492.)

After a careful consideration of each firm's contributions to this class action settlement, the Court will apportion attorneys' fees based on each firm's lodestar figure but will exclude the hours and expenses that Beard billed after the Court's second denial of preliminary approval and will not allocate Hagens Berman a share of the fee award. Based on these deductions as well as others detailed below, the Court will apportion the fee award as follows:

| | **Hours Billed** | **Expenses Claimed** | **Hours Subtracted** / **Expenses Subtracted** | **Total Hours Credited** / **Expenses Credited** | **Total Fee Award** / **Lodestar Multiplier** |
|---|---|---|---|---|---|
| **Zimmerman Reed, LLP** | $4,233,553.55[2] (8,649.01 hrs.) | $180,462.45[3] | $67,143.00 (106.77 hrs.) | $4,166,410.55 (8,542.24 hrs.) | $7,353,093.47 (81.7%) |
| | | | $0.00 | $180,462.45 | 1.69 |
| **Law Offices of Terrence Beard** | $1,760,070.00 (2,933.45 hrs.) | $62,936.63 | $175,044.00 (291.74 hrs.) | $1,585,026.00 (2,641.71 hrs.) | $1,646,906.53 (18.3%) |
| | | | $1,056.10 | $61,880.53 | 1.0 |
| **Hagens Berman Sobol Shapiro, LLP** | $208,652.40 (348.10 hrs.) | $18,268.68 | $208,652.40 (348.10 hrs.) | $0.00 (0 hrs.) | $0 (0.0%) |
| | | | $18,268.68 | $0.00 | 0.0 |
| **Total** | | | | $5,993,779.53 | $9,000,000.00 |

---

[2] In verifying Class Counsel's calculations, the Court determined that Zimmerman Reed and Ridout Lyon + Ottoson slightly overreported their total hours and underreported their lodestar. The Court reduced the total hours by 9.9 to reflect the actual total, but did not adjust their underreported lodestar. Simply put, the Court will not credit a firm with more hours than the firm credits itself.

[3] The Court calculated a slightly higher total for Class Counsel's expenses but kept the lower number requested in Class Counsel's Fee Application.

### 1. Framework for Apportioning the Fee Award

As an initial matter, the Court rejects the proposal from Non-Settling Plaintiffs' Counsel to divide the fee award equally, rather than to apportion the fee award based on each firm's lodestar figure. In essence, Beard and the handful of late entrants from Hagens Berman argue they should receive as much in compensation as more than thirty other practitioners working for two firms combined. While Non-Settling Plaintiffs' Counsel contend that a lodestar-based allocation does not appropriately reflect Beard's contributions to the class action, the decisive factor in reaching this settlement agreement was Zimmerman Reed and Ridout Lyon + Ottoson's experience in class action litigation. These firms' experience allowed Plaintiffs to frame their suit in a manner that could be credibly brought as a class action. Beard had no complex class action experience before this suit, and his unfamiliarity became increasingly apparent as this litigation progressed. Further, a lodestar-based allocation appropriately reflects the human capital and infrastructure needed to prosecute a complex class action. As a solo practitioner, Beard lacked these crucial resources. To apportion the fee award equally would translate into Non-Settling Plaintiffs' Counsel receiving a high positive multiplier while the firms that actually achieved this settlement agreement would incur a substantial negative multiplier. Non-Settling Plaintiffs' other concerns with a lodestar-based allocation—such as Non-Settling Plaintiffs' supposed improvements to the Settlement Agreement—can be addressed by adjusting each firm's lodestar figure. Accordingly, the Court finds that a lodestar-based allocation is a more objective and reliable basis for apportioning the Court's fee award. *Cf. Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010) (noting that a lodestar approach is more reliable, "readily administrable," and "objective").

### 2. Terrence Beard's Allocation

In their proposal, Class Counsel contend that the Court should exclude Beard's billed hours and expenses after the parties executed the initial terms sheet on July 22, 2014. (Class Counsel Reply at 13, Doc. 521.) The Court disagrees. Beard's objections to

1  Settling Counsel's first motion for preliminary approval helped remedy potential conflicts
2  of interest resulting from proposed class representatives' individual settlement agreements.
3  More importantly, Beard's objections to Settling Plaintiffs' second motion for preliminary
4  approval and request for additional discovery helped facilitate a three-million-dollar
5  increase in the settlement fund. Of course, Beard did not participate in the second round of
6  settlement negotiations, but his objections were a substantial factor in the Court's second
7  denial of preliminary approval and the three-million-dollar increase in the settlement fund.
8  Accordingly, the Court finds that his lodestar figure should reflect the hours and expenses
9  related to these objections.

10       The Court, however, does not find that Beard's objections following the Court's
11  second denial of Preliminary Approval have substantially benefited the class. In his third
12  series of objections to Settling Plaintiffs' motion for preliminary approval, Beard renewed
13  his attacks on the amount offered in settlement despite considerable evidence establishing
14  Defendants' fragile financial position. (*See* Preliminary Approval Order at 20, Doc. 468.)
15  The Court found Beard's other objections were either "not persuasive" or entirely
16  speculative. (*See id.* at 21.) Even less helpful was Beard's extensive briefing on a wildly
17  implausible "better settlement option" that was not grounded in a realistic appraisal of the
18  likely costs of the proposed injunctive relief or the weaknesses of Plaintiffs' case. (*See*
19  Opp. to Renewed Mot. for Preliminary App. at 15-23, Doc. 429.) More broadly, Beard's
20  proposal demonstrated a fundamental "misunderstanding of the Court's role in approving
21  class action settlement[s]" because the Court has no authority under Rule 23 to impose an
22  "alternative" settlement agreement on the parties. (Preliminary Approval Order at 22, Doc.
23  468.) The only modification to the Settlement Agreement that was consistent with Beard's
24  objections was the revised allocation structure for former 1200 Series owners. (*See id.* at 5-
25  6, 21.) But Beard dedicated only one short paragraph to this issue in his twenty-three page
26  brief (*see* Opp. to Renewed Mot. for Preliminary App. at 12, Doc. 429), the Court had
27  already identified this as a potential concern, and this change to the Settlement Agreement
28

7

1  is far too minor to warrant compensation. *See Vizcaino*, 290 F.3d at 1051-52. Finally,
2  Beard's objections to Settling Plaintiffs' motion for final approval were mostly a rehashing
3  of his previous objections; his handful of new objections—including his argument that RV
4  owners are supposedly not as technologically savvy as Prius owners and that the claims
5  rate was too low—lacked merit and resulted in no benefit to the class. (*See generally*
6  Opp'n Final Approval at 2-17, Doc. 506.)

7        Ultimately, the Court is left with the unmistakable impression that Beard's more
8  recent objections are part of a not-so-subtle effort to extract a higher portion of a fee award
9  from Class Counsel. As the Court explained in some detail in its Final Approval Order,
10 after the Court granted Settling Plaintiffs' third motion for preliminary approval, Beard
11 reached out to Class Counsel to propose a "gentlem[a]n's agreement[]," in which Beard
12 would drop his clients' objections in return for a greater share of the fee award. (*See* Final
13 Approval Order at 28-29; Email, Exh. D, Doc. 480-5.) Because the Court sees no reason
14 why it should reward Beard for these efforts at the expense of Class Counsel, the Court
15 shall exclude all hours and expenses that Beard billed after the Court's second denial of
16 preliminary approval on June 15, 2015.

### 3. Hagens Berman's Allocation

18       The Court finds that Hagens Berman's involvement in this suit did not result in a
19 substantial benefit to class members. As is evident from the record, Hagens Berman
20 entered this suit in an attempt to wrest control from Class Counsel after the Court denied
21 preliminary approval. Steve Berman, Managing Partner at Hagens Berman, did not file an
22 application to appear *pro hac vice* until May 28, 2015 (App., Doc. 398), and Thomas E.
23 Loeser, a partner at Hagens Berman, first made an appearance on June 2, 2015 (Notice,
24 Doc. 400). Beard submitted his opposition briefing to Settling Plaintiffs' second motion for
25 preliminary approval before Hagens Berman made its appearance, and Non-Settling
26 Plaintiffs' Counsel have not identified any contributions Hagens Berman made to Non-
27 Settling Plaintiffs' objections to the second motion for preliminary approval that Beard

1 could not have raised on his own. One day after the Court denied Settling Plaintiffs'
2 second motion for preliminary approval, Hagens Berman sent a letter to Class Counsel,
3 threatening to seek appointment as lead counsel unless Class Counsel agreed to let Hagens
4 Berman and Beard serve as putative class co-counsel. (Letter, Doc. 490-3.) After Class
5 Counsel rejected Hagens Berman's demand, Hagens Berman helped develop the farfetched
6 "better settlement option" with Beard and joined Beard's objections to Settling Plaintiffs'
7 third motion for preliminary approval and motion for final approval. In their fee
8 application and opposition to Class Counsel's fee application, Non-Settling Plaintiffs'
9 Counsel do not explain how Hagens Berman's dealings substantially benefited the class,
10 and the Court can discern no reason why class members should reimburse Hagens Berman
11 for its failed bid to gain control of this class action. Hagens Berman, therefore, will not
12 receive an allocation of the Court's fee award.

### 4. Apportionment of Lodestar Multiplier

Finally, Class Counsel will receive any lodestar multiplier from this class action settlement. As fiduciaries of the class, Class Counsel will have to represent the interests of class members in the years to come without any additional compensation. Non-Settling Plaintiffs' Counsel owe no such fiduciary obligations and have no duty to represent the class's interests. Awarding the lodestar multiplier to Class Counsel appropriately reflects their continuing role in this class action. Further, the Court finds that Class Counsel should receive any lodestar multiplier because Zimmerman Reed and Ridout Lyon + Ottoson principally bankrolled this litigation for years without interim compensation. The purpose of granting plaintiffs' attorneys a multiplier in a class action settlement is to reflect the risk that they assume in bringing a lawsuit. *See Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 741 (9th Cir. 2016). Zimmerman Reed and Ridout Lyon + Ottoson assumed exponentially more risk in bringing this case because they had to pay their employees and advance most of Plaintiffs' expenses. While Beard did incur some expenses and the

opportunity cost of his time, the risk Zimmerman Reed and Ridout Lyon + Ottoson accepted was far greater and should be reflected in the Court's allocation of the fee award.

### 5. Hourly Rate

Attorneys' fees are calculated according to the "prevailing market rates in the relevant community . . . ." *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997) (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). Generally, the relevant community is the forum in which the district court sits. *Barjon*, 132 F.3d at 500. Because Plaintiffs here filed the complaint in the Central District of California, the Court will apply fee rates common to the Greater Los Angeles Area.

Having defined the Greater Los Angeles Area as the relevant community, the next step is to ascertain a reasonable hourly rate in the area. "The established standard is the 'rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation.'" *Id.* at 502 (citation omitted). The district court has discretion in determining the reasonableness of the fee requested, *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008), and may "rely on its own familiarity with the legal market." *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011). The fee applicant has the burden of "produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 980 (quoting *Blum*, 465 U.S. at 895 n. 11). "'Affidavits of the plaintiffs' and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate.'" *Id.* (quoting *United Steelworkes of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)).

Zimmerman Reed used blended rates between $135-175 for paralegals, $275-450 for associates, and $500-775 for partners. (Robinovitch Decl. ¶¶ 133-36, Doc. 480; Billing Records at 128, Doc. 480-12.) Before Ridout Lyon + Ottoson merged with Zimmerman Reed, the firm used comparable billing rates. (*See* Exhs. 2, 4, Doc. 491.) Lead Counsel for

1 Settling Plaintiffs, Hart Robinovitch and Christopher Ridout, have 22 and 26 years of class
2 action experience. (Robinovitch Decl. ¶¶ 130, 133, Doc. 480; Ridout Decl. ¶¶ 6, 11, Doc.
3 491.) Beard, a solo practitioner with 35 years of general litigation experience, has charged
4 all of his time at a rate of $600 per hour. (Beard Decl. ¶¶ 3, 51, Doc. 493.) The Court finds
5 that the quality of the work performed by Settling and Non-Settling Plaintiffs' Counsel, the
6 results they have obtained, their experience, and the rates charged by similar practicing
7 firms in the relevant community support the requested rates.

### 6. Deductions

After reviewing the time entries and expenses of Class Counsel and Beard line-by-line, the Court finds the billed entries generally to be reasonable. Beard claims that Class Counsel's hours are the result of "old fashioned file churning" and duplication of efforts but provides little to support his accusations. (Non-Settling Plaintiffs' Opposition at 2, 4-8, Doc. 508.) For instance, Beard claims that he "had extensive litigation experience and did not need a 'minder'" to accompany him to the depositions of Jerry Alexander, Mary Pouliot, Bob Cutright, Orion Keifer, and Peter Layson. (*Id.* at 5.) But it was perfectly sensible, given Beard's lack of complex class action experience, to have another attorney with this experience attend the depositions of Plaintiffs' experts and other key witnesses. Further, Class Counsel's greater number of billed hours is entirely understandable because Zimmerman Reed and Ridout Lyon + Ottoson provided the human capital necessary to litigate this complex class action and obtain approval of this Settlement Agreement. Beard's argument that it is somehow anomalous for two sizeable plaintiffs' firms to bill more time for a class action than a solo practitioner is entirely unpersuasive, and a careful review of Class Counsel's hours does not reveal any apparent evidence of "churning." Beard's unsubstantiated attacks on Class Counsel's billing practices are particularly remarkable, considering Beard seeks to charge the class for time he spent researching whether he could bring a separate RICO suit, developing a farfetched "alternative"

11

1 settlement, and trying to use his clients' objections to obtain more in attorneys' fees. (*See*
2 Class Counsel Reply at 20-21, Doc. 521.)
3       The Court, however, has determined that the time billed by both Class Counsel and
4 Non-Settling Plaintiffs' Counsel for travel and the time Beard billed for depositions and
5 mediations are excessive. *See Jordan v. Multnomah*, 815 F.2d 1258, 1363 n.8 (9th Cir.
6 1987). Class Counsel and Non-Settling Plaintiffs' Counsel repeatedly billed for the entire
7 time spent traveling, often without providing any indication that counsel performed
8 substantive work for this case while in transit. The Ninth Circuit has held that district
9 courts have discretion to reduce travel time by half, *see In re Washington Pub. Power*
10 *Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994); *see also, e.g.*, *LV v. N.Y. City*
11 *Dep't of Educ.*, 700 F. Supp. 2d 510, 526 (S.D.N.Y. 2010); *Reg'l Employers' Assurance*
12 *Leagues Voluntary Employees' Beneficiary Ass'n Trust v. Castellano*, 164 F. Supp. 3d
13 705, 718 (E.D. Pa. 2016), and the Court finds such a reduction appropriate based on the
14 near certainty that the attorneys did not fully spend their time performing legal work that
15 benefited the class.[4] Besides reducing travel time, the Court has cross-checked Class
16 Counsel and Beard's timesheets against each other and found that Beard billed
17 substantially more time for certain depositions and mediations than Class Counsel did. For
18 these entries, the Court applied the lesser amount to Beard. For the one mediation session
19 where Class Counsel billed more time than Beard, the Court reduced Class Counsel's
20 billed time, although the difference may have reflected Beard leaving the mediation earlier.
21 Finally, by excluding all hours that Beard billed after June 15, 2015, the Court has already
22 ensured that class members will not be charged for Beard's time spent developing an
23 "alternative" settlement agreement or raising objections that lacked merit. Thus, in total,
24 the Court deducted the following amounts as excessive:

---

26     [4] Ridout Lyon + Ottoson block billed some of its travel time with other tasks, such as
27 depositions and hearings. Because the billing descriptions provide no guidance about how many of the hours were for travel, the Court reduced those entries by thirty percent based on the reasonable
28 assumption that sixty percent of the time billed was for travel.

| Zimmerman Reed, LLP | | | | | | |
|---|---|---|---|---|---|---|
| Ref. Number | Date | Attorney | Description | Hours Billed | Billable Rate | Hours Credited |
| 3570 | 7/24/2013 | HLR | Travel | 3.5 | $575.00 | 1.75 |
| 3576 | 7/24/2013 | HLR | Travel | 3.5 | $575.00 | 1.75 |
| 335 | 8/7/2013 | HLR | Travel | 4 | $575.00 | 2 |
| 343 | 8/8/2013 | HLR | Travel | 0.75 | $575.00 | 0.375 |
| 345 | 8/9/2013 | HLR | Travel | 4 | $575.00 | 2 |
| 417 | 8/21/2013 | HLR | Travel | 4 | $575.00 | 2 |
| 422 | 8/22/2013 | HLR | Travel | 4.5 | $575.00 | 2.25 |
| 3666 | 9/20/2013 | HLR | Travel | 2 | $575.00 | 1 |
| 3669 | 9/20/2013 | HLR | Travel | 2 | $575.00 | 1 |
| 3673 | 9/25/2013 | HLR | Travel/ Depo Prep | 6 | $575.00 | 3 |
| 3675 | 9/26/2013 | HLR | Travel/ Depo Prep | 6.5 | $575.00 | 3.25 |
| 3723 | 10/17/2013 | HLR | Travel/ Depo Prep | 3.25 | $575.00 | 1.625 |
| 636 | 10/18/2013 | HLR | Travel/ Depo | 9 | $575.00 | 7.325[5] |
| 3738 | 10/28/2013 | HLR | Travel/ Depo Prep | 1.5 | $575.00 | 1.25 |
| 3745 | 10/30/2013 | HLR | Travel/ Depo Prep with TB | 4.5 | $575.00 | 2.25 |
| 3762 | 11/6/2013 | HLR | Travel/ Review | 5 | $575.00 | 2.5 |
| 3767 | 11/7/2013 | HLR | Travel/ Review | 3 | $575.00 | 1.5 |
| 3907 | 11/22/2013 | HLR | Travel/ Depo Prep | 3 | $575.00 | 1.5 |
| 594 | 11/23/2013 | HLR | Travel/ Review | 1.25 | $575.00 | 0.625 |
| 3957 | 1/14/2014 | HLR | Travel | 6 | $695.00 | 3 |
| 696 | 1/17/2014 | HLR | Travel/ Review | 8 | $695.00 | 4 |
| 969 | 6/3/2014 | HLR | Travel | 3.75 | $695.00 | 1.875 |
| 974 | 6/5/2014 | HLR | Travel | 3 | $695.00 | 1.5 |
| 4264 | 6/9/2014 | HLR | Travel | 2.5 | $695.00 | 1.25 |

---

[5] Because this entry was block billed, the Court took the same reduction as applied to the trip to Irvine on October 17, 2013.

13

| | | | | | | |
|---|---|---|---|---|---|---|
| 4268 | 6/9/2014 | HLR | Travel | 2.5 | $695.00 | 1.25 |
| 1086 | 7/7/2014 | HLR | Travel | 3.5 | $695.00 | 1.75 |
| 1090 | 7/8/2014 | HLR | Travel | 3.5 | $695.00 | 1.75 |
| 1177 | 7/16/2014 | HLR | Travel/Prep | 3 | $695.00 | 1.5 |
| 1933 | 7/18/2014 | HLR | Mediation | 9 | $695.00 | 6 |
| 1184 | 7/18/2014 | HLR | Travel | 2.5 | $695.00 | 1.25 |
| 4575 | 10/10/2014 | HLR | Preparation/ Travel/ Hearing | 8.5 | $695.00 | 5.95[6] |
| 1651 | 1/7/2015 | HLR | Travel | 1.75 | $695.00 | 0.875 |
| 1653 | 1/7/2015 | HLR | Travel | 2 | $695.00 | 1 |
| 1676 | 1/22/2015 | HLR | Travel | 2 | $695.00 | 1 |
| 4189 | 1/22/2015 | HLR | Travel | 2 | $695.00 | 1 |
| 1747 | 3/3/2015 | HLR | Travel | 2.5 | $695.00 | 1.25 |
| 1750 | 3/4/2015 | HLR | Travel | 2.5 | $695.00 | 1.25 |
| 1832 | 4/10/2015 | HLR | Travel | 3 | $695.00 | 1.5 |
| 1834 | 4/10/2015 | HLR | Travel | 3.5 | $695.00 | 1.75 |
| 2185 | 10/23/2015 | CLM | Travel/Call with HLR | 3 | $505.00 | 1.5 |
| **Total** | | | | **149.25 hrs. ($94,608.75)** | | **81.15 hrs. ($51,440.25)** |

---

[6] Like with the Ridout Lyon + Ottoson entries, the Court reduced those entries by thirty percent based on the reasonable assumption that sixty percent of the time billed was for travel.

14

| Ridout Lyon + Ottoson, LLP[7] | | | | | | |
|---|---|---|---|---|---|---|
| Cell Number | Date | Attorney | Description | Hours Billed | Billable Rate | Hours Credited |
| 473 | 7/24/2013 | DC | Travel | 1.1 | $425.00 | 0.55 |
| 475 | 7/24/2013 | DC | Travel | 1.1 | $425.00 | 0.55 |
| 792 | 12/18/2013 | CPR | Travel/ Deposition | 8.2 | $650.00 | 5.74 |
| 1270 | 5/13/2014 | CPR | Travel/ Hearing | 3.8 | $650.00 | 2.66 |
| 1409 | 6/4/2014 | CPR | Travel | 2.4 | $650.00 | 1.2 |
| 1411 | 6/4/2014 | CM | Travel/ Mediation | 8 | $505.00 | 5.6 |
| 1412 | 6/4/2014 | GO | Travel/ Mediation | 2.6 | $650.00 | 1.82 |
| 1415 | 6/5/2014 | CPR | Travel/ Mediation | 11.4 | $650.00 | 7.98 |
| 1534 | 7/7/2014 | CPR | Travel/ Meeting | 2.9 | $650.00 | 2.03 |
| 1540 | 7/7/2014 | CPR | Travel/ Meeting | 1.2 | $650.00 | 0.84 |
| 1585 | 7/18/2014 | CPR | Travel/ Mediation/ Meetings | 9.7 | $650.00 | 6.79 |
| 2173 | 9/25/2014 | GO | Travel/ Review | 4.2 | $650.00 | 2.1 |
| 2302 | 10/10/2014 | CPR | Travel/ Hearing/ Meetings | 7.2 | $650.00 | 5.04 |
| 2704 | 1/7/2015 | CPR | Travel/ Meeting | 8.9 | $650.00 | 6.23 |
| 2710 | 1/9/2015 | CPR | Travel | 9.3 | $650.00 | 4.65 |
| 2715 | 1/9/2015 | GO | Travel | 5.6 | $650.00 | 2.8 |
| 2822 | 1/15/2015 | CPR | Travel | 4.8 | $650.00 | 2.4 |
| 2921 | 1/22/2015 | CM | Travel/ Meetings/ Hearings | 5 | $505.00 | 3.5 |
| 3028 | 3/4/2015 | CPR | Travel | 2.7 | $650.00 | 1.35 |
| 3286 | 4/17/2015 | CM | Travel/ Hearing | 8 | $505.00 | 5.6 |
| **Total** | | | | **108.1 hrs. ($66,725.00)** | | **69.43 hrs. ($42,750.50)** |

---

[7] Ridout Lyon + Ottoson, LLP (subsequently, Ridout Marker + Ottoson, LLP) no longer provides professional services and exists solely for dissolution purposes. (CPR Decl. at ¶ 2, Doc. 491.) Attorneys from these former firms who represent Settling Plaintiffs have since joined Zimmerman Reed. (CPR Decl. at ¶ 5, Doc. 491.)  Their deductions are listed separately for clarity.

15

| Law Offices of Terrence Beard | | | | | |
|---|---|---|---|---|---|
| Cell Number | Date | Description | Hours Billed | Billable Rate | Hours Credited |
| 709 | 8/1/2013 | Deposition | 8 | $600.00 | 3.5 |
| 726 | 8/7/2013 | Deposition | 4 | $600.00 | 3.5 |
| 727 | 8/8/2013 | Deposition | 12 | $600.00 | 8.25 |
| 884 | 9/20/2013 | Deposition | 12 | $600.00 | 4 |
| 1016 | 10/28/2013 | Travel | 12 | $600.00 | 6 |
| 1022 | 10/30/2013 | Deposition | 12 | $600.00 | 7.8[8] |
| 1159 | 12/9/2013 | Travel | 12 | $600.00 | 6 |
| 1161 | 12/11/2013 | Travel | 12 | $600.00 | 6 |
| 1666 | 5/13/2014 | Hearing | 6.75 | $600.00 | 2.66[9] |
| 1749 | 6/3/2014 | Travel | 5 | $600.00 | 2.5 |
| 1751 | 6/5/2014 | Travel | 4 | $600.00 | 2 |
| 1752 | 6/5/2014 | Mediation | 12 | $600.00 | 9.5 |
| 1762 | 6/9/2014 | Mediation | 10 | $600.00 | 6.75[10] |
| 1930 | 7/16/2014 | Travel | 5 | $600.00 | 2.5 |
| 1931 | 7/17/2014 | Mediation | 12 | $600.00 | 9 |
| 1934 | 7/18/2014 | Travel | 6 | $600.00 | 3 |
| 2208 | 10/10/2014 | Hearing | 12 | $600.00 | 5.95 |
| 2409 | 1/22/2015 | Hearing | 10 | $600.00 | 7[11] |
| 2500 | 3/3/2015 | Travel | 4 | $600.00 | 2 |
| 2505 | 3/5/2015 | Travel | 4 | $600.00 | 2 |
| 2619 – 2816 | 6/16/2015 – 5/18/2016 | (Various) | 216.90 | $600.00 | 0 |
| **Total** | | | **391.65 ($234,990.00)** | | **99.91 ($59,946.00)** |

---

[8] Because HLR block billed deposition preparation with travel, the Court added forty percent of HLR's 4.5 hours of block-billed time to the six hours of time billed for the actual deposition.

[9] *See* Ridout Deductions Table.

[10] The Court believes that the difference between Class Counsel and Beard's billed time for this day of mediation was due to travel, so the Court took the 3.5 hours Class Counsel billed for the mediation and the meeting with Beard and deducted half of Beard's additional billed time (*i.e.*, 3.5 hrs. + 6.5 hrs./2).

[11] To calculate Beard's reduced amount, the Court added HLR's time billed for the deposition, his full preparation time, and half of his travel time.

16

In reviewing Beard's billed expenses, the Court discovered mathematical errors and discrepancies between the final sums proposed in Beard's Supplemental Memorandum for Attorney's Fees and Expenses (Supp. Mem., Doc. 533) and the excel sheets provided. (TB Decl., Doc. 493 and TB Excel.) In his Supplemental Memorandum, Beard agreed to reduce his expenses by $10,636.59, but this, too, was based on a faulty calculation.[12] The actual sum of the deductions he agreed to in the supplemental memorandum is $11,252.89.[13] Compounding the error, Beard's revised itemized copy of his expenses included only a total reduction of $10,377.30, despite the inclusion of a note stating "Total incorporates amendments to original expense bill – see Doc. 533." (TB Excel at 6, Doc. 552-2.) By cross-checking the excel version against the Supplemental Memorandum, Beard failed to include $1,690.26 ($530.66,[14] $639.60,[15] and $520.00[16]) in deductions that he agreed to make in his Supplemental Memorandum. (TB Supp. Memo. at 6, Doc. 533.) In his excel version, Beard did, however, include two additional deductions totaling $814.69 ($428.50[17] and $386.10[18]). The first of these deductions appears deliberate because the deducted entry seems to be a duplicate, while the second deduction seems accidental

---

[12] This mathematical error can be found under subheading "F. Travel to Jacksonville for AEGI Depositions." The statement "[t]his results in a reduction of Beard's recoverable costs by $2,381.28" is incorrect. (TB Supp. Memo. at 6, Doc. 533.) When adding the expenses from 1/13/2014 – 1/21/2014, the total comes to $5,231.41. (TB Decl. Exhibit B at 1, Doc. 493.) $5,231.41 minus $2,233.83 equals $2,997.58. Therefore, the "reduction of Beard's recoverable costs" under Subheading F should be $2,997.58, not $2,381.28. The total included in the revised excel sheet submitted by Beard is $2,233.85. (*See* TB Excel, Doc. 552-2.)

[13] $5,718.45 + $846.60 + $1,690.26 + $2,997.58 = $11,252.89. (TB Supp. Memo. at 5-6, Doc. 533.)

[14] (TB Excel at 1, Doc. 552-2; TB Supp. Memo. at 6, Doc. 533; SP Reply Memo. at 24, Doc. 521.)

[15] (TB Excel at 1, Doc. 552-2; TB Supp. Memo. at 6, Doc. 533; SP Reply Memo. at. 24, Doc. 521.)

[16] (TB Excel at 2, Doc. 552-2; TB Supp. Memo. at 6, Doc. 533; SP Reply Memo. at. 24, Doc. 521.)

[17] (*Compare* TB Decl. Exhibit B at 3, Doc. 493 *with* TB Excel, Doc. 552-2 ("Travel expense air fare Los Angeles").)

[18] (*Compare* TB Decl. Exhibit B at 3, Doc. 493 *with* TB Excel, Doc. 552-2 ("Transcription fees Brian McBride deposition 8/7/2013").)

1  because Class Counsel's objections to Beard's expenses did not mention Brian McBride's
2  deposition. The Court will allow Beard's expense for the McBride deposition but deduct
3  the airfare because the entry appears to be a duplicate was incurred after the Court's cutoff
4  for Beard's allocation.  Thus, altogether, the Court has deducted this airfare ($428.50), the
5  deductions Beard agreed to make in his Supplemental Memorandum ($11,252.89), and any
6  expenses billed after June 15, 2015 ($627.60). Based on these deductions, the Court has
7  calculated a net reduction in expenses of $12,308.99, for a total award of $61,880.53 in
8  expenses.

9  In sum, based on the Court's deductions, the Court will award $7,353,093.47 to
10 Class Counsel and $1,646,906.53 to Terrence Beard.

**C. <u>Lodestar Cross-Check</u>**

Because the Court has made a final determination of billable hours and expenses, the Court can calculate the implied lodestar multiplier to verify whether the amount awarded in attorneys' fees and expenses is fair and reasonable. Because the Court apportioned attorneys' fees based on the percentage-of-the-common-fund method, "the lodestar method is merely a cross-check on the reasonableness of a percentage figure." *Vizcaino*, 290 F.3d at 1052 n.5.

Here, the Court's benchmark award and allocation methodology imply that Class Counsel will receive a 1.69 lodestar multiplier. This lodestar multiplier—which will certainly diminish as Class Counsel continue to represent the class's interests—is well within the range of reasonableness. *See, e.g., Vizcaino*, 290 F.3d at 1051 (observing that in a majority of collected cases the lodestar multiplier fell between 1.0 and 3.0); *Chambers v. Whirlpool Corp.*, No. CV111733FMOJCGX, 2016 WL 5922456, at *16 (C.D. Cal. Oct. 11, 2016) (approving a 1.68 multiplier based solely on the lodestar method); *Noll v. eBay, Inc.*, 309 F.R.D. 593, 610 (N.D. Cal. 2015) (1.6 multiplier); *Willner v. Manpower Inc., No. 11-CV-02846-JST*, 2015 WL 3863625, at *7 (N.D. Cal. June 22, 2015) (2.1 multiplier); *In re Netflix Privacy Litig.*, No. 5:11-CV-00379 EJD, 2013 WL 1120801, at *10 (N.D. Cal.

Mar. 18, 2013) (1.66 multiplier). Thus, the Court concludes that a benchmark award and the allocation of the multiplier to Class Counsel is fair and reasonable.

**III. CONCLUSION**

For the foregoing reasons, the Court awards Class Counsel $7,353,093.47 in attorneys' fees and expenses and the Law Offices of Terrence Beard $1,646,906.53 in attorneys' fees and expenses. Settling Plaintiffs shall file a proposed judgment consistent with this Order and the Court's Final Approval Order forthwith.

DATED: April 14, 2017

JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE